## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------x
                                                     :
*In re*                                              :          **Chapter 11**
                                                     :
**MAGNA ENTERTAINMENT CORP.,** *et al.,*             :          **Case No. 09-10720 (MFW)**
                                                     :
                                                     :
           **Debtors.**                              :          **Jointly Administered**
                                                     :
-------------------------------------------------------------x


JOINT PLAN OF AFFILIATED DEBTORS,
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
MI DEVELOPMENTS INC., AND MI DEVELOPMENTS US FINANCING INC.
PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE


Dated:  February 18, 2010

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

– and –

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

Attorneys for Debtors and
Debtors in Possession

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

– and –

PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Attorneys for the Official Committee of
Unsecured Creditors

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

– and –

YOUNG CONAWAY STARGATT &
TAYLOR LLP
The Brandywine Building
1000 East Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorneys for MI Developments Inc. and MI
Developments US Financing Inc.

US_ACTIVE:\20984354\18\61366.0003
RLF1 3539354v.1

# TABLE OF CONTENTS

Page

ARTICLE I         DEFINITIONS ..................................................................................... 1

1.1      Administrative Claim Bar Date ............................................ 1
1.2      Administrative Expense Claim ............................................ 1
1.3      Allowed Administrative Expense Claim .............................. 2
1.4      Allowed BMO Claim ............................................................ 2
1.5      Allowed Bridge Loan Claim ................................................ 2
1.6      Allowed Claim ....................................................................... 2
1.7      Allowed 8.55% Note Claim .................................................. 2
1.8      Allowed Gulfstream Park Claim .......................................... 2
1.9      Allowed MJC Claim ............................................................. 3
1.10     Allowed Non-MJC General Unsecured Claim ..................... 3
1.11     Allowed PNC Claim ............................................................. 3
1.12     Allowed PNC Guarantee Claim ............................................ 3
1.13     Allowed Priority Claim ........................................................ 3
1.14     Allowed Priority Non-Tax Claim ......................................... 3
1.15     Allowed Priority Tax Claim .................................................. 3
1.16     Allowed Old RP Claim ......................................................... 3
1.18     Allowed 2008 Loan Claim .................................................... 3
1.19     Allowed Wells Fargo Claim ................................................. 3
1.20     Allowed Wells Fargo Guarantee Claim ................................ 3
1.21     AmTote ................................................................................. 3
1.22     AmTote Stock ....................................................................... 3
1.23     Assets .................................................................................... 3
1.24     Ballot .................................................................................... 4
1.25     Ballot Date ............................................................................ 4
1.26     Bankruptcy Code .................................................................. 4
1.27     Bankruptcy Court ................................................................. 4
1.28     Bankruptcy Rules ................................................................. 4
1.29     BMO ...................................................................................... 4
1.30     BMO Claim ........................................................................... 4
1.31     BMO Credit Agreement ........................................................ 4
1.32     BMO Guarantee Claim ......................................................... 4
1.33     Bridge Loan Agreement ........................................................ 4
1.34     Bridge Loan Claim ............................................................... 4
1.35     Bridge Loan Guarantee Claims ............................................ 4
1.36     Business Day ......................................................................... 5
1.37     Cash ....................................................................................... 5
1.38     Cash Equivalents .................................................................. 5
1.39     Chapter 11 Cases .................................................................. 5
1.40     Claim ..................................................................................... 5
1.41     Class ...................................................................................... 5
1.42     Class A Shares ...................................................................... 5

| | | |
|---|---|---|
| 1.43 | Class B Shares | 5 |
| 1.44 | Collateral | 5 |
| 1.45 | Committee Litigation | 5 |
| 1.47 | Confirmation Date | 6 |
| 1.48 | Confirmation Hearing | 6 |
| 1.49 | Confirmation Order | 6 |
| 1.50 | Creditor | 6 |
| 1.51 | Creditor Cash | 6 |
| 1.52 | Creditors' Committee | 7 |
| 1.53 | Creditor LSP Sale Proceeds | 7 |
| 1.54 | Creditor MJC Sale Proceeds | 7 |
| 1.55 | Creditor Sale Proceeds | 7 |
| 1.56 | Creditor Thistledown Sale Proceeds | 7 |
| 1.57 | Debtors | 7 |
| 1.58 | Debtors in Possession | 7 |
| 1.59 | DIP Agreement | 7 |
| 1.60 | DIP Obligations | 7 |
| 1.61 | DIP Orders | 7 |
| 1.62 | Disbursing Agent | 8 |
| 1.63 | Disclosure Statement | 8 |
| 1.64 | Disclosure Statement Order | 8 |
| 1.65 | Disputed Claim | 8 |
| 1.66 | Disputed Claim Amount | 8 |
| 1.67 | 8.55% Indenture: | 8 |
| 1.68 | 8.55% Notes: | 8 |
| 1.70 | Effective Date | 8 |
| 1.71 | Entity | 9 |
| 1.72 | Equity Interest | 9 |
| 1.73 | Fasken Martineau | 9 |
| 1.74 | Final Order | 9 |
| 1.77 | GPRA Commercial | 10 |
| 1.78 | GPRA Commercial Stock | 10 |
| 1.79 | Gulfstream Park Agreement | 10 |
| 1.80 | Gulfstream Park Claim | 10 |
| 1.81 | Gulfstream Park Guarantee Claim | 10 |
| 1.82 | Gulfstream Park Racing | 10 |
| 1.83 | Gulfstream Park Racing Stock | 10 |
| 1.84 | Indenture Trustee | 10 |
| 1.87 | IRC | 10 |
| 1.88 | IRS | 10 |
| 1.89 | KLNF | 10 |
| 1.90 | KLNF Amended Retention Order | 10 |
| 1.91 | KLNF Contingency Fee | 10 |

| | | |
|---|---|---|
| 1.92 | L.A. Turf Club | 11 |
| 1.93 | L.A. Turf Club Stock | 11 |
| 1.94 | Laurel Racing | 11 |
| 1.95 | Laurel Racing Stock | 11 |
| 1.96 | Laurel Racing Association | 11 |
| 1.97 | Laurel Racing Association Stock | 11 |
| 1.98 | Lien | 11 |
| 1.99 | Litigation Expenses | 11 |
| 1.100 | LSP Sale | 11 |
| 1.101 | LSP Sale Proceeds | 11 |
| 1.102 | LSP Trust | 11 |
| 1.103 | LSP Trust Agreement | 12 |
| 1.104 | LSP Trust Board | 12 |
| 1.105 | LSP Trustee | 12 |
| 1.106 | LSP Trust Interests | 12 |
| 1.107 | Magna Entertainment | 12 |
| 1.108 | Magna Entertainment Stock | 12 |
| 1.109 | Magna Entertainment Board of Trustees | 12 |
| 1.110 | Maryland Jockey Club | 12 |
| 1.111 | Maryland Jockey Club Stock | 12 |
| 1.112 | MEC Canada | 12 |
| 1.113 | MEC Content | 12 |
| 1.114 | MEC Dixon | 12 |
| 1.115 | MEC Dixon Stock | 12 |
| 1.116 | MEC Global Wagering | 12 |
| 1.117 | MEC Holdings | 12 |
| 1.118 | MEC Holdings Stock | 12 |
| 1.119 | MEC HRTV | 13 |
| 1.120 | MEC Land Holdings | 13 |
| 1.121 | MEC Land Holdings Stock | 13 |
| 1.122 | MEC Land Oregon | 13 |
| 1.123 | MEC Lone Star | 13 |
| 1.124 | MEC Lone Star Stock | 13 |
| 1.125 | MEC Maryland Investments | 13 |
| 1.126 | MEC Maryland Investments Stock | 13 |
| 1.127 | MEC Media | 13 |
| 1.128 | MEC Oregon | 13 |
| 1.129 | MEC Pennsylvania | 13 |
| 1.130 | MEC Pennsylvania Stock | 13 |
| 1.131 | MEC Projektentwicklungs | 13 |
| 1.132 | MEC Services | 13 |
| 1.133 | MID | 13 |
| 1.134 | MID Asset Transfer Agreement | 13 |

RLF1 3539354v.1

| | | |
|---|---|---|
| 1.135 | MID Cash Consideration | 13 |
| 1.136 | MID Claims | 13 |
| 1.137 | MID Islandi | 14 |
| 1.138 | MID Litigation Cash Consideration | 14 |
| 1.139 | MID LSP Sale Proceeds | 14 |
| 1.140 | MID MJC Sale Proceeds | 14 |
| 1.141 | MID Non-Debtor Assets | 14 |
| 1.142 | MID Reorganized Debtor Assets | 14 |
| 1.143 | MID Reorganized Debtor Stock | 14 |
| 1.144 | MID Thistledown Sale Proceeds | 14 |
| 1.145 | MID Transferee | 14 |
| 1.146 | MID US Financing | 15 |
| 1.147 | Miller Buckfire | 15 |
| 1.148 | MJC Claim | 15 |
| 1.149 | MJC Debtors | 15 |
| 1.150 | MJC Debtors Stock | 15 |
| 1.151 | MJC Sale | 15 |
| 1.152 | MJC Sale Proceeds | 15 |
| 1.153 | MJC Trust | 15 |
| 1.154 | MJC Trust Agreement | 15 |
| 1.155 | MJC Trust Board | 16 |
| 1.156 | MJC Trustee | 16 |
| 1.157 | MJC Trust Interests | 16 |
| 1.158 | Non-MJC General Unsecured Claim | 16 |
| 1.159 | Old RP | 16 |
| 1.160 | Old RP Agreement | 16 |
| 1.161 | Old RP Claims | 16 |
| 1.162 | Old RP Stock | 16 |
| 1.163 | Old RP Guarantee Claims | 16 |
| 1.164 | Operating Trustee | 16 |
| 1.165 | Operating Trust Agreements | 16 |
| 1.166 | Operating Trusts | 16 |
| 1.167 | Operating Trust Interests | 16 |
| 1.168 | PA Meadows Litigation | 17 |
| 1.169 | PA Meadows Proceeds | 17 |
| 1.170 | Pacific Racing | 17 |
| 1.171 | Pacific Racing Stock | 17 |
| 1.172 | Palm Meadows Training Center | 17 |
| 1.173 | Palm Meadows Training Center Stock | 17 |
| 1.174 | Permitted Liens | 17 |
| 1.176 | Person | 17 |
| 1.177 | Petition Date | 17 |
| 1.178 | Pimlico | 17 |

RLF1 3539354v.1

| | | |
|---|---|---|
| 1.179 | Pimlico Stock | 17 |
| 1.180 | Plan | 17 |
| 1.181 | Plan Supplement | 17 |
| 1.182 | Plan Support Agreement | 17 |
| 1.183 | PNC | 18 |
| 1.184 | PNC Agreements | 18 |
| 1.185 | PNC Claim | 18 |
| 1.186 | PNC Guarantee Claim | 18 |
| 1.187 | Prince George's Racing | 18 |
| 1.188 | Prince George's Racing Stock | 18 |
| 1.189 | Priority Claim | 18 |
| 1.190 | Priority Non-Tax Claim | 18 |
| 1.191 | Priority Tax Claim | 18 |
| 1.192 | Pro Rata Share | 18 |
| 1.193 | Proponents | 18 |
| 1.194 | PSZJ | 18 |
| 1.195 | Racetrack Television Network | 19 |
| 1.196 | Related Persons | 19 |
| 1.197 | Released Parties | 19 |
| 1.198 | Remington Escrow | 19 |
| 1.199 | Reorganized AmTote | 19 |
| 1.200 | Reorganized AmTote Stock | 19 |
| 1.201 | Reorganized Debtors | 19 |
| 1.202 | Reorganized Debtors By-Laws | 19 |
| 1.203 | Reorganized Debtors Certificate of Incorporation | 19 |
| 1.204 | Reorganized Debtors Plan Administration Agreement | 19 |
| 1.205 | Reorganized Debtors Plan Administrator | 19 |
| 1.206 | Reorganized GPRA Commercial | 19 |
| 1.207 | Reorganized GPRA Commercial Stock | 20 |
| 1.208 | Reorganized Gulfstream Park Racing | 20 |
| 1.209 | Reorganized Gulfstream Park Racing Stock | 20 |
| 1.210 | Reorganized L.A. Turf Club | 20 |
| 1.211 | Reorganized L.A. Turf Club Stock | 20 |
| 1.212 | Reorganized Laurel Racing | 20 |
| 1.213 | Reorganized Laurel Racing Stock | 20 |
| 1.214 | Reorganized Laurel Racing Association | 20 |
| 1.215 | Reorganized Laurel Racing Association | 20 |
| 1.216 | Reorganized Magna Entertainment | 20 |
| 1.217 | Reorganized Maryland Jockey Club | 20 |
| 1.218 | Reorganized Maryland Jockey Club Stock | 20 |
| 1.219 | Reorganized Maryland Jockey Club of Baltimore City | 21 |
| 1.220 | Reorganized Maryland Jockey Club of Baltimore City Stock | 21 |
| 1.221 | Reorganized MEC Lone Star | 21 |

v

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 1.222 | Reorganized MEC Lone Star Stock | 21 |
| 1.225 | Reorganized MJC Debtors | 21 |
| 1.226 | Reorganized MJC Debtors' Stock | 21 |
| 1.227 | Reorganized Pacific Racing | 21 |
| 1.228 | Reorganized Pacific Racing Stock | 21 |
| 1.229 | Reorganized Palm Meadows Training Center | 21 |
| 1.230 | Reorganized Palm Meadows Training Center Stock | 21 |
| 1.231 | Reorganized Pimlico | 22 |
| 1.232 | Reorganized Pimlico Stock | 22 |
| 1.233 | Reorganized Prince George's Racing | 22 |
| 1.234 | Reorganized Prince George's Racing Stock | 22 |
| 1.235 | Reorganized Southern Maryland Racing | 22 |
| 1.236 | Reorganized Southern Maryland Racing Stock | 22 |
| 1.237 | Reorganized Southern Maryland AA | 22 |
| 1.238 | Reorganized Southern Maryland AA Stock | 22 |
| 1.239 | Reorganized Thistledown | 22 |
| 1.240 | Reorganized Thistledown Stock | 22 |
| 1.243 | Santa Anita Commercial Enterprises | 22 |
| 1.244 | Santa Anita Companies | 23 |
| 1.245 | Santa Anita Companies Stock | 23 |
| 1.246 | Schedules | 23 |
| 1.247 | Secured Claim | 23 |
| 1.248 | Shared Insurance Policies | 23 |
| 1.249 | 7.25% Indenture | 23 |
| 1.250 | 7.25% Notes | 23 |
| 1.252 | Southern Maryland AA | 23 |
| 1.253 | Southern Maryland AA Stock | 23 |
| 1.254 | Southern Maryland Racing | 23 |
| 1.255 | Southern Maryland Racing Stock | 24 |
| 1.256 | Subordinated Notes | 24 |
| 1.257 | Sunshine Meadows | 24 |
| 1.258 | Sunshine Meadows Stock | 24 |
| 1.259 | The Maryland Jockey Club | 24 |
| 1.260 | The Maryland Jockey Club Stock | 24 |
| 1.261 | The Maryland Jockey Club of Baltimore City | 24 |
| 1.262 | The Maryland Jockey Club of Baltimore City Stock | 24 |
| 1.263 | Thistledown | 24 |
| 1.264 | Thistledown Sale | 24 |
| 1.265 | Thistledown Sale Proceeds | 24 |
| 1.266 | Thistledown Stock | 24 |
| 1.267 | Thistledown Trust | 24 |
| 1.268 | Thistledown Trust Agreement | 25 |
| 1.269 | Thistledown Trust Board | 25 |

| | | |
|---|---|---|
| 1.270 | Thistledown Trustee | 25 |
| 1.271 | Thistledown Trust Interests | 25 |
| 1.272 | 30000 Maryland | 25 |
| 1.273 | 30000 Maryland Stock | 25 |
| 1.274 | 2008 Loan Agreement | 25 |
| 1.275 | 2008 Loan Claim | 25 |
| 1.276 | 2008 Loan Guarantee Claim | 25 |
| 1.277 | 1180482 Ontario | 25 |
| 1.278 | UCC | 25 |
| 1.279 | Wells Fargo Agreement | 26 |
| 1.280 | Wells Fargo Claim | 26 |
| 1.281 | Wells Fargo Guarantee Claim | 26 |
| 1.282 | XpressBet | 26 |
| 1.283 | XpressBet Option | 26 |
| 1.284 | Other Definitions | 26 |
| ARTICLE II | COMPROMISE AND SETTLEMENT OF COMMITTEE LITIGATION | 26 |
| 2.1 | Compromise and Settlement | 26 |
| ARTICLE III | PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS | 29 |
| 3.1 | Administrative Expense Claims | 29 |
| 3.2 | Payment of Priority Tax Claims | 29 |
| 3.3 | Debtor in Possession Financing | 30 |
| ARTICLE IV | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | 30 |
| 4.1 | Class 1   – Priority Non-Tax Claims | 30 |
| 4.2 | Class 2   – MID Claims | 30 |
| 4.3 | Class 3   – Wells Fargo Claim | 30 |
| 4.4 | Class 4   – PNC Claim | 30 |
| 4.5 | Class 5   – BMO Claim | 30 |
| 4.6 | Class 6   – Secured Claims | 30 |
| 4.7 | Class 7   – 8.55% Note Claims | 30 |
| 4.8 | Class 8   – 7.25% Note Claims | 30 |
| 4.9 | Classes 9 through 26 – Non-MJC General Unsecured Claims | 30 |
| 4.10 | Classes 27 through 34 – MJC Claims | 30 |
| 4.11 | Classes 35 through 60  – Equity Interests | 31 |
| ARTICLE V | PROVISION FOR TREATMENT OF PRIORITY NON-TAX CLAIMS (CLASS 1) | 31 |
| 5.1 | Payment of Allowed Priority Non-Tax Claims (Class 1) | 31 |
| ARTICLE VI | PROVISION FOR TREATMENT OF MID CLAIMS (CLASS 2) | 31 |

vii

6.1          Treatment of MID Claims ........................................................................... 31

ARTICLE VII     PROVISION FOR TREATMENT OF WELLS FARGO CLAIM
(CLASS 3) ................................................................................................ 32

7.1          Treatment of Allowed Wells Fargo Claim................................................. 32

ARTICLE VIII    PROVISION FOR TREATMENT OF PNC CLAIM (CLASS 4) ............. 32

8.1          Treatment of Allowed PNC Claim ............................................................ 32

ARTICLE IX      PROVISION FOR TREATMENT OF BMO CLAIM (CLASS 5) ............ 32

9.1          Treatment of Allowed BMO Claim ........................................................... 32

ARTICLE X       PROVISION FOR TREATMENT OF SECURED CLAIMS (CLASS
6) .............................................................................................................. 33

10.1         Treatment of Allowed Secured Claims....................................................... 33

ARTICLE XI      PROVISION FOR TREATMENT OF 8.55% NOTE CLAIMS
(CLASS 7) ................................................................................................ 33

11.1         Payment of Allowed 8.55% Note Claims ................................................... 33
12.1         Payment of Allowed 7.25% Note Claims ................................................... 33

ARTICLE XIII    PROVISION FOR TREATMENT OF NON-MJC GENERAL
UNSECURED CLAIMS (CLASSES 9–26)................................................ 34

13.1         Payment of Allowed Non-MJC General Unsecured Claims ....................... 34

ARTICLE XIV     PROVISION FOR TREATMENT OF  MJC CLAIMS (CLASSES 27-
34) ............................................................................................................ 34

14.1         Treatment of Allowed MJC Claims ........................................................... 34

PROVISIONS FOR TREATMENT OF EQUITY INTERESTS (CLASSES 35 – 60) ............ 34

15.1         Treatment of MEC Maryland Investments Stock (Class 35)...................... 34
15.2         Treatment of AmTote Stock (Class 36) ..................................................... 35
15.3         Treatment of GPRA Commercial Stock (Class 37)..................................... 35
15.4         Treatment of Gulfstream Park Racing Stock (Class 38).............................. 35
15.5         Treatment of L.A. Turf Club Stock (Class 39) ........................................... 35
15.6         Treatment of Magna Entertainment Stock (Class 40).................................. 35
15.7         Treatment of MEC Land Holdings Stock (Class 41).................................... 35
15.8         Treatment of Pacific Racing Stock (Class 42)............................................ 35
15.9         Treatment of Santa Anita Companies Stock (Class 43)............................... 35
15.10        Treatment of Palm Meadows Training Center Stock (Class 44) .................. 36
15.11        Treatment of MEC Pennsylvania Stock (Class 45) .................................... 36
15.12        Treatment of Pimlico Stock (Class 46)...................................................... 36
15.13        Treatment of Prince George's Racing Stock (Class 47) .............................. 36
15.14        Treatment of Maryland Jockey Club Stock (Class 48)................................ 36

RLF1 3539354v.1

| | | |
|---|---|---|
| 15.15 | Treatment of The Maryland Jockey Club of Baltimore City Stock (Class 49) | 36 |
| 15.16 | Treatment of Southern Maryland Racing Stock (Class 50) | 36 |
| 15.17 | Treatment of Southern Maryland AA Stock (Class 51) | 37 |
| 15.18 | Treatment of Laurel Racing Stock (Class 52) | 37 |
| 15.19 | Treatment of Laurel Racing Association Stock (Class 53) | 37 |
| 15.20 | Treatment of MEC Lone Star Stock (Class 54) | 37 |
| 15.21 | Treatment of Thistledown Stock (Class 55) | 37 |
| 15.22 | Treatment of Old RP Stock (Class 56) | 37 |
| 15.23 | Treatment of MEC Dixon Stock (Class 57) | 37 |
| 15.24 | Treatment of Sunshine Meadows Stock (Class 58) | 37 |
| 15.25 | Treatment of 30000 Maryland Stock (Class 59) | 38 |
| 15.26 | Treatment of MEC Holdings Stock (Class 60) | 38 |
| ARTICLE XVI | PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN | 38 |
| 16.1 | Objections to Claims; Prosecution of Disputed Claims | 38 |
| 16.2 | Estimation of Claims | 38 |
| 16.3 | Payments and Distributions on Disputed Claims | 39 |
| ARTICLE XVII | THE OPERATING TRUSTS | 40 |
| 17.1 | Establishment of the Trusts | 40 |
| 17.2 | Purpose of the Operating Trusts | 40 |
| 17.3 | Funding Expenses of the Operating Trusts | 40 |
| 17.4 | Transfer of Assets | 41 |
| 17.5 | Valuation of Assets | 42 |
| 17.6 | Investment Powers | 42 |
| 17.7 | Annual Distribution; Withholding | 42 |
| 17.8 | Reporting Duties | 43 |
| 17.9 | Trust Implementation | 44 |
| 17.10 | Registry of Beneficial Interests | 44 |
| 17.11 | Termination | 44 |
| 17.12 | Non-Transferability or Certification | 44 |
| 17.13 | Applicability to Certain Claims | 44 |
| ARTICLE XVIII | PROSECUTION OF CLAIMS HELD BY THE DEBTOR | 45 |
| 18.1 | Prosecution of Claims | 45 |
| ARTICLE XIX | ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS | 45 |
| 19.1 | Impaired Classes to Vote | 45 |
| 19.2 | Acceptance by Class of Creditors | 45 |

| | | |
|---|---|---|
| 19.3 | Cramdown | 45 |
| ARTICLE XX | IDENTIFICATION OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN | 45 |
| 20.1 | Impaired and Unimpaired Classes | 45 |
| 20.2 | Impaired Classes Entitled to Vote on Plan | 46 |
| 20.3 | Equity Interests Deemed to Reject | 46 |
| 20.4 | Controversy Concerning Impairment | 46 |
| ARTICLE XXI | PROVISIONS REGARDING DISTRIBUTIONS | 46 |
| 21.1 | Distributions of Cash to Allowed Claims | 46 |
| 21.2 | Sources of Cash for Distribution | 46 |
| 21.3 | Timeliness of Payments | 46 |
| 21.4 | Distributions by the Disbursing Agent | 46 |
| 21.5 | Manner of Payment under the Plan | 46 |
| 21.6 | Delivery of Distributions | 47 |
| 21.7 | Undeliverable Distributions | 47 |
| 21.8 | Indenture Trustee | 48 |
| 21.9 | Compliance with Tax Requirements | 48 |
| 21.10 | Time Bar to Cash Payments | 48 |
| 21.11 | Distributions After Effective Date | 48 |
| 21.12 | Setoffs | 48 |
| 21.13 | Allocation of Plan Distributions Between Principal and Interest | 49 |
| 21.14 | Exemption from Securities Law | 49 |
| ARTICLE XXII | CREDITORS' COMMITTEE | 49 |
| 22.1 | Dissolution of the Creditors' Committee | 49 |
| ARTICLE XXIII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 49 |
| 23.1 | Assumption and Assignment of Executory Contracts and Unexpired Leases | 49 |
| 23.2 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 50 |
| 23.3 | Rejection Damage Claims | 50 |
| 23.4 | Indemnification and Reimbursement Obligations | 50 |
| ARTICLE XXIV | RIGHTS AND POWERS OF DISBURSING AGENT | 51 |
| 24.1 | Exculpation | 51 |
| 24.2 | Powers of the Disbursing Agent | 51 |
| 24.3 | Fees and Expenses Incurred From and After the Effective Date | 51 |
| ARTICLE XXV | THE REORGANIZED DEBTORS PLAN ADMINISTRATOR | 51 |
| 25.1 | Appointment of Reorganized Debtor Plan Administrator | 51 |

| | | |
|---|---|---|
| 25.2 | Responsibilities of the Reorganized Debtor Plan Administrator | 52 |
| 25.3 | Powers of the Reorganized Debtor Plan Administrator | 52 |
| 25.4 | Compensation of the Reorganized Debtor Plan Administrator | 52 |
| 25.5 | Termination of Reorganized Debtor Plan Administrator | 52 |
| ARTICLE XXVI | CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN; IMPLEMENTATION PROVISIONS | 53 |
| 26.1 | Conditions Precedent to Effective Date of the Plan | 53 |
| 26.2 | Waiver of Conditions Precedent | 53 |
| ARTICLE XXVII | RETENTION OF JURISDICTION | 54 |
| 27.1 | Retention of Jurisdiction | 54 |
| ARTICLE XXVIII | MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | 55 |
| 28.1 | Modification of Plan | 55 |
| 28.2 | Revocation or Withdrawal | 56 |
| ARTICLE XXIX | PROVISION FOR MANAGEMENT | 56 |
| 29.1 | Reorganized Debtors Directors | 56 |
| ARTICLE XXX | ARTICLES OF INCORPORATION AND BY-LAWS OF THE DEBTOR; CORPORATE ACTION | 56 |
| 30.1 | Amendment of Articles of Incorporation/Charter | 56 |
| 30.2 | Corporate Action | 56 |
| 30.3 | Issuance of Equity Interests in the Reorganized Debtors | 57 |
| 30.4 | Cancellation of Existing Securities and Agreements | 57 |
| 30.5 | Surrender of Existing Securities | 57 |
| 30.6 | Cancellation of Liens | 57 |
| ARTICLE XXXII | MISCELLANEOUS PROVISIONS | 59 |
| 32.2 | Injunction on Claims | 60 |
| 32.3 | Integral to Plan | 61 |
| 32.4 | Releases by the Debtors | 61 |
| 32.5 | Releases by Holders of Claims and Equity Interests | 61 |
| 32.7 | Exculpation | 62 |
| 32.8 | Deemed Consent | 62 |
| 32.9 | No Waiver | 63 |
| 32.10 | Supplemental Injunction | 63 |
| 32.11 | Preservation of Rights of Action | 64 |
| 32.12 | Payment of Statutory Fees | 64 |
| 32.13 | Retiree Benefits | 64 |
| 32.14 | Preservation of Insurance | 65 |

# TABLE OF CONTENTS
## (continued)

32.15    Post-Effective Date Fees and Expenses ...................................................... 65
32.16    Severability ................................................................................................. 65
32.17    Governing Law ........................................................................................... 65
32.18    Notices ........................................................................................................ 65
32.19    Closing of Cases ......................................................................................... 66
32.20    Section Headings ........................................................................................ 66
32.21    Inconsistencies ........................................................................................... 67

Magna Entertainment Corp., The Santa Anita Companies, Inc., Los Angeles Turf Club, Incorporated, Pacific Racing Association, MEC Land Holdings (California) Inc., Gulfstream Park Racing Association Inc., GPRA Thoroughbred Training Center, Inc., MEC Dixon, Inc., MEC Holdings (USA) Inc., Sunshine Meadows Racing, Inc., Thistledown, Inc., MEC Maryland Investments, Inc., 30000 Maryland Investments LLC, Old RP, Inc., *f/k/a*, Remington Park, Inc., GPRA Commercial Enterprises Inc., Pimlico Racing Association, Inc., The Maryland Jockey Club of Baltimore City, Inc., Laurel Racing Association, Limited Partnership, Laurel Racing Assoc., Inc., Prince George's Racing, Inc., Southern Maryland Racing, Inc., Southern Maryland Agricultural Association, Maryland Jockey Club, Inc., AmTote International, Inc., MEC Pennsylvania Racing Services, Inc. MEC Lone Star, LP, the Official Committee of Unsecured Creditors, MI Developments Inc. and MI Developments US Financing Inc. hereby propose the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below and be equally applicable to the singular and plural of terms defined:

1.1 **Administrative Claim Bar Date**:  Unless otherwise ordered by the Bankruptcy Court, the date established by the Bankruptcy Court and set forth in the Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than thirty (30) days after the Effective Date, after which date, any proof of Administrative Expense Claim not filed with the Bankruptcy Court shall be deemed forever barred and the Debtors, the Reorganized Debtors, MID and MID Islandi shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred in accordance with an order of the Bankruptcy Court or with the consent of the Debtors and in the ordinary course of the Debtors' operations.

1.2 **Administrative Expense Claim**:  Any Claim arising on or prior to the Effective Date constituting a cost or expense of administration of the Chapter 11 Cases asserted or authorized to be asserted in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code and on or prior to the Administrative Claim Bar Date, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors in Possession, any costs and expenses of the Debtors in Possession for the management, maintenance, preservation, sale or other disposition of any assets, the administration and implementation of the Plan, the administration, prosecution or defense of Claims by or against the Debtors and for distributions under the Plan, any Claims for reclamation in accordance with section 546(c)(2) of the Bankruptcy Code allowed pursuant to Final Order, any Claims for compensation and reimbursement of expenses arising during the period from and after the applicable Petition Date and prior to the Effective Date and awarded by the Bankruptcy Court in accordance with sections 328, 330, 331 or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date, any fees or charges

assessed against the Debtors' estates pursuant to section 1930, chapter 123, Title 28 of the United States Code and any obligations arising in connection with the Reorganized Debtors' assumption of their indemnification and reimbursement obligations pursuant to Section 23.4 of the Plan.

1.3   **Allowed Administrative Expense Claim**:  An Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

1.4   **Allowed BMO Claim**:  The BMO Claim, to the extent it is or has become an Allowed Claim.

1.5   **Allowed Bridge Loan Claim**:  The Bridge Loan Claim, which shall be deemed to be an Allowed Claim in the principal amount of $125,562,882.00 as of the Petition Date.

1.6   **Allowed Claim**:  Any Claim against the Debtors or the Debtors' estates, (i) proof of which was filed on or before the date designated by the Bankruptcy Court or established by the Bankruptcy Code as the last date for filing such proof of claim against the applicable Debtors or the Debtors' estates, or (ii) if no proof of Claim has been timely filed, which has been listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent, in each such case in clauses (i) and (ii) above, a Claim as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  For purposes of determining the amount of an "Allowed Claim", there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to applicable bankruptcy or non-bankruptcy law.  Without in any way limiting the foregoing, "Allowed Claim" shall include any Claim arising from the recovery of property in accordance with sections 550 and 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of the Plan or any Claim to the extent that it has been allowed pursuant to a Final Order; provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) for any purpose under the Plan, "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the applicable Petition Date, and (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.7   **Allowed 8.55% Note Claim**: An 8.55% Note Claim, to the extent it is or has become an Allowed Claim.

1.8   **Allowed Gulfstream Park Claim**:  The Gulfstream Park Claim, which shall be deemed to be an Allowed Claim in the principal amount of $170,810,111.00 as of the Petition Date.

1.9     **Allowed MJC Claim**: An MJC Claim, to the extent it is or has become an Allowed Claim.

1.10    **Allowed Non-MJC General Unsecured Claim**:  A Non-MJC General Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.11    **Allowed PNC Claim**:  The PNC Claim, to the extent it is or has become an Allowed Claim.

1.12    **Allowed PNC Guarantee Claim**:  The PNC Guarantee Claim, to the extent it is or has become an Allowed Claim.

1.13    **Allowed Priority Claim**:  A Priority Claim, to the extent it is or has become an Allowed Claim.

1.14    **Allowed Priority Non-Tax Claim**:  A Priority Non-Tax Claim, to the extent it is or has become an Allowed Claim.

1.15    **Allowed Priority Tax Claim**:  A Priority Tax Claim, to the extent it is or has become an Allowed Claim.

1.16    **Allowed Old RP Claim**:  The Old RP Claim, which shall be deemed to be an Allowed Claim in the principal amount of $22,787,417.00 as of the Petition Date

1.17    **Allowed 7.25% Note Claim**: A 7.25% Note Claim, to the extent it is or has become and Allowed Claim.

1.18    **Allowed 2008 Loan Claim**:  The 2008 Loan Claim, which shall be deemed to be an Allowed Claim in the principal amount of $52,527,767.00 as of the Petition Date

1.19    **Allowed Wells Fargo Claim**:  The Wells Fargo Claim, to the extent it is or has become an Allowed Claim.

1.20    **Allowed Wells Fargo Guarantee Claim**:  The Wells Fargo Guarantee Claim, to the extent it is or has become an Allowed Claim.

1.21    **AmTote**: AmTote International, Inc., a Delaware corporation.

1.22    **AmTote Stock**: Equity Interests in AmTote.

1.23    **Assets**:  With respect to a Debtor or a Reorganized Debtor, as the case may be, (a) all "property" of such Debtor's or Reorganized Debtor's estate, as defined in section 541 of the Bankruptcy Code, including, without limitation, such property as is reflected on such Debtor's or Reorganized Debtor's books and records as of the Effective Date, unless modified pursuant to the Plan or a Final Order, and (b) all claims and causes of action that may have been or may be commenced by such Debtor's or Reorganized Debtor's or other authorized representative for the benefit of such Debtor's or Reorganized Debtor's estate, unless modified pursuant to the Plan or a Final Order.

RLF1 3539354v.1

1.24 **Ballot**: The form distributed to each holder of an impaired Claim on which is to be indicated acceptance or rejection of the Plan.

1.25 **Ballot Date**: The date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots.

1.26 **Bankruptcy Code**: The Bankruptcy Reform Act of 1978, as amended, to the extent codified in Title 11, United States Code, as applicable to the Chapter 11 Cases.

1.27 **Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

1.28 **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended, as applicable to the Chapter 11 Cases.

1.29 **BMO**: Bank of Montreal, and its successors and assigns under the BMO Credit Agreement.

1.30 **BMO Claim**: Collectively, any and all Claims against Magna Entertainment arising from or relating to the BMO Credit Agreement and the Allowed BMO Guarantee Claim.

1.31 **BMO Credit Agreement**: The Amended and Restated Credit Agreement, dated July 22, 2005, between Magna Entertainment, as borrower, BMO, acting through its Chicago lending office, as lender, and BMO Nesbit Burns, Inc., a division of BMO, as agent.

1.32 **BMO Guarantee Claim**: Collectively, any and all Claims against Pacific Racing, MEC Land Holdings, Santa Anita Companies, and L.A. Turf Club, arising from or relating to such Debtors' guarantees of Magna Entertainment's obligations arising from or relating to the BMO Credit Agreement.

1.33 **Bridge Loan Agreement**: The Bridge Loan Agreement, dated September 12, 2007, between Magna Entertainment, as borrower, and MID Islandi, as lender, and the guarantors named therein.

1.34 **Bridge Loan Claim**: Collectively, any and all Claims against Magna Entertainment arising from or relating to the Bridge Loan Agreement and the Bridge Loan Guarantee Claims.

1.35 **Bridge Loan Guarantee Claims**: Any and all Claims against Pacing Racing, MEC Land Holdings, Gulfstream Park Racing, Palm Meadows Training Center, MEC Dixon, MEC Holdings, Sunshine Meadows, Thistledown, MEC Maryland, or 30000 Maryland arising from or relating to such Debtors' guarantees of Magna Entertainment's obligations arising from or relating to the Bridge Loan Agreement.

4

1.36    **Business Day**:  A day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.37    **Cash**:  Lawful currency of the United States of America.

1.38    **Cash Equivalents**:  Equivalents of Cash in the form of readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than One Hundred Million Dollars ($100,000,000.00), having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

1.39    **Chapter 11 Cases**:  The cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the applicable Petition Date, styled *In re Magna Entertainment Corp., et al.*, Chapter 11 Cases No. 09-10720 (MFW), Jointly Administered, currently pending before the Bankruptcy Court.

1.40    **Claim**:  Any right to payment from the Debtors or from property of the Debtors or their estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors or from property of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.41    **Class**:  A category of holders of Claims or Equity Interests set forth in Articles III through XIII of the Plan.

1.42    **Class A Shares**:  The shares of Class A Subordinate Voting Stock issued by Magna Entertainment pursuant to that certain Restated Certificate of Incorporation of Magna Entertainment, dated March 1, 2000.

1.43    **Class B Shares**:  The shares of Class B Stock issued by Magna Entertainment pursuant to that certain Restated Certificate of Incorporation of Magna Entertainment, dated March 1, 2000.

1.44    **Collateral**:  Any property or interest in property of the estates of the Debtors that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.45    **Committee Litigation**:  The litigation commenced by the Creditors' Committee and as authorized by that certain Order Authorizing the Official Committee of Unsecured Creditors to Pursue Certain Claim and Causes of Action of the Debtors' Estates, dated August 20, 2009, and styled *The Official Committee of Unsecured Creditors of Magna Entertainment Corp., et al. v. MI Developments Inc., MID Islandi, Frank Stronach, Jerry D. Campbell,*

5

*William Menear, Anthony R. Campbell and W. Thomas Hodgson*, Adversary Pro. No. 09-51523, which litigation is currently pending before the Bankruptcy Court.

1.46 **Committee Litigation Settlement Payment**: The payment in the amount of Seventy Five Million Dollars ($75,000,000.00) to be made on the Effective Date by MID or MID US Financing to the Reorganized Debtors Plan Administrator for distribution to Allowed Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims and Allowed 7.25% Note Claims as set forth in Articles XI through XIII hereof.

1.47 **Confirmation Date**: The date the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases.

1.48 **Confirmation Hearing**: The hearing to consider confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.49 **Confirmation Order**: The order of the Bankruptcy Court confirming the Plan.

1.50 **Creditor**: Any Person or Entity holding a Claim against the Debtors' estates or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtors that arose or is deemed to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtors or Debtors in Possession of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.51 **Creditor Cash**: At any time, the excess, if any, of (1) the sum of (a) the MID Settlement Payment, (b) the Committee Litigation Settlement Payment, and (c) Creditor Sale Proceeds <u>over</u> (2) the sum of such amounts (u) determined by the applicable Operating Trustee, as directed by the applicable Operating Trust Board and in accordance with a budget delivered by the Debtors to the Creditors' Committee and MID ten (10) days prior to the Effective Date (which such budget shall be reasonably acceptable to the Debtors, the Creditors' Committee and MID, in their joint discretion), as necessary to fund the ongoing operations of the Operating Trusts, as the case may be, including the amount necessary to provide compensation and reimbursement of expenses, to the Operating Trustees, its agents and representatives, including, without limitation, the Operating Trustees' attorneys fees, during the period from the Effective Date up to and including such later date as the Operating Trustees shall reasonably determine, to the extent allocable to Allowed Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims and Allowed 7.25% Note Claims pursuant to Articles XI through XIII hereof, (v) necessary to pay the KLNF Contingency Fee, (w) necessary to make pro rata distributions to holders of Disputed Claims as if such Disputed Claims were, at such time, Allowed Claims and (x) necessary to provide compensation and reimbursement of expenses to (i) the Reorganized Debtors Plan Administrator, its agents and representatives, including, without limitation, the Reorganized Debtors Plan Administrator's attorney fees, in an amount and on such terms as may be reflected in the Reorganized Debtors Plan Administrative Agreement, (ii) the Disbursing Agent, its agents and representatives, including, without limitation, the Disbursing Agent's attorney fees, in each case in this clause (y) necessary to reimburse the Reorganized Debtors and the Creditors' Committee for fees and expenses

6

contemplated by Section 32.15 and (z), as are allocable to Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims and Allowed 7.25% Note Claims pursuant to Articles XI and XII hereof, provided that prior to the LSP Sale, the MJC Sale and the Thistledown Sale, the Creditor Sale Proceeds shall be included solely to the extent received for purposes of Articles XI through XIII hereof.

1.52 **Creditors' Committee**: The statutory committee of creditors appointed in the Chapter 11 Cases pursuant to section 1102(a)(1) of the Bankruptcy Code, as reconstituted from time to time.

1.53 **Creditor LSP Sale Proceeds**: An amount equal to up to the first Twenty Million Dollars ($20,000,000.00) of LSP Sale Proceeds.

1.54 **Creditor MJC Sale Proceeds**: Fifty-percent (50%) of the MJC Sale Proceeds in excess of Twenty Million Dollars ($20,000,000.00), if any, remaining after full satisfaction, settlement, release and discharge of all MJC Claims as set forth in Section 14.1 of the Plan.

1.55 **Creditor Sale Proceeds**: The sum of Creditor LSP Sale Proceeds, Creditor MJC Sale Proceeds and Creditor Thistledown Sale Proceeds.

1.56 **Creditor Thistledown Sale Proceeds**: Thistledown Sale Proceeds in excess of Twenty Million Dollars ($20,000,000.00).

1.57 **Debtors**: Magna Entertainment Corp., The Santa Anita Companies, Inc., Los Angeles Turf Club, Incorporated, Pacific Racing Association, MEC Land Holdings (California) Inc., Gulfstream Park Racing Association Inc., GPRA Thoroughbred Training Center, Inc., MEC Dixon, Inc., MEC Holdings (USA) Inc., Sunshine Meadows Racing, Inc., Thistledown, Inc., MEC Maryland Investments, Inc., 30000 Maryland Investments LLC, Old RP, Inc., *f/k/a*, Remington Park, Inc., GPRA Commercial Enterprises Inc., Pimlico Racing Association, Inc., The Maryland Jockey Club of Baltimore City, Laurel Racing Association, Limited Partnership, Laurel Racing Assoc., Inc., Prince George's Racing, Inc., Southern Maryland Racing, Inc., Southern Maryland Agricultural Association, Maryland Jockey Club, Inc., AmTote International, Inc., MEC Pennsylvania Racing Services, Inc. and MEC Lone Star, LP.

1.58 **Debtors in Possession**: The Debtors, as debtors in possession, pursuant to sections 1101(1) and 1107(a) of the Bankruptcy Code.

1.59 **DIP Agreement**: Collectively, the (a) Debtor in Possession Credit Agreement, dated as of March 6, 2009, as amended by that certain Waiver and First Amendment, dated as of April 22, 2009 and the Joinder and Second Amendment, dated as of April 22, 2009, and (b) Second Amended and Restated Debtor in Possession Credit Agreement, dated as of October 9, 2009, between the Debtors and MID Islandi.

1.60 **DIP Obligations**: The obligations of the Debtors arising from or related to the DIP Agreement and the DIP Orders.

1.61 **DIP Orders**: The (a) Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant to Sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1)

and 364(e) and (B) Utilize Cash Collateral of Prepetition Secured Lenders, (II) Granting Adequate Protection to Prepetition Secured Lenders and (III) Granting Related Relief, dated April 22, 2009 and (b) Final Order (I) Supplementing Final DIP Order and (II) Authorizing Debtors to Enter into Second Amended and Restated Debtor in Possession Credit Agreement, dated October 28, 2009.

1.62    **Disbursing Agent**:  Solely in its capacity as agent of the Debtors to effectuate distributions pursuant to the Plan, the Entity identified in the Plan Supplement, or such other Entity as may be designated by the Debtors, in consultation with MID and the Creditors' Committee, and appointed by the Bankruptcy Court and set forth in the Confirmation Order.

1.63    **Disclosure Statement**:  The disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

1.64    **Disclosure Statement Order**:  The Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

1.65    **Disputed Claim**:  Any Claim against the Debtors, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by an order of the Bankruptcy Court.

1.66    **Disputed Claim Amount**:  The lesser of (a) the liquidated amount set forth in the proof of claim filed with the Bankruptcy Court relating to a Disputed Claim, (b) if the Bankruptcy Court has estimated such Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, the amount of a Disputed Claim as estimated by the Bankruptcy Court, and (c) the amount of such Disputed Claim allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Court, or zero, if such Disputed Claim is disallowed by the Bankruptcy Court pursuant to such section, in either case, regardless of whether the order or judgment allowing or disallowing such Claim has become a Final Order.

1.67    **8.55% Indenture**:  The Indenture, dated June 2, 2003, between Magna Entertainment, as issuer, and The Bank of New York Mellon, as trustee, pursuant to which the 8.55% Notes were issued.

1.68    **8.55% Notes**:  The 8.55% Convertible Subordinated Notes, due June 15, 2010, issued by Magna Entertainment pursuant to the 8.55% Indenture, of which the principal amount of One Hundred Fifty Million Dollars ($150,000,000.00) was outstanding on the applicable Petition Date.

1.69    **8.55% Note Claim**:  A Claim or Equity Interest against Magna Entertainment arising under or in connection with the 8.55% Notes.

1.70    **Effective Date**:  The earlier to occur of (a) the first (1st) Business Day following the Confirmation Date that the conditions to effectiveness of the Plan set forth in Section 26.1 hereof have been satisfied or otherwise waived in accordance with Section 26.2 hereof so long

as the effectiveness of the Confirmation Order shall not be stayed and (b) such other date following the Confirmation Date that the Debtors designate and is agreed to by the Creditors' Committee and MID.

1.71    **Entity**:  A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee, or any other entity.

1.72    **Equity Interest**:  In the case of Debtors or Reorganized Debtors, any equity interest in any of the Debtors or Reorganized Debtors represented by duly authorized, validly issued and outstanding shares of preferred stock, common stock or any membership, partnership or other interest or right to convert into such an equity interest or acquire any equity interest of the Debtors which was in existence immediately prior to the Petition Date or issued on the Effective Date.  In the case of any other Entity, any equity interest in such Entity represented by duly authorized, validly issued and outstanding shares of preferred stock, common stock or any membership, partnership or other interest or right to convert into such an equity interest or acquire any equity interest of such Entity.

1.73    **Fasken Martineau**:  Fasken Martineau Dumoulin LLP.

1.74    **Final Order**:  An order or judgment of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; and if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

1.75    **Formation Agreement Claim**:  Any Claim based on the Debtors' rejection of that certain agreement between Pimlico, Laurel Racing, Laurel Racing Association and The Maryland Jockey Club of Baltimore City and Joseph DeFrancis, FJN LLC, The Martin Jacobs 2002 Irrevocable Trust, LUK-Flats LLC and Laurel Guida Group, dated November 27, 2002.

1.76    **Formation Agreement Guarantee Claim**:  Any and all Claims against the Debtors arising from or relating to that certain Guarantee Agreement, by and among Magna Entertainment, Pimlico, Laurel Racing, Laurel Racing Association, The Maryland Jockey Club of Baltimore City, Maryland Racing, Inc. and and Joseph DeFrancis, FJN LLC, The Martin Jacobs 2002 Irrevocable Trust, LUK-Flats LLC and Laurel Guida Group, dated November 27, 2002.

1.77    **GPRA Commercial**:  GPRA Commercial Enterprises, Inc., a Florida corporation.

1.78    **GPRA Commercial Stock**:  Equity Interests in GPRA Commercial.

1.79    **Gulfstream Park Agreement**:  The Third Amended and Restated Gulfstream Loan Agreement, dated December 22, 2006, between Gulfstream Park Racing, as borrower, and MID Islandi, as lender.

1.80    **Gulfstream Park Claim**:  Collectively, any and all claims against Gulfstream Park Racing arising from or relating to the Gulfstream Park Agreement and the Gulfstream Park Guarantee Claim.

1.81    **Gulfstream Park Guarantee Claim**:  Collectively, any and all claims against Old RP, Palm Meadows Training Center, GPRA Commercial Enterprises, and Magna Entertainment arising from or relating to such Debtors' guarantees of Gulfstream Park Racing's obligations arising from or relating to the Gulfstream Park Agreement.

1.82    **Gulfstream Park Racing**:  Gulfstream Park Racing Association, Inc., a Florida corporation.

1.83    **Gulfstream Park Racing Stock**:  Equity Interests in Gulfstream Park Racing.

1.84    **Indenture Trustee**:  The Bank of New York, and/or its successors, as indenture trustee under the 7.25% Indenture and the 8.55% Indenture.

1.85    **Individual Defendants**: Frank Stronach, Jerry D. Campbell, William J. Menear, Anthony R. Campbell and W. Thomas Hodgson in the Committee Litigation.

1.86    **Individual Defendant Claims**: The claims against the Individual Defendants in the Committee Litigation.

1.87    **IRC**:  The Internal Revenue Code of 1986, as amended from time to time.

1.88    **IRS**:  The Internal Revenue Service, an agency of the United States Department of Treasury.

1.89    **KLNF**:  Kramer Levin Naftalis and Frankel LLP

1.90    **KLNF Amended Retention Order**:  That certain Order Approving the Amended Retention of Kramer Levin Naftalis & Frankel LLP as Counsel to the Official Committee of Unsecured Creditors Effective as of September 1, 2009, dated September 15, 2009, of the Bankruptcy Court.

1.91    **KLNF Contingency Fee**:  The contingency fee, if any, payable to KLNF in accordance with the KLNF Amended Retention Order, which fee shall not be credited against fees incurred for work performed by KLNF from and after January 11, 2010, other than fees incurred by counsel to the Creditors' Committee in respect of the settlement of the Committee

Litigation, including negotiating, drafting and filing of the Plan, through the date of filing the Plan and which fee shall be based on total distributions made to all holders of Allowed Claims in Classes 7 through 26.

1.92  **L.A. Turf Club**:  Los Angeles Turf Club, Incorporated., a California corporation.

1.93  **L.A. Turf Club Stock**:  Equity Interests in L.A. Turf Club.

1.94  **Laurel Racing**:  Laurel Racing Assoc., Inc., a Maryland corporation.

1.95  **Laurel Racing Stock**:  Equity Interests in Laurel Racing.

1.96  **Laurel Racing Association**:  Laurel Racing Association Limited Partnership, a Maryland limited partnership.

1.97  **Laurel Racing Association Stock**:  Equity Interests in Laurel Racing Association.

1.98  **Lien**:  Any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.99  **Litigation Expenses**:  To be paid upon the Effective Date, (i) subject to approval of final fee applications by the Bankruptcy Court, the (a) fees and expenses incurred by KLNF in connection with the Committee Litigation, including, without limitation, payment of fees incurred by KLNF in connection with the investigation that are in excess of the limitations set forth in the DIP Orders and (b) fees and expenses incurred by PSZJ in connection with the Committee Litigation, (ii) fees and expenses incurred by Fasken Martineau in connection with the Committee Litigation, (iii) fees and expenses incurred by any of the members of the Creditors' Committee in connection with the Committee Litigation and (iv) fees and expenses incurred by the Indenture Trustee in connection with the chapter 11 cases, as contemplated by Section 21.8(b) hereof.

1.100  **LSP Sale**:  The sale of either the MEC Lone Star Stock or substantially all of the Assets of MEC Lone Star.

1.101  **LSP Sale Proceeds**:  The proceeds from the sale of MEC Lone Star or its Assets received by the Debtors, net of the sum of (i) all reasonable professional fees, including, without limitation, the fees of Miller Buckfire, brokers' fees paid on an arm's-length basis, filing fees, commissions, sales tax and other direct costs and expenses of such transaction, (ii) any amounts necessary to repay or otherwise satisfy all Permitted Liens (as defined in the DIP Agreement) attaching to MEC Lone Star or its Assets in accordance with the DIP Agreement, and (iii) any and all cure costs associated with unexpired leases and executory contracts assumed and assigned to the purchaser in connection with the LSP Sale that are not paid by the purchaser.

1.102  **LSP Trust**:  The Entity, if any, to be created on or subsequent to the Confirmation Date, to hold, as its sole assets, the Reorganized MEC Lone Star Stock and all of

the Assets of Reorganized MEC Lone Star, in the event that the Debtors have not consummated the LSP Sale and received the LSP Sale Proceeds as of the Effective Date.

1.103 **LSP Trust Agreement**: In the event that the LSP Trust is created, the LSP Trust Agreement, pursuant to which the LSP Trustee shall (i) manage, administer, operate and liquidate the assets contained in the LSP Trust, either the Reorganized MEC Lone Star Stock or substantially all of the Assets of Reorganized MEC Lone Star, as the case may be, and (ii) distribute the LSP Sale Proceeds pursuant to the terms of the Plan.

1.104 **LSP Trust Board**: In the event that the LSP Trust is created, the Persons selected by the Debtors, MID and the Creditors' Committee, or any replacements thereafter selected in accordance with the provisions of the LSP Trust Agreement.

1.105 **LSP Trustee**: In the event that the LSP Trust is created, the Entity identified in the Plan Supplement, or such other Entity appointed by the LSP Trust Board to administer the LSP Trust in accordance with provisions of XVII hereof and the LSP Trust Agreement.

1.106 **LSP Trust Interests**: In the event that the LSP Trust is created, beneficial interests in the LSP Trust to be allocated to holders of MID Claims, Allowed Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims and Allowed 7.25% Note Claims, as set forth in Articles XI through XIII of the Plan.

1.107 **Magna Entertainment**: Magna Entertainment Corp., a Delaware corporation.

1.108 **Magna Entertainment Stock**: Equity Interests in Magna Entertainment, including the Class A Shares and the Class B Shares.

1.109 **Magna Entertainment Board of Trustees**: The Board of Trustees of Magna Entertainment.

1.110 **Maryland Jockey Club**: Maryland Jockey Club, Inc., a Maryland corporation.

1.111 **Maryland Jockey Club Stock**: Equity Interests in Maryland Jockey Club.

1.112 **MEC Canada**: MEC Holdings (Canada) Corp., a Nova Scotia corporation.

1.113 **MEC Content**: MEC Content Holdings LLC, a Delaware limited liability company and the holder of a fifty percent (50%) interest in TrackNet Media Group LLC

1.114 **MEC Dixon**: MEC Dixon, Inc., a Delaware corporation.

1.115 **MEC Dixon Stock**: Equity Interests in MEC Dixon.

1.116 **MEC Global Wagering**: MEC Global Wagering Solutions LLC, a Delaware limited liability company.

1.117 **MEC Holdings**: MEC Holdings (USA) Inc., a Delaware corporation.

1.118 **MEC Holdings Stock**: Equity Interests in MEC Holdings.

1.119 **MEC HRTV**:  MEC HRTV Holdco LLC, a Delaware limited liability company.

1.120 **MEC Land Holdings**:  MEC Land Holdings (California) Inc., a California corporation.

1.121 **MEC Land Holdings Stock**:  Equity Interests in MEC Land Holdings.

1.122 **MEC Land Oregon**:  MEC Land Holdings (Oregon), LLC, a Delaware limited liability company.

1.123 **MEC Lone Star**:  MEC Lone Star, LP, a Delaware limited partnership.

1.124 **MEC Lone Star Stock**:  Equity Interests in MEC Lone Star.

1.125 **MEC Maryland Investments**:  MEC Maryland Investments Inc., a Delaware corporation.

1.126 **MEC Maryland Investments Stock**:  Equity Interests in MEC Maryland.

1.127 **MEC Media**:  MEC Media Distribution Corp., a Delaware corporation.

1.128 **MEC Oregon**:  MEC Oregon Racing, Inc., a Delaware corporation.

1.129 **MEC Pennsylvania**:  MEC Pennsylvania Racing Services, Inc., a Delaware corporation.

1.130 **MEC Pennsylvania Stock**:  Equity Interests in MEC Pennsylvania.

1.131 **MEC Projektentwicklungs**:  MEC Projektentwicklungs AG, an Austrian corporation.

1.132 **MEC Services**:  MEC Services Corp., a Delaware corporation.

1.133 **MID**:  MI Developments Inc.

1.134 **MID Asset Transfer Agreement**:  One or more agreements to be executed as of the Effective Date, and contained in the Plan Supplement, transferring and conveying the MID Non-Debtor Assets to MID Transferee.

1.135 **MID Cash Consideration**:  The payment by MID or MID US Financing to the Disbursing Agent on and subsequent to the Effective Date, of Cash in such amounts as are necessary to satisfy distributions as set forth in the Plan to holders of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed PNC Claim, and Allowed MJC Claims (which Allowed PNC Claim and Allowed MJC Claims shall be paid by MID or MID US Financing solely from the MID MJC Sale Proceeds) on the terms and subject to the conditions set forth in this Plan.

1.136 **MID Claims**:  Collectively, the Allowed Bridge Loan Claim, Allowed Gulfstream Park Claim, Allowed Old RP Claim and Allowed 2008 Loan Claim.

13

1.137 **MID Islandi**:  MID Islandi sf., a partnership formed under the laws of Iceland, acting through its Zug branch.

1.138 **MID Litigation Cash Consideration**:  The payment in an amount up to One Million Five Hundred Thousand Dollars ($1,500,000.00) to be made on the Effective Date by MID or MID US Financing to the Reorganized Debtors Plan Administrator for payment of the Litigation Expenses.

1.139 **MID LSP Sale Proceeds**:  The LSP Sale Proceeds, if any, in excess of Twenty-Million Dollars ($20,000,000.00).

1.140 **MID MJC Sale Proceeds**:  After full satisfaction, settlement, release and discharge of all MJC Claims as set forth in Section 14.1 of this Plan, the sum of (i) one hundred percent (100%) of the first Twenty-Million Dollars ($20,000,000.00) of MJC Sale Proceeds and (ii) fifty-percent (50%) of the MJC Sale Proceeds, if any, in excess of the first Twenty Million Dollars ($20,000,000.00).

1.141 **MID Non-Debtor Assets**:  Collectively, (i) the Equity Interests held by MEC Canada in each of 690346 Ontario Inc., an Ontario corporation, and 805062 Ontario Limited, an Ontario corporation; (ii) the Equity Interests held by MEC Media in MEC Media Television Holdings, Inc., a Delaware corporation; and (iii) subject to the XpressBet Option, the Assets of XpressBet as set forth in Exhibit A hereto.

1.142 **MID Reorganized Debtor Assets**:  Collectively, (i) the Assets of Santa Anita Companies as set forth in Exhibit B-1 hereto; (ii) the Assets of MEC Land Holdings as set forth in Exhibit B-2 hereto, including all the Equity Interests held by Reorganized MEC Land Holdings in MEC Land Oregon; (iii) all the Equity Interests held by Magna Entertainment in the following Entities: MEC Content, MEC Global Wagering, MEC HRTV, MEC Oregon, MEC Services, Racetrack Television Network, Santa Anita Commercial Enterprise, 1180482 Ontario and MEC Projektentwicklungs and, subject to the XpressBet Option, the Equity Interests in XpressBet; (iv) the Assets of Reorganized Magna Entertainment as set forth in Exhibit B-3 hereto; (v) the Assets of Reorganized Gulfstream Park Racing as set forth in Exhibit B-4 hereto and (vi) the PA Meadows Proceeds, in the event that the PA Meadows Litigation has been determined by a Final Order of the Bankruptcy Court or otherwise compromised and settled by the parties thereto.

1.143 **MID Reorganized Debtor Stock**:  Collectively, the Reorganized L.A. Turf Club Stock, the Reorganized Pacific Racing Stock, the Reorganized Palm Meadows Training Center Stock, the Reorganized Gulfstream Park Racing Stock, the Reorganized GPRA Commercial Stock, the Reorganized MEC Maryland Investments Stock  and the Reorganized 30000 Maryland Stock.

1.144 **MID Thistledown Sale Proceeds**:  An amount, if any, up to the first Twenty Million Dollars ($20,000,000.00) of Thistledown Sale Proceeds.

1.145 **MID Transferee**:  MID US Financing, from and after the Effective Date, in its capacity as transferee of the MID Non-Debtor Assets, MID Reorganized Assets and MID Reorganized Stock or, at the sole option and discretion of MID, which option shall be exercised

14

and the Entity designated, in writing, no later than ten (10) days prior to the Effective Date, (i) any one or more subsidiaries or affiliates of MID, or (ii) any one or more Persons, in a transaction which is exempt from the registration requirements of Securities Act of 1933, as amended, and any other applicable securities laws, as MID shall designate in writing prior to the Effective Date.

1.146 **MID US Financing**:  MI Developments US Financing Inc., a Delaware corporation, as the holder of the Allowed Bridge Loan Claim, Allowed Gulfstream Park Claim, the Allowed Old RP Claim and the Allowed 2008 Loan Claim, which Claims were transferred to MID US Financing from MID Islandi on December 31, 2009.

1.147 **Miller Buckfire**:  Miller Buckfire & Co., LLC

1.148 **MJC Claim**:  Any Claim against the MJC Debtors other than (a) the PNC Claim, (b) an Administrative Expense Claim, (c) a Secured Claim, (d) a Priority Non-Tax Claim or (e) a Priority Tax Claim.

1.149 **MJC Debtors**:  Laurel Racing, Pimlico, Laurel Racing Association, Maryland Jockey Club, Prince George's Racing, Southern Maryland AA, Southern Maryland Racing and The Maryland Jockey Club of Baltimore City.

1.150 **MJC Debtors Stock**: Equity Interests in the MJC Debtors.

1.151 **MJC Sale**:  The sale of either the MJC Debtors Stock or substantially all of the Assets of the MJC Debtors, in whole or in part.

1.152 **MJC Sale Proceeds**:  The proceeds from the sale of The Maryland Jockey Club or its Assets, in whole or in part, received by the Debtors net of the sum of (i) all reasonable professional fees, including, but not limited to, the fees of Miller Buckfire, brokers' fees paid on an arm's-length basis, filing fees, commissions, sales tax and other direct costs and expenses of such transaction, (ii) any amounts necessary to repay or otherwise satisfy all Permitted Liens (as defined in the DIP Agreement), other than liens securing the Allowed PNC Claim or the Allowed PNC Guarantee Claims attaching to The Maryland Jockey Club or its Assets in accordance with the DIP Agreement, and (iii) any and all cure costs associated with unexpired leases and executory contracts assumed and assigned to the purchaser in connection with the MJC Sale that are not paid by the purchaser; provided, however, that for purposes of paying any such costs that are netted in the calculation of the MJC Sale Proceeds, such amounts shall be paid on a pro rata basis based on the Creditor MJC Sale Proceeds and the MID MJC Sale Proceeds, out of such proceeds.

1.153 **MJC Trust**:  The Entity to be created on or subsequent to the Confirmation Date, to hold, for the benefit of holders of MJC Trust Interests, as its sole assets, the Reorganized MJC Debtors Stock and all of the Assets of the Reorganized MJC Debtors, in the event that the Debtors have not consummated the MJC Sale and have not received the MJC Sale Proceeds as of the Effective Date.

1.154 **MJC Trust Agreement**:  In the event that the MJC Trust is created, the MJC Trust Agreement, pursuant to which the MJC Trustee shall (i) manage, administer, operate and

liquidate the Assets contained in the MJC Trust, either the Reorganized MJC Stock or substantially all of the Assets of the Reorganized MJC Debtors, as the case may be, and (ii) distribute the MJC Sale Proceeds.

1.155    **MJC Trust Board**:  In the event that the MJC Trust is created, the Persons selected by the Debtors, MID and the Creditors' Committee or any replacements thereafter selected in accordance with the provisions of the MJC Trust Agreement.

1.156    **MJC Trustee**:  In the event that the MJC Trust is created, the Entity identified in the Plan Supplement, or such other Entity appointed by the MJC Trust Board and approved by the Bankruptcy Court to administer the MJC Trust in accordance with provisions of Article XVII hereof and the MJC Trust Agreement.

1.157    **MJC Trust Interests**:  In the event that the MJC Trust is created, beneficial interests in the MJC Trust to be allocated to holders of MID Claims, Allowed Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims and Allowed 7.25% Note Claims, as set forth in Articles VI, XI, and XII of the Plan.

1.158    **Non-MJC General Unsecured Claim**:  Any Claim against the estate of any of the Debtors, including a 8.55% Note Claim, a 7.25% Note Claim, other than an MID Claim,  a Secured Claim, an Administrative Expense Claim, a Priority Non-Tax Claim, a Priority Tax Claim, the BMO Claim, the Wells Fargo Claim, the PNC Claim or an MJC Claim.

1.159    **Old RP**:  Old RP, Inc., *f/k/a*, Remington Park, Inc., an Oklahoma corporation.

1.160    **Old RP Agreement**:  The Loan Agreement, dated July 22, 2005, between Old RP, as borrower, and MID Islandi, as lender.

1.161    **Old RP Claims**:  Collectively, any and all Claims against Old RP arising from or relating to the Old RP Agreement and Old RP Guarantee Claims.

1.162    **Old RP Stock**:  Equity Interests in Old RP.

1.163    **Old RP Guarantee Claims**:  Any and all Claims against Palm Meadows Training Center, Gulfstream Park Racing and Magna Entertainment arising from or relating to such Debtors' guarantees of Old RP's obligations arising under or in connection to the Old RP Agreement.

1.164    **Operating Trustee**:  In the event the Operating Trust(s) are created, the LSP Trustee, the MJC Trustee or the Thistledown Trustee, as applicable.

1.165    **Operating Trust Agreements**:  The LSP Trust Agreement, the MJC Trust Agreement and the Thistledown Trust Agreement.

1.166    **Operating Trusts**:  The LSP Trust, MJC Trust and the Thistledown Trust.

1.167    **Operating Trust Interests**:  The LSP Trust Interests, MJC Trust Interests and Thistledown Trust Interests.

1.168   **PA Meadows Litigation**:  That certain adversary proceeding styled *Magna Entertainment Corp., et al. v. PA Meadows, LLC,* Adversary Pro. No. 09-52212, currently pending in the Bankruptcy Court.

1.169   **PA Meadows Proceeds**:  Any proceeds received by the Debtors or the Reorganized Debtors from the settlement or resolution by Final Order of the PA Meadows Litigation.

1.170   **Pacific Racing**:  Pacific Racing Association, a California corporation.

1.171   **Pacific Racing Stock**:  Equity Interests in Pacific Racing Association.

1.172   **Palm Meadows Training Center**:  GPRA Thoroughbred Training Center, Inc., a Delaware corporation.

1.173   **Palm Meadows Training Center Stock**:  Equity Interests in the Palm Meadows Training Center.

1.174   **Pension Plans**:  Los Angeles Turf Club, Incorporated Retirement Income Plan and the Racing Division of AmTote International, Inc. Employees' Pension Plan.

1.175   **Permitted Liens**:  "Permitted Liens" as defined in the DIP Credit Agreement, other than subpart (xxi).

1.176   **Person**:  A "person" as defined in section 101(41) of the Bankruptcy Code.

1.177   **Petition Date**:  The date on which the Debtors filed their respective voluntary petitions for relief commencing the Chapter 11 Cases.

1.178   **Pimlico**:  Pimlico Racing Association, Inc., a Maryland corporation.

1.179   **Pimlico Stock**:  Equity Interests in Pimlico.

1.180   **Plan**:  This Joint Plan of Affiliated Debtors, the Official Committee of Unsecured Creditors, MI Developments Inc. and MI Developments US Financing Pursuant to Chapter 11 of the United States Bankruptcy Code, as the same is amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

1.181   **Plan Supplement**:  A separate volume, to be filed with the Clerk of the Bankruptcy Court including, among other documents, forms of (a) the Reorganized Debtors' By-laws, (b) the Reorganized Debtors Plan Administration Agreement, (c) the Reorganized Debtors' Certificates of Incorporation, (d) the list of executory contracts and unexpired leases to be assumed and the cure cost schedule associated with each, and (e) the Operating Trust Agreements, each in form and substance reasonably satisfactory to MID and the Creditors' Committee.

1.182   **Plan Support Agreement**:  The Support Agreement, dated February17, 2010, by and among the Debtors, members of the Creditors' Committee, MID and MID US

Financing, a copy of which is attached to the Disclosure Statement as Exhibit B thereto, which agreement sets forth the support of each of the members of the Creditors' Committee, MID and MID US Financing for the Plan.

1.183   **PNC**:  PNC Bank National Association.

1.184   **PNC Agreements**:  The (i) Second Amended and Restated Loan and Security Agreement, dated November 27, 2002, between PNC, as lender, and Pimlico and The Maryland Jockey Club of Baltimore City, as debtors, (ii) Revolving Credit Loan Agreement, dated July 7, 1999, between PNC as lender, and Pimlico, and (iii) Second Amended and Restated Loan and Security Agreement, dated November 27, 2002, with Laurel Racing.

1.185   **PNC Claim**:  Collectively, any and all Claims against Pimlico arising from or relating to the PNC Agreements and the Allowed PNC Guarantee Claim.

1.186   **PNC Guarantee Claim**:  Collectively, any and all Claims against the Laurel Racing Association, Maryland Jockey Club, Prince George's Racing, Southern Maryland AA, Southern Maryland Racing, arising from or relating to such Debtors' guarantees of Pimlico's obligations arising under or in connection to the PNC Agreement.

1.187   **Prince George's Racing**:  Prince George's Racing, Inc., a Maryland corporation.

1.188   **Prince George's Racing Stock**:  Equity Interests in Prince George's Racing.

1.189   **Priority Claim**:  A Priority Non-Tax Claim or a Priority Tax Claim, as the case may be.

1.190   **Priority Non-Tax Claim**:  Any Claim against the Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.191   **Priority Tax Claim**:  Any Claim of a governmental unit against the Debtors entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.192   **Pro Rata Share**:  With respect to Claims (a) within the same Class, the proportion that a Claim bears to the sum of all Claims, as the case may be, within such Class, (b) among all Classes, the proportion that a Class of Claims bears to the sum of all Claims, as the case may be. and (c) the proportion that a Claim bears to the sum of all Claims, as the case may be.

1.193   **Proponents**:  The Debtors, the Creditors' Committee MID and MID US Financing.

1.194   **PSZJ**:  Pachulski Stang Ziehl & Jones LLP.

RLF1 3539354v.1

1.195   **Racetrack Television Network**:  Racetrack Television Network LLC, a Delaware limited liability company.

1.196   **Related Persons**:  With respect to any Entity, such predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former affiliates and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, or other representatives, nominee or investment manager for beneficial owner(s) of the Subordinated Notes, each acting in such capacity, and any Entity claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

1.197   **Released Parties**:  Collectively, each of the Debtors, each of the Reorganized Debtors, the members of the Creditors' Committee, MID, MID Islandi, MID US Financing, the Individual Defendants and each of their respective Related Persons.

1.198   **Remington Escrow**:  The amounts held in escrow by the Debtors reflecting the net proceeds from the sale of the assets of Remington Park, Inc.

1.199   **Reorganized AmTote**:  AmTote, from and after the Effective Date.

1.200   **Reorganized AmTote Stock**:  Duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized AmTote.

1.201   **Reorganized Debtors**:  The Debtors, as applicable, from and after the Effective Date, excluding any Debtor issuing MID Reorganized Debtor Stock, as identified on Exhibit C.

1.202   **Reorganized Debtors By-Laws**:  The respective by-laws of the Reorganized Debtors, which shall be in substantially the form included in the Plan Supplement.

1.203   **Reorganized Debtors Certificate of Incorporation**:  The respective certificate of incorporation of the Reorganized Debtors, which shall be in substantially the form included in the Plan Supplement.

1.204   **Reorganized Debtors Plan Administration Agreement**:  The agreement prescribing the powers, duties and rights of the Reorganized Debtors Plan Administrator in administering the Plan that will be included in the Plan Supplement.

1.205   **Reorganized Debtors Plan Administrator**:  Person(s) or Entity to be retained, as of the Effective Date, by the Reorganized Debtors, upon the consent of MID and the Creditors' Committee (which such consent not to be unreasonably withheld) as the employee responsible for, among other things, the matters described in Section 26.2 hereof.

1.206   **Reorganized GPRA Commercial**:  GPRA Commercial, from and after the Effective Date.

1.207 **Reorganized GPRA Commercial Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized GPRA Commercial.

1.208 **Reorganized Gulfstream Park Racing**: Gulfstream Park Racing, from and after the Effective Date.

1.209 **Reorganized Gulfstream Park Racing Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Gulfstream Park Racing.

1.210 **Reorganized L.A. Turf Club**: L.A. Turf Club, from and after the Effective Date.

1.211 **Reorganized L.A. Turf Club Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized L.A. Turf Club.

1.212 **Reorganized Laurel Racing**: Laurel Racing, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.213 **Reorganized Laurel Racing Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Laurel Racing.

1.214 **Reorganized Laurel Racing Association**: Laurel Racing Association, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.215 **Reorganized Laurel Racing Association Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Laurel Racing Association.

1.216 **Reorganized Magna Entertainment**: Magna Entertainment, from and after the Effective Date.

1.217 **Reorganized Maryland Jockey Club**: Maryland Jockey Club, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.218 **Reorganized Maryland Jockey Club Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Maryland Jockey Club.

1.219  **Reorganized Maryland Jockey Club of Baltimore City**:  The Maryland Jockey Club of Baltimore City, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.220  **Reorganized Maryland Jockey Club of Baltimore City Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized The Maryland Jockey Club of Baltimore City.

1.221  **Reorganized MEC Lone Star**:  MEC Lone Star, from and after the Effective Date, if the LSP Sale has not been consummated prior to the Effective Date.

1.222  **Reorganized MEC Lone Star Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized MEC Lone Star.

1.223  **Reorganized MEC Maryland Investments**: MEC Maryland, from and after the Effective Date.

1.224  **Reorganized MEC Maryland Investments Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized MEC Maryland.

1.225  **Reorganized MJC Debtors**:  Reorganized Laurel Racing, Reorganized Pimlico, Reorganized Laurel Racing Association, Reorganized Maryland Jockey Club, Reorganized Maryland Racing, Reorganized Prince George's Racing, Reorganized Southern Maryland AA, Reorganized Southern Maryland Racing or Reorganized The Maryland Jockey Club of Baltimore City.

1.226  **Reorganized MJC Debtors' Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interests in the Reorganized MJC Debtors.

1.227  **Reorganized Pacific Racing**:  Pacific Racing, from and after the Effective Date.

1.228  **Reorganized Pacific Racing Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Pacific Racing.

1.229  **Reorganized Palm Meadows Training Center**:  Palm Meadows Training Center, from and after the Effective Date.

1.230  **Reorganized Palm Meadows Training Center Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Palm Meadows Training Center.

21

1.231   **Reorganized Pimlico**:  Pimlico, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.232   **Reorganized Pimlico Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Pimlico.

1.233   **Reorganized Prince George's Racing**: Prince George's Racing, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.234   **Reorganized Prince George's Racing Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Prince George's Racing.

1.235   **Reorganized Southern Maryland Racing**:  Southern Maryland Racing, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.236   **Reorganized Southern Maryland Racing Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Maryland Racing.

1.237   **Reorganized Southern Maryland AA**:  Southern Maryland AA, from and after the Effective Date, if the MJC Sale has not been consummated prior to the Effective Date.

1.238   **Reorganized Southern Maryland AA Stock**:  The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Southern Maryland AA.

1.239   **Reorganized Thistledown**:  Thistledown, from and after the Effective Date, if the Thistledown Sale has not been consummated prior to the Effective Date.

1.240   **Reorganized Thistledown Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized Thistledown.

1.241   **Reorganized 30000 Maryland**: 30000 Maryland, from and after the Effective Date.

1.242   **Reorganized 30000 Maryland Stock**: The duly authorized, validly issued and outstanding shares of preferred stock, common stock or any interest or right to convert into such an equity interest or acquire any equity interest of Reorganized 30000 Maryland.

1.243   **Santa Anita Commercial Enterprises**: Santa Anita Commercial Enterprises, Inc., a Delaware corporation.

1.244 **Santa Anita Companies**: The Santa Anita Companies, Inc., a Delaware corporation.

1.245 **Santa Anita Companies Stock**: Equity Interests in Santa Anita Companies.

1.246 **Schedules**: The respective schedules of assets and liabilities, the list of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended on or prior to the Effective Date.

1.247 **Secured Claim**: A Claim against the estate of any of the Debtors, other than the BMO Claim, the PNC Claim, the Wells Fargo Claim or the MID Claims, (a) secured by a valid, perfected and unavoidable Lien on Collateral or (b) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Collateral or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or as otherwise agreed to, in writing, by (1) any of the Debtors and the holder of such Claim or (2) any of the Reorganized Debtors or MID Transferee and the holder of such Claim; provided, however, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a Non-MJC General Unsecured Claim or MJC Claim, as applicable, unless, in any such case, the Class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.248 **Shared Insurance Policies**: Shared Insurance Policies means any of the insurance policies listed on Exhibit F to the Plan, as such exhibit may be amended by Debtors from time to time prior to the Effective Date

1.249 **7.25% Indenture**: The Indenture, dated December 2, 2002, between Magna Entertainment, as issuer, and The Bank of New York Mellon, as trustee, pursuant to which the 7.25% Notes were issued.

1.250 **7.25% Notes**: The 7.25% Convertible Subordinated Notes, due December 15, 2009, issued by Magna Entertainment pursuant to the 7.25% Indenture, of which the principal amount of $75,000,000.00 was outstanding on the applicable Petition Date.

1.251 **7.25% Note Claim**: A Claim or Equity Interest against Magna Entertainment arising under or in connection with the 7.25% Notes.

1.252 **Southern Maryland AA**: Southern Maryland Agricultural Association, a Maryland general partnership.

1.253 **Southern Maryland AA Stock**: Equity Interests in Southern Maryland AA.

1.254 **Southern Maryland Racing**: Southern Maryland Racing, Inc., a Maryland corporation.

RLF1 3539354v.1

1.255    **Southern Maryland Racing Stock**:  Equity Interests in Southern Maryland Racing.

1.256    **Subordinated Notes**:  The 7.25% Notes and the 8.55% Notes

1.257    **Sunshine Meadows**:  Sunshine Meadows Racing, Inc., a Delaware corporation.

1.258    **Sunshine Meadows Stock**:  Equity Interests in Sunshine Meadows.

1.259    **The Maryland Jockey Club**:  Laurel Racing, Pimlico, Laurel Racing Association, Maryland Jockey Club, Maryland Racing, Prince George's Racing, Southern Maryland AA, Southern Maryland Racing and The Maryland Jockey Club of Baltimore City.

1.260    **The Maryland Jockey Club Stock**:  The Laurel Racing Stock, Pimlico Stock, Laurel Racing Association Stock, Maryland Jockey Club Stock, Maryland Racing Stock, Prince George's Racing Stock, Southern Maryland AA Stock, Southern Maryland Racing Stock and The Maryland Jockey Club of Baltimore City Stock.

1.261    **The Maryland Jockey Club of Baltimore City**:  The Maryland Jockey Club of Baltimore City, Inc., a Maryland corporation.

1.262    **The Maryland Jockey Club of Baltimore City Stock**:  Equity Interests in The Maryland Jockey Club of Baltimore City.

1.263    **Thistledown**:  Thistledown, Inc., an Ohio corporation.

1.264    **Thistledown Sale**:  The sale of either the Thistledown Stock or substantially all of the Assets of Thistledown.

1.265    **Thistledown Sale Proceeds**:  The proceeds from the sale of Thistledown or its Assets received by the Debtors, net of the sum of (i) all reasonable professional fees, including, but not limited to, the fees of Miller Buckfire, brokers' fees paid on an arm's-length basis, filing fees, commissions, sales tax and other direct costs and expenses of such transaction, (ii) any amounts necessary to repay or otherwise satisfy all Permitted Liens (as defined in the DIP Agreement) attaching to Thistledown or its Assets in accordance with the DIP Agreement, and (iii) any and all cure costs associated with unexpired leases and executory contracts assumed and assigned to the purchaser in connection with the Thistledown Sale that are not paid by the purchaser; provided, however, that for purposes of paying any such costs that are netted in the calculation of the Thistledown Sale Proceeds, such amounts shall be paid on a pro rata basis based on the Creditor Thistledown Sale Proceeds and the MID Thistledown Sale Proceeds, out of such proceeds.

1.266    **Thistledown Stock**:  Equity Interests in Thistledown.

1.267    **Thistledown Trust**:  The Entity to be created on or subsequent to the Confirmation Date, to hold, for the benefit of the holders of Thistledown Trust Interests, as its sole assets, the Reorganized Thistledown Stock and all of the Assets of Reorganized

24

Thistledown, in the event that the Debtors have not consummated the Thistledown Sale and received the Thistledown Sale Proceeds as of the Effective Date.

1.268 **Thistledown Trust Agreement**: In the event that the Thistledown Trust is created, the Thistledown Trust Agreement, pursuant to which the Thistledown Trustee shall manage, administer, operate and liquidate the Assets contained in the Thistledown Trust, either the Reorganized Thistledown Stock or substantially all of the Assets of Reorganized Thistledown, as the case may be, and distribute the Thistledown Sale Proceeds.

1.269 **Thistledown Trust Board**: In the event that the Thistledown Trust is created, the Persons selected by the Debtors, the Creditors' Committee and MID or any replacements thereafter selected in accordance with the provisions of the Thistledown Trust Agreement.

1.270 **Thistledown Trustee**: In the event that the Thistledown Trust is created, the Entity to be identified in the Plan Supplement, or such other Entity appointed by the Thistledown Trust Board and approved by the Bankruptcy Court to administer the Thistledown Trust in accordance with provisions of Article XVII hereof and the Thistledown Trust Agreement.

1.271 **Thistledown Trust Interests**: In the event that the Thistledown Trust is created, beneficial interests in the Thistledown Trust to be allocated to holders of MID Claims, Allowed Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims and Allowed 7.25% Note Claims, as set forth in Articles VI, XI, and XII of the Plan.

1.272 **30000 Maryland**: 30000 Maryland Investments LLC, a Delaware corporation.

1.273 **30000 Maryland Stock**: Equity Interests in 30000 Maryland.

1.274 **2008 Loan Agreement**: The 2008 Loan Agreement, dated December 1, 2008, between Magna Entertainment, as borrower, and MID Islandi, as lender, and the guarantors named therein.

1.275 **2008 Loan Claim**: Collectively, any and all Claims against Magna Entertainment arising from or relating to the 2008 Loan Agreement and the 2008 Loan Guarantee Claims.

1.276 **2008 Loan Guarantee Claim**: Any and all Claims of MID Islandi against Pacific Racing, MEC Land Holdings, The Santa Anita Companies, L.A. Turf Club, Southern Maryland AA, Laurel Racing Association, The Maryland Jockey Club of Baltimore City, Southern Maryland Racing, Thistledown, MEC Maryland, or 30000 Maryland arising from or relating to such Debtors' guarantees of Magna Entertainment's obligations arising from or relating to the 2008 Loan Agreement.

1.277 **1180482 Ontario**: 1180482 Ontario Inc., an Ontario corporation.

1.278 **UCC**: The Uniform Commercial Code, as in effect from time to time in the State of New York.

1.279 **Wells Fargo Agreement**:  The Term Loan Credit Agreement, dated October 8, 2004, between Santa Anita Companies, as borrower, and Wells Fargo Bank, N.A., as lender.

1.280 **Wells Fargo Claim**:  Any and all Claims against Santa Anita Companies arising from or relating to the Wells Fargo Agreement and the Allowed Wells Fargo Guarantee Claim.

1.281 **Wells Fargo Guarantee Claim**:  Any and all Claims against L.A. Turf Club, arising from or relating to L.A. Turf Club's guarantee of The Santa Anita Companies' obligations arising from or relating to the Wells Fargo Agreement.

1.282 **XpressBet**:  XpressBet, Inc., a Delaware corporation.

1.283 **XpressBet Option**: The option of MID Transferee to acquire either (i) the Equity Interests held by Reorganized Magna Entertainment in XpressBet or (ii) the Assets of XpressBet as set forth in Exhibit A hereto; provided, however, that, in the event that MID US Financing fails to notify Magna Entertainment and the Creditors' Committee of its intended exercise of the option by the date five (5) days prior to the Ballot Date, MID US Financing shall be deemed to have exercised the option to acquire the Equity Interests held by Reorganized Magna Entertainment in XpressBet.

1.284 **Other Definitions**:  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.  Unless otherwise specified, (a) all section, schedule or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF COMMITTEE LITIGATION

2.1 **Compromise and Settlement**:  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided hereunder, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements (i) are in the best interests of (x) the Debtors, the Reorganized Debtors and their respective estates and property, and (y) Claim and Equity Interest holders,

and (ii) are fair, equitable and reasonable. The Plan sets forth, and is expressly conditioned upon, a proposed compromise and settlement of the Committee Litigation, including the Individual Defendant Claims (and satisfaction of the Debtors' indemnification of the liability of the Debtors' directors and officers arising out of Individual Defendant Claims), between the Creditors' Committee, MID, MID US Financing, the Debtors and the other defendants named therein. To implement the settlement in accordance with the Plan, the parties have agreed to the following terms and conditions:

(a)     Resolution of the Committee Litigation: On the Effective Date, the Committee Litigation shall be dismissed in its entirety, with prejudice, and all claims in respect thereof, including Individual Defendant Claims, shall be fully and forever released.

(b)     Satisfaction of the MID Claims : Pursuant to Section 6.1 hereof, in full satisfaction, settlement, release and discharge of and in exchange for the MID Claims, on the Effective Date:

(i)     MID Transferee shall receive the MID LSP Sale Proceeds, or if the LSP Sale has not been consummated prior to the Effective Date, LSP Trust Interests entitling MID Transferee to receive the MID LSP Sale Proceeds;

(ii)     MID Transferee shall receive the MID MJC Sale Proceeds, or if the MJC Sale has not been consummated prior to the Effective Date, MJC Trust Interests entitling MID Transferee to receive the MID MJC Sale Proceeds;

(iii)     MID Transferee shall receive the MID Thistledown Sale Proceeds, or if the Thistledown Sale has not been consummated prior to the Effective Date, Thistledown Trust Interests, entitling MID Transferee to receive the MID Thistledown Sale Proceeds;

(iv)     The MID Reorganized Debtor Stock shall be issued to MID Transferee;

(v)     The MID Reorganized Debtor Assets shall be conveyed to MID Transferee;

(vi)     MID Transferee shall receive the PA Meadows Proceeds or, in the event that the PA Meadows Litigation has not been settled or resolved by a Final Order, at the option of MID Transferee (1) the PA Meadows Litigation will be assigned to MID, (2) MID Transferee shall be substituted as plaintiff in the PA Meadows Litigation and (3) MID Transferee shall indemnify the Debtors from any and all claims arising from or relating to the PA Meadows Litigation and the events set forth therein;

(vii)     The MID Non-Debtor Assets shall be conveyed to MID Transferee pursuant to the MID Asset Transfer Agreement;

27

(viii)   MID shall receive an assignment of the Shared Insurance Policies, including an assignment of rights of recovery for the Debtors indemnification of the Debtors' directors and officers' liability in connection with the Individual Defendant Claims; and

(ix)   MID, MID US Financing and the other Entities identified in Article XXXII hereof shall receive releases.

(c)   Satisfaction of Allowed Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims, Allowed 7.25% Note Claims and MJC Claims: As a result of the compromise and settlement, pursuant to Articles XI through XIII hereof, in full satisfaction, settlement, release and discharge of and in exchange for their Claims, each holder of an Allowed Non-MJC General Unsecured Claims, Allowed 8.55% Note Claims and Allowed 7.25% Note Claims shall receive in full satisfaction, settlement, release and discharge of and in exchange for their Claims their Pro Rata Share of Creditor Cash and Operating Trust Interests, if applicable, and holders of Allowed MJC Claims shall receive the treatment set forth in Section 14.1 hereof.

(d)   MID Obligations:  On and after the Effective Date, MID or MID US Financing shall pay to the Disbursing Agent (i) the Committee Litigation Settlement Payment, (ii) the MID Litigation Cash Consideration and (iii) the MID Cash Consideration.  On or after the Effective Date, upon consummation of the MJC Sale, the MID MJC Sale Proceeds shall be used to satisfy and discharge in full (i) the Allowed MJC Claims and (ii) the Allowed PNC Claim.

(e)   Reorganized Debtors Obligations:  In addition to making the distributions set forth in Articles III through XIV of the Plan, pursuant to the compromise and settlement, including the releases granted in connection with the Individual Defendant Claims and the avoidance of any potential indemnification claim arising from the Committee Litigation, on and after the Effective Date, the Reorganized Debtors shall:

(i)   Pay KLNF that portion of the KLNF Contingency Fee payable from the Committee Litigation Settlement Payment;

(ii)   Use their reasonable best efforts to consummate, as applicable, the LSP Sale, MJC Sale and Thistledown Sale and, upon consummation of each such transaction, pay KLNF such portion of the KLNF Contingency Fee payable from the Creditor LSP Sale Proceeds, Creditor MJC Sale Proceeds or Creditor Thistledown Sale Proceeds, as applicable or, if applicable, cause the Operating Trustees to pay KLNF such portion of the KLNF Contingency Fee;

(iii)   Pay KLNF, PSZJ, Fasken Martineau and members of the Creditors' Committee the Litigation Expenses, payable from the MID Litigation Cash Consideration in accordance with a schedule to be provided from the Creditors' Committee;

28

(iv)    Take such steps as are necessary to effect the transfer of the MID Reorganized Debtor Assets to MID Transferee and to cause MEC Canada, MEC Media and XpressBet to effect the transfer of the MID Non-Debtor Assets to MID Transferee, including, without limitation, (i) the assignment in recordable form of all title to real property, trademarks, copyrights and other intellectual property, (ii) the release of the Remington Escrow, (iii) the transfer of all Cash and Cash Equivalents in any account of the applicable Debtors, including Cash or Cash Equivalents held as security deposits in respect of Claims satisfied and discharged hereunder, (iv) the substitution of MID Transferee as plaintiff in any pending cause of action, including the PA Meadows Litigation, (v) the assignment to MID Transferee of any receivable or other claim of any applicable Debtor, (vi) on the Effective Date, the assignment to MID of the Debtors' insurance coverage under any of the Shared Insurance Policies and (vii) execution and delivery of the appropriate instruments of transfer and bills of sale.

(f)    Operating Trusts.  In the event that the LSP Sale, MJC Sale or Thistledown Sale has not been consummated as of the Effective Date, the Assets of each respective Entity and the Reorganized MEC Lone Star Stock, Reorganized MJC Stock and Reorganized Thistledown Stock, as applicable, shall be transferred to the LSP Trust, MJC Trust or Thistledown Trust, respectively.  The applicable Operating Trustee(s) shall oversee the ongoing operations until the LSP Sale, MJC Sale or Thistledown Sale, as applicable, is consummated.

(g)    Post-Effective Date Funding Obligations.  In the event that the Operating Trusts are created, MID Transferee and the Creditors' Committee agree that the operations of each Operating Trust shall be funded jointly by MID Transferee and the Creditors' Committee pursuant to Article XVII hereof and the applicable Operating Trust Agreement.

### ARTICLE III

### PROVISIONS FOR PAYMENT OF
### ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

3.1    **Administrative Expense Claims**:  Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the later to occur of (a) the Effective Date and (b) the date on which an Administrative Expense Claim shall become an Allowed Claim, MID or MID Transferee or, upon receipt of sufficient funds from MID or MID Transferee, the Disbursing Agent shall (i) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Allowed Administrative Expense Claim or (ii) satisfy and discharge such Allowed Administrative Expense Claim in accordance with the terms and conditions of the agreements with respect thereto.

3.2    **Payment of Priority Tax Claims**:  Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the Effective Date, each holder of an Allowed Priority Tax Claim shall be entitled to receive distributions in an amount equal to the full amount of such Allowed Priority

29

Tax Claim.  At the option and discretion of MID or MID Transferee, which option shall be exercised, in writing, on or prior to the commencement of the Confirmation Hearing, upon receipt of sufficient funds from MID or MID Transferee, such payment shall be made by the Disbursing Agent (a) in full, in Cash, on the Effective Date, (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in full, in Cash, in equal quarterly installments, commencing on the first (1st) Business Day following the Effective Date and ending on the fifth (5th) anniversary of the commencement of the Chapter 11 Cases, together with interest accrued thereon at a rate to be determined by the Bankruptcy Court and set forth in the Confirmation Order, or (c) by mutual agreement of the holder of such Allowed Priority Tax Claim and the Debtors or Reorganized Debtors (as directed by MID or MID Transferee), as the case may be.

3.3     **Debtor in Possession Financing**:  On the Effective Date, (a) a portion of the cash held in the Remington Escrow shall be used to pay and satisfy in full all outstanding DIP Obligations, (b) the Debtors shall be relieved of any and all other obligations with respect thereto and (c) all Liens and other encumbrances granted pursuant to the DIP Orders with respect to the property and interests in property claimed by the Debtors shall be released.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests are classified as follows:

4.1     Class 1                    – Priority Non-Tax Claims

4.2     Class 2                    – MID Claims

4.3     Class 3                    – Wells Fargo Claim

4.4     Class 4                    – PNC Claim

4.5     Class 5                    – BMO Claim

4.6     Class 6                    – Secured Claims

4.7     Class 7                    –8.55% Note Claims

4.8     Class 8                    –7.25% Note Claims

4.9     Classes 9 through 26[1] – Non-MJC General Unsecured Claims

4.10    Classes 27 through 34 – MJC Claims

---

[1] Annexed as Exhibits "C" and "D" are schedules setting forth Non-MJC General Unsecured Claim Classes and MJC Claim Classes.

RLF1 3539354v.1

4.11    Classes 35 through 60 – Equity Interests

# ARTICLE V

**PROVISION FOR TREATMENT OF PRIORITY NON-TAX CLAIMS (CLASS 1)**

5.1    **Payment of Allowed Priority Non-Tax Claims (Class 1)**:  Subject to the provisions of Sections 2.1(d) and 21.2 hereof, unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and MID or MID Transferee, upon the Disbursing Agent's receipt of sufficient funds from the MID or MID Transferee, each holder of an Allowed Priority Non-Tax Claim shall receive from the Disbursing Agent in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Priority Non-Tax Claim, Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is possible.

# ARTICLE VI

**PROVISION FOR TREATMENT OF MID CLAIMS (CLASS 2)**

6.1    **Treatment of MID Claims** :  Subject to the provisions of Section 2.1(d) and 21.2 hereof, the holder of the MID Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for such MID Claims:

(a)    On the Effective Date, (i) the MID LSP Sale Proceeds, the MID MJC Sale Proceeds and the MID Thistledown Sale Proceeds, if any, or (ii) if the Operating Trusts are created, the LSP Trust Interests, the MJC Trust Interests and/or the Thistledown Trust Interests, as applicable, entitling the holder of the MID Claims to receive the MID LSP Sale Proceeds, the MID MJC Sale Proceeds and the MID Thistledown Sale Proceeds, as soon as practicable upon consummation of the LSP Sale, MJC Sale and/or Thistledown Sale, if any, as applicable;

(b)    On the Effective Date:

(i)    The PA Meadows Proceeds or, in the event that the PA Meadows Litigation has not been settled or resolved by Final Order, the PA Meadows Litigation shall be assigned to MID;

(ii)    the MID Non-Debtor Assets;

(iii)    the MID Reorganized Debtor Stock; and

(iv)    the MID Reorganized Debtor Assets;

(c)    Notwithstanding the foregoing, the Assets of Gulfstream Park Racing and the GPRA Commercial Stock shall be transferred to the MID Transferee immediately prior to the transfer of the Gulfstream Park Racing Stock and all the parties (including, without

31

limitation, the Debtors or the Reorganized Debtors) agree to report such transfers consistently with the foregoing for federal, state and local income tax purposes.

## ARTICLE VII

## PROVISION FOR TREATMENT OF WELLS FARGO CLAIM (CLASS 3)

7.1     **Treatment of Allowed Wells Fargo Claim**:  Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Wells Fargo Claim, the holder of the Allowed Wells Fargo Claim shall receive one of the following distributions: (i) the payment of such holder's Allowed Wells Fargo Claim in Cash; (ii) the sale or disposition proceeds of the property securing the Allowed Wells Fargo Claim to the extent of the value of their respective interests in such property; (iii) the surrender to the holder of the Allowed Wells Fargo Claim of the property securing such Claim; (iv) such other distributions as shall be necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code, or (v) such other treatment as may be agreed upon by MID Transferee and holder of the Allowed Wells Fargo Claim.  The manner and treatment of the Allowed Wells Fargo Claim shall be determined by MID Transferee, subject to the consent of the Debtors, in writing, to the holder of the Wells Fargo Claim, on or prior to the commencement of the Confirmation Hearing.

## ARTICLE VIII

## PROVISION FOR TREATMENT OF PNC CLAIM (CLASS 4)

8.1     **Treatment of Allowed PNC Claim**:  Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the later to occur of the Effective Date and the date the MJC Sale is consummated, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed PNC Claim, each holder of an Allowed PNC Claim shall receive in Cash from the MID MJC Sale Proceeds, the full amount of such Allowed PNC Claim, including principal plus accrued and unpaid interest; provided, however, that, in the event that the MJC Sale is consummated subsequent to the Effective Date, during the period from the Effective Date up to and including the consummation of the MJC Sale, the holder of the PNC Claim shall receive payments of interest thereon in accordance with the terms and provisions of the DIP Orders.

## ARTICLE IX

## PROVISION FOR TREATMENT OF BMO CLAIM (CLASS 5)

9.1     **Treatment of Allowed BMO Claim**:  Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed BMO Claim, the holder of the Allowed BMO Claim shall receive one of the following distributions: (i) the payment of such holder's Allowed BMO Claim in Cash; (ii) the sale or disposition proceeds of the property securing the Allowed BMO Claim to the extent of the value of their respective interests in such property; (iii) the surrender to the holder of the Allowed BMO Claim of the property securing such Claim; (iv) such other distributions as shall be necessary to satisfy the requirements of chapter 11 of the

32

Bankruptcy Code, or (v) such other treatment as may be agreed upon by MID Transferee and holder of the Allowed BMO Claim. The manner and treatment of the Allowed BMO Claim shall be determined by MID Transferee, subject to the consent of the Debtors, in writing, to the holder of the BMO Claim, on or prior to the commencement of the Confirmation Hearing.

## ARTICLE X

## PROVISION FOR TREATMENT OF SECURED CLAIMS (CLASS 6)

10.1 **Treatment of Allowed Secured Claims**: Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the Effective Date, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Secured Claim, the holders of Allowed Secured Claims shall receive one of the following distributions: (i) the payment of such holder's Allowed Secured Claim in Cash; (ii) the sale or disposition proceeds of the property securing an Allowed Secured Claim to the extent of the value of their respective interests in such property; (iii) the surrender to the holders of the Allowed Secured Claims of the property securing such Claim; (iv) such other distributions as shall be necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code, or (v) such other treatment as may be agreed upon by MID Transferee and holder of the Allowed Secured Claim. The manner and treatment of Allowed Secured Claims shall be determined by MID Transferee, subject to the consent of the Debtors, in writing, to the holder of a Secured Claim, on or prior to the commencement of the Confirmation Hearing.

## ARTICLE XI

## PROVISION FOR TREATMENT OF 8.55% NOTE CLAIMS (CLASS 7)

11.1 **Payment of Allowed 8.55% Note Claims**: Commencing on the Effective Date, each holder of an Allowed 8.55% Note Claim shall receive on account of such Allowed 8.55% Note Claim:

(a) Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the Effective Date, distributions of such holder's Pro Rata Share of Creditor Cash; and

(b) In the event that the Operating Trusts are created, such holder's Pro Rata Share of the LSP Trust Interests, the MJC Trust Interests and/or the Thistledown Trust Interests, as applicable.

## ARTICLE XII

## PROVISION FOR TREATMENT OF 7.25% NOTE CLAIMS (CLASS 8)

12.1 **Payment of Allowed 7.25% Note Claims**: Commencing on the Effective Date, each holder of an Allowed 7.25% Note Claim shall receive on account of such Allowed 7.25% Note Claim:

(a)     Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the Effective Date, distributions of such holder's Pro Rata Share of Creditor Cash; and

(b)     In the event that the Operating Trusts are created, such holder's Pro Rata Share of the LSP Trust Interests, the MJC Trust Interests and/or the Thistledown Trust Interests, as applicable.

## ARTICLE XIII

## PROVISION FOR TREATMENT OF NON-MJC GENERAL UNSECURED CLAIMS (CLASSES 9–26)

13.1     **Payment of Allowed Non-MJC General Unsecured Claims**:  Commencing on the Effective Date, each holder of an Allowed Non-MJC General Unsecured Claim (other than holders of 8.55% Note Claims and 7.25% Note Claims, which shall receive the treatment set forth in Sections 11.1 and 12.1 hereof, respectively) shall receive on account of such Allowed Non-MJC General Unsecured Claim:

(a)     Subject to the provisions of Sections 2.1(d) and 21.2 hereof, on the Effective Date, distributions of such holder's Pro Rata Share of Creditor Cash; and

(b)     In the event that the Operating Trusts are created, such holder's Pro Rata Share of the LSP Trust Interests, the MJC Trust Interests and/or the Thistledown Trust Interests, as applicable.

## ARTICLE XIV

## PROVISION FOR TREATMENT OF MJC CLAIMS (CLASSES 27-34)

14.1     **Treatment of Allowed MJC Claims**:  Subject to the provisions of Sections 2.1(d) and 21.2 hereof, unless otherwise mutually agreed upon by the holder of an Allowed MJC Claim and MID Transferee, each holder of an Allowed MJC Claim shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed MJC Claim, (i) Cash from the MJC Sale Proceeds in an amount equal to one hundred percent (100%) of such holder's Allowed MJC Claim on the later to occur of the Effective Date, the date such MJC Claim becomes an Allowed MJC Claim and consummation of the MJC Sale or (ii) its Pro Rata Share of the MJC Sale Proceeds after satisfaction of the PNC Claim as set forth in Section 8.1 of this Plan.

## ARTICLE XV

## PROVISIONS FOR TREATMENT OF EQUITY INTERESTS (CLASSES 35 – 60)

15.1     **Treatment of MEC Maryland Investments Stock (Class 35)**:  On the Effective Date, (a) the MEC Maryland Investments Stock, shall be cancelled and the holder of MEC Maryland Investments Stock shall not be entitled to, and shall not receive or retain, any

property or interest in property under the Plan and (b) the Reorganized MEC Maryland Investments Stock shall be issued and distributed in accordance with the terms and provisions of Section 6.1 hereof.

15.2 **Treatment of AmTote Stock (Class 36)**: On the Effective Date, (a) the AmTote Stock, shall be cancelled and the holder of AmTote Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) the Reorganized AmTote Stock shall be issued and distributed in accordance with the terms and provisions of Sections 6.1 and 30.3 hereof.

15.3 **Treatment of GPRA Commercial Stock (Class 37)**: On the Effective Date, (a) the GPRA Commercial Stock, shall be cancelled and the holder of GPRA Commercial Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) the Reorganized GPRA Commercial Stock shall be issued and distributed in accordance with the terms and provisions of Section 6.1 hereof.

15.4 **Treatment of Gulfstream Park Racing Stock (Class 38)**: On the Effective Date, (a) the Gulfstream Park Racing Stock, shall be cancelled and the holder of Gulfstream Park Racing Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) the Reorganized Gulfstream Park Racing Stock shall be issued and distributed in accordance with the terms and provisions of Section 6.1 hereof.

15.5 **Treatment of L.A. Turf Club Stock (Class 39)**: On the Effective Date, (a) the L.A. Turf Club Stock, shall be cancelled and the holder of L.A. Turf Club Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) the Reorganized L.A. Turf Club Stock shall be issued and distributed in accordance with the terms and provisions of Section 6.1 hereof.

15.6 **Treatment of Magna Entertainment Stock (Class 40)**: On the later to occur of the Effective Date and the date the LSP Sale is consummated, the Magna Entertainment Stock, shall be cancelled and the holders of Magna Entertainment Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

15.7 **Treatment of MEC Land Holdings Stock (Class 41)**: On the Effective Date, the MEC Land Holdings Stock, shall be cancelled and the holder of MEC Land Holdings Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

15.8 **Treatment of Pacific Racing Stock (Class 42)**: On the Effective Date, (a) the Pacific Racing Stock, shall be cancelled and the holder of Pacific Racing Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) the Reorganized Pacific Racing Stock shall be issued and distributed in accordance with the terms and provisions of Section 6.1 hereof.

15.9 **Treatment of Santa Anita Companies Stock (Class 43)**: On the Effective Date, the Santa Anita Companies Stock, shall be cancelled and the holder of Santa Anita Companies Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

RLF1 3539354v.1

15.10   **Treatment of Palm Meadows Training Center Stock (Class 44)**:  On the Effective Date, (a) the Palm Meadows Training Center Stock, shall be cancelled and the holder of  Palm Meadows Training Center Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) the Reorganized Palm Meadows Training Center Stock shall be issued and distributed in accordance with the terms and provisions of Section 6.1 hereof.

15.11   **Treatment of MEC Pennsylvania Stock (Class 45)**:  On the Effective Date, the MEC Pennsylvania Stock, shall be cancelled and the holder of MEC Pennsylvania Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

15.12   **Treatment of Pimlico Stock (Class 46)**:  On the Effective Date, (a) the Pimlico Stock, shall be cancelled and the holders of Pimlico Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Pimlico Stock shall be issued and transferred to the MJC Trust in accordance with Section 17.4 hereof.

15.13   **Treatment of Prince George's Racing Stock (Class 47)**:  On the Effective Date, (a) the Prince George's Racing Stock, shall be cancelled and the holder of Prince George's Racing Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Prince George's Racing Stock shall be issued and transferred to the MJC Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.14   **Treatment of Maryland Jockey Club Stock (Class 48)**:  On the Effective Date, (a) the Maryland Jockey Club Stock, shall be cancelled and the holder of Maryland Jockey Club Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Maryland Jockey Club Stock shall be issued and transferred to the MJC Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.15   **Treatment of The Maryland Jockey Club of Baltimore City Stock (Class 49)**:  On the Effective Date, (a) The Maryland Jockey Club of Baltimore City Stock, shall be cancelled and the holders of The Maryland Jockey Club of Baltimore City Club Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Maryland Jockey Club of Baltimore City Stock shall be issued and transferred to the MJC Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.16   **Treatment of Southern Maryland Racing Stock (Class 50)**:  On the Effective Date, (a) the Southern Maryland Racing Stock, shall be cancelled and the holder of Southern Maryland Racing Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Southern Maryland Racing Stock shall be issued and transferred to the MJC Trust in accordance with the terms and provisions of Section 17.4 hereof.

36

15.17  **Treatment of Southern Maryland AA Stock (Class 51)**:  On the Effective Date, (a) the Southern Maryland AA Stock, shall be cancelled and the holders of Southern Maryland AA Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Southern Maryland AA Stock shall be issued and transferred to the MJC Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.18  **Treatment of Laurel Racing Stock (Class 52)**:  On the Effective Date, (a) the Laurel Racing Stock, shall be cancelled and the holders of Laurel Racing Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Laurel Racing Stock shall be issued and transferred to the MJC Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.19  **Treatment of Laurel Racing Association Stock (Class 53)**:  On the Effective Date, (a) the Laurel Racing Association Stock, shall be cancelled and the holders of Laurel Racing Association Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the MJC Sale has not been consummated, the Reorganized Laurel Racing Association Stock shall be issued and transferred to the MJC Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.20  **Treatment of MEC Lone Star Stock (Class 54)**:  On the Effective Date, (a) the MEC Lone Star Stock, shall be cancelled and the holder of MEC Lone Star Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the LSP Sale has not been consummated, the Reorganized MEC Lone Star Stock shall be issued and transferred to the LSP Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.21  **Treatment of Thistledown Stock (Class 55)**:  On the Effective Date, (a) the Thistledown Stock, shall be cancelled and the holder of Thistledown Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) in the event that the Thistledown Sale has not been consummated, the Reorganized Thistledown Stock shall be issued and transferred to the Thistledown Trust in accordance with the terms and provisions of Section 17.4 hereof.

15.22  **Treatment of Old RP Stock (Class 56)**:  On the Effective Date, the Old RP Stock, shall be cancelled and the holder of Old RP Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

15.23  **Treatment of MEC Dixon Stock (Class 57)**:  On the Effective Date, the MEC Dixon Stock, shall be cancelled and the holder of MEC Dixon Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

15.24  **Treatment of Sunshine Meadows Stock (Class 58)**:  On the Effective Date, the Sunshine Meadows Stock, shall be cancelled and the holder of Sunshine Meadows Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

15.25 **Treatment of 30000 Maryland Stock (Class 59)**: On the Effective Date, (a) the 30000 Maryland Stock, shall be cancelled and the holder of 30000 Maryland Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan and (b) the Reorganized 30000 Maryland Stock shall be issued and distributed in accordance with the terms and provisions of Section 6.1 hereof.

15.26 **Treatment of MEC Holdings Stock (Class 60)**: On the Effective Date, the MEC Holdings Stock, shall be cancelled and the holder of MEC Holdings Stock shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan.

## ARTICLE XVI

## PROVISIONS FOR TREATMENT OF
## DISPUTED CLAIMS UNDER THE PLAN

16.1 **Objections to Claims; Prosecution of Disputed Claims**: The Reorganized Debtors Plan Administrator shall object to the allowance of Claims filed with the Bankruptcy Court with respect to which they dispute liability, priority or amount, including, without limitation, objections to Claims which have been assigned and the assertion of the doctrine of equitable subordination with respect thereto. All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that the Reorganized Debtors Plan Administrator (within such parameters as may be established by the Board of Directors of the Reorganized Debtors) shall have the authority to file, settle, compromise or withdraw any objections to Claims; and, provided, further, that (i) objections and/or settlements, compromises or withdrawal of any objections to the allowance of Non-MJC General Unsecured Claims, 8.55% Note Claims and 7.25% Note Claims shall be made in consultation with the Creditors' Committee and any costs and expenses incurred by the Reorganize Debtors Plan Administrator in connection therewith shall be funded by Creditor Cash and (ii) objections and/or settlements, compromises or withdrawal of any objections to the allowance of MJC Unsecured Claims, Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims shall be made in consultation with MID US Financing and any costs and expenses incurred by the Reorganize Debtors Plan Administrator in connection therewith shall be funded by MID Transferee. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtors Plan Administrator shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than ninety (90) days following the Effective Date or such later date as may be approved by the Bankruptcy Court.

16.2 **Estimation of Claims**: Unless otherwise limited by an order of the Bankruptcy Court, the Reorganized Debtors Plan Administrator, upon consultation with the Creditors' Committee and MID US Financing, may at any time request the Bankruptcy Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed

Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, the Debtors or the Reorganized Debtors Plan Administrator, as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

16.3 **Payments and Distributions on Disputed Claims**:

(a) Disputed Claims Reserve: Subject to the provisions of Section 2.1(d) and 21.2, from and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by order of the Bankruptcy Court, the Disbursing Agent shall reserve and hold in escrow for the benefit of each holder of a Disputed Claim, Cash, in an amount equal to the distributions which would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the Disputed Claim Amount, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtors Plan Administrator. Any Cash reserved and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of Section 22.1 of the Plan and computing any additional amounts to be paid in Cash in the event the Disputed Claim ultimately becomes an Allowed Claim. Such Cash reserved for the benefit of holders of Disputed Claims shall be either (x) held by the Disbursing Agent, in an interest-bearing account or (y) invested in interest-bearing obligations issued by the United States Government, or by an agency of the United States Government and guaranteed by the United States Government, and having (in either case) a maturity of not more than thirty (30) days, for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order. For purposes of calculating the KLNF Contingency Fee, the amounts held in reserve for Disputed Claims that consist of Non-MJC General Unsecured Claims shall be adjusted for such fee prior to being placed in reserve.

(b) Allowance of Disputed Claims: At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, subject to the provisions of Sections 2.1(d) and 21.2 hereof, the Disbursing Agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan together, with any interest that has accrued on the amount of Cash (net of any expenses, including any taxes of the escrow, relating thereto), but only to the extent that such interest is attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as practicable after an order or judgment of the Bankruptcy Court is entered allowing such Disputed Claim becomes a Final Order but in no event more than sixty (60) days thereafter.

(c)    Tax Treatment of Escrow:  Subject to the receipt of contrary guidance from the IRS or a court of competent jurisdiction (including the receipt by the Disbursing Agent of a private letter ruling requested by the Disbursing Agent, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent, or a condition imposed by the IRS in connection with a private letter ruling requested by the Debtors), the Disbursing Agent shall (i) treat the escrow as one or more disputed ownership funds for federal income tax purposes within the meaning of Treasury Regulations Section 1.468B-9(b)(1) and (ii) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes.  All holders of Allowed Claims shall report, for tax purposes, consistent with the foregoing.

**ARTICLE XVII**

**THE OPERATING TRUSTS**

17.1    **Establishment of the Trusts**:  Upon the determination of the Debtors or the Reorganized Debtors, as the case may be, on the Confirmation Date, the Debtors or the Reorganized Debtors, as the case may be, on their own behalf and on behalf of holders of Allowed Claims in Classes 2 and 7 through 26, shall execute the respective Operating Trust Agreements and shall take all other steps necessary to establish the respective Operating Trusts. On such date, or as soon as practicable thereafter, including, without limitation, subject to appropriate or required governmental, agency or other consents, and in accordance with and pursuant to the terms of Section 17.4 hereof, the Debtors or the Reorganized Debtors, as the case may be, shall transfer to the respective Operating Trusts all of their right, title, and interest in the Assets subject to the respective Operating Trust Agreements.

17.2    **Purpose of the Operating Trusts**:  The Operating Trusts are intended to be treated, for federal income tax purposes, as liquidating trusts within the meaning of Treasury Regulations Section 301.7701-4(d) and shall be established for the sole purpose of holding and liquidating their respective assets in accordance with the terms and provisions of the Operating Trust Agreements and, except as provided herein, with no objective to continue or engage in the conduct of a trade or business.

17.3    **Funding Expenses of the Operating Trusts**:  In accordance with the respective Operating Trust Agreements and any agreements entered into in connection therewith, on the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, shall have no obligation to provide any funding with respect to any of the Operating Trusts. The funding of each Operating Trust shall be as follows:

(a)    The LSP Trust: Until the LSP Sale is consummated and the Creditor LSP Sale Proceeds and MID LSP Sale Proceeds are distributed in accordance with the provisions herein, the Disbursing Agent, through the use of Creditor Cash and funds from MID US Financing, shall fund one hundred percent (100%) of the costs and expenses incurred by the LSP Trustee in connection with the operations of the Assets in the LSP Trust on a pro rata basis based upon the Creditor LSP Sale Proceeds and MID LSP Sale Proceeds.

(b)  The Thistledown Trust: Until the Thistledown Sale is consummated and the Creditor Thistledown Sale Proceeds and MID Thistledown Sale Proceeds are distributed in accordance with the provisions herein, the Disbursing Agent, through the use of Creditor Cash and funds from MID US Financing, shall fund:

(i)  to the extent that the Thistledown Sale is approved by the Bankruptcy Court but not consummated prior to the Effective Date, one hundred percent (100%) of the costs and expenses incurred by the Thistledown Trustee in connection with the operations of the Assets in the Thistledown Trust on a pro rata basis based upon the non-contingent amount of the Creditor Thistledown Sale Proceeds and MID Thistledown Sale Proceeds, with a reconciliation at consummation of the Thistledown Sale and additional reconciliations as additional proceeds are received based on the satisfaction of contingencies, if any, to ensure that the funding provided from the Creditor Cash and by MID US Financing represents a Pro Rata Share based upon the Creditor Thistledown Sale Proceeds and the MID Thistledown Sale Proceeds;

(ii)  to the extent that the Thistledown Sale is not approved by the Bankruptcy Court prior to the Effective Date, the costs and expenses incurred by the Thistledown Trustee in connection with the operations of the Assets in the Thistledown Trust, fifty-percent (50%) from Creditor Cash and fifty-percent (50%) from MID US Financing, with a reconciliation upon the definitive agreement for the Thistledown Sale on a pro rata basis based upon the non-contingent amount of the Creditor Thistledown Sale Proceeds and MID Thistledown Sale Proceeds and additional reconciliations as additional proceeds are received based on the satisfaction of contingencies, if any, to ensure that the funding provided from the Creditor Cash and by MID US Financing represents a Pro Rata Share based upon the Creditor Thistledown Sale Proceeds and the MID Thistledown Sale Proceeds;

(c)  The MJC Trust: Until the MJC Sale is consummated and the Creditor MJC Sale Proceeds and MID MJC Sale Proceeds are distributed in accordance with the provisions herein, the Disbursing Agent, through the use of funds received fifty-percent (50%) from Creditor Cash and fifty-percent (50%) from MID US Financing, shall fund one hundred percent (100%) of the costs and expenses incurred by the MJC Trustee in connection with the operations of the Assets in the MJC Trust.

17.4  **Transfer of Assets**:

(a)  The transfer of assets to the Operating Trusts shall be made, as provided herein, for the benefit of the holders of Allowed Claims in Classes 2 and 7 through 26, only to the extent such holders in such Classes are entitled to distributions under the Plan.  In partial satisfaction of Allowed Claims in Classes 2 and 7 through 26, the assets subject to the respective Operating Trusts shall be transferred to such holders of Allowed Claims, to be held by the Reorganized Debtors on their behalf.  Immediately thereafter, on behalf of the holders of

41

Allowed Claims in Classes 2 and 7 through 26, the Debtors or the Reorganized Debtors, as the case may be, shall transfer such assets to the Operating Trusts for the benefit of holders of Allowed Claims in Classes 2 and 7 through 26, in accordance with the Plan.

(b)     For all federal income tax purposes, all parties (including, without limitation, the Debtors or the Reorganized Debtors, as the case may be, the Operating Trustee and the beneficiaries of the Operating Trusts) shall treat the transfer of assets to the respective Operating Trusts in accordance with the terms of the Plan, as a transfer to the holders of Allowed Claims in Classes 2 and 7 through 26, followed by a transfer by such holders to the respective Operating Trusts and the beneficiaries of the Operating Trusts shall be treated as the grantors and owners thereof. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

17.5    **Valuation of Assets**: The value of the assets transferred to the respective Operating Trusts on the Effective Date shall be the purchase price set forth in a binding contract in existence on the Effective Date to purchase the applicable assets. In the absence of such a binding contract to purchase any asset transferred to an Operating Trust, the value of such asset shall be determined jointly by MID US Financing and the Debtors and the Debtors shall notify the Operating Trustee of the value of such assets. In all circumstances, the Operating Trustee shall apprise, in writing, the beneficiaries of the respective Operating Trusts of the valuation of all assets transferred to the respective Operating Trusts. The valuation shall be used consistently by all parties (including the Debtors, the Reorganized Debtors, the Operating Trustee and the beneficiaries of the Operating Trusts) for all federal income tax purposes and to the extent applicable, state and local income tax purposes.

17.6    **Investment Powers**: The right and power of the Operating Trustee to invest assets transferred to the Operating Trusts, the proceeds thereof, or any income earned by the respective Operating Trusts, shall be limited to the right and power to invest such assets (pending periodic distributions in accordance with Section 18.7 hereof) in Cash Equivalents; provided, however, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise, and (b) the Operating Trustee may expend the assets of the Operating Trusts (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Operating Trusts during liquidation, (ii) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Operating Trusts or fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Operating Trusts (and to which the assets are otherwise subject) in accordance with the Plan and the Operating Trust Agreements; and, provided, further, that, under no circumstances, shall the Operating Trusts segregate the assets of the Operating Trusts on the basis of classification of the holders of respective Operating Trust Interests, other than with respect to distributions to be made on account of Disputed Claims in accordance with the provisions hereof.

17.7    **Annual Distribution; Withholding**: The Operating Trustee shall distribute at least annually to the holders of respective Operating Trust Interests all net cash income plus all

net cash proceeds from the liquidation of assets (including as Cash for this purpose, all Cash Equivalents); provided, however, that the Operating Trusts may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Operating Trusts during liquidation, (ii) to pay reasonable administrative expenses (including any taxes imposed on the Operating Trusts or in respect of the assets of the Operating Trust), and (iii) to satisfy other liabilities incurred or assumed by the Operating Trusts (or to which the assets are otherwise subject) in accordance with the Plan or the Operating Trust Agreements. All such distributions shall be pro rata based on the number of Operating Trust Interests held by a holder compared with the aggregate number of Operating Trust Interests outstanding, subject to the terms of the Plan and the respective Operating Trust Agreements. The Operating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Operating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

17.8 **Reporting Duties**:

(a) Federal Income Tax: Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Operating Trustee of a private letter ruling if the Operating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Operating Trustee), the Operating Trustee shall file returns for the Operating Trusts as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section 17.8. The Operating Trustee shall also annually send to each holder of a Operating Trust Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and shall instruct all such holders to report such items on their federal income tax returns.

(b) Allocations of Operating Trusts Taxable Income: Allocations of an Operating Trusts' taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the applicable Operating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the Operating Trust Interests (treating any holder of a Disputed Claim, for this purpose, as a current holder of a Operating Trust Interest entitled to distributions), taking into account all prior and concurrent distributions from the Operating Trusts (including all distributions held in escrow pending the resolution of Disputed Claims). Similarly, taxable loss of the Operating Trusts shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets of an Operating Trust. The tax book value of the assets of an Operating Trust for this purpose shall equal their fair market value on the date such Operating Trusts were created or, if later, the date such assets were acquired by the Operating Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

(c) Other: The Operating Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Operating Trust that are required by any governmental unit.

17.9 **Trust Implementation**:  On or after the Confirmation Date, the Operating Trusts shall be established and become effective for the benefit of Allowed Claims in Classes 2 and 7 through 26.  The Operating Trust Agreements shall be filed in the Plan Supplement and shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of each Operating Trust as a grantor trust for federal income tax purposes.  All parties (including the Debtors or the Reorganized Debtors, as the case may be, the Operating Trustee and holders of Allowed Claims in Classes 2 and 7 through 26) shall execute any documents or other instruments as necessary to cause title to the applicable assets to be transferred to the Operating Trusts.

17.10 **Registry of Beneficial Interests**:  Each Operating Trustee shall maintain a registry of the holders of Operating Trust Interests.

17.11 **Termination**:  Each Operating Trust shall terminate no later than the consummation of the LSP Sale, MJC Sale or Thistledown Sale, as applicable; provided, however, that, on or prior to such termination, the Bankruptcy Court, upon motion by a party in interest, including, without limitation, the applicable Operating Trustee or any member of the LSP Trust Board, MJC Trust Board and Thistledown Trust Board, may extend the term of the applicable Operating Trust if it is necessary to the liquidation of the assets of such Operating Trust.  Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained at least two (2) months prior to the expiration of each extended term.

17.12 **Non-Transferability or Certification**:  Upon the creation of each Operating Trust, the beneficial interests in such Operating Trust shall be allocated on the books and records of such Operating Trust to the appropriate holders thereof, but such interests shall not be certificated and shall not be transferable by the holder thereof except through the laws of descent or distribution or to an affiliate of such holder.

17.13 **Applicability to Certain Claims** :  In the event that allocations of Operating Trust Interests are made to holders of Allowed Claims in accordance with the provisions of Articles VI, XI through XII of the Plan, all provisions contained in this Article XVII shall be for the benefit of and be applicable to such holders of Allowed Claims, as though set forth in this Article XVII in the first instance.

17.14 **Post-Effective Date Thistledown Sale Process**:  In connection with the Thistledown Sale contemplated by Section 17.3(b)(ii) hereof, in the event that any offer to purchase either the Reorganized Thistledown Stock or substantially all of the Assets of the Thistledown Trust is conveyed to the Thistledown Trustee, the Creditors' Committee and MID US Financing will cooperate to maximize the overall value of the sale of the Reorganized Thistledown Stock or the Assets of the Thistledown Trust through an auction; provided, that as long as the non-contingent amount of any offer exceeds $20 million, MID will not object to the Creditors' Committee's determination as to which offer constitutes the highest and best offer and provided, lastly, that if the non-contingent amount of any offer is less than $20 million and the Creditors' Committee and MID US Financing do not agree on which offer constitutes the highest and best offer (considering non-contingent, contingent and future payments), the

Creditors' Committee and MID US Financing reserve their respective rights to object to the acceptance of any offer for the Reorganized Thistledown Stock or the Assets of the Thistledown Trust.

## ARTICLE XVIII

## PROSECUTION OF CLAIMS HELD BY THE DEBTOR

18.1 **Prosecution of Claims**:  From and after the Effective Date, MID Transferee, as successor to the rights of the estates of the Debtors, shall have the right to litigate (or abandon) any claims or causes of action that constituted Assets of the Debtors or Debtors in Possession, including, without limitation, any avoidance or recovery actions under sections 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, any claims under the Shared Insurance Policies and any other causes of action, rights to payments of claims that may be pending on the Effective Date, to a Final Order, and may compromise and settle such claims, without further approval of the Bankruptcy Court.  The proceeds of any such litigation or settlement shall be solely for the benefit of MID Transferee.

## ARTICLE XIX

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT
## OF REJECTION BY ONE OR MORE CLASSES OF
## CLAIMS OR EQUITY INTERESTS

19.1 **Impaired Classes to Vote**:  Each holder of a Claim or Equity Interest in an impaired Class, not otherwise deemed to have accepted or rejected the Plan in accordance with Section 20.3 of the Plan, shall be entitled to vote separately to accept or reject the Plan.

19.2 **Acceptance by Class of Creditors**:  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan, including Claims estimated for voting purposes.

19.3 **Cramdown**:  In the event that any impaired Class of Claims or Equity Interests shall fail to accept, or be deemed to reject, the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan.

## ARTICLE XX

## IDENTIFICATION OF CLAIMS AND EQUITY
## INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

20.1 **Impaired and Unimpaired Classes**:  Claims in Classes 1, 3 through 6 are not impaired under the Plan.  Claims and Equity Interests in Classes 2, 7 through 60 are impaired under the Plan.

20.2     **Impaired Classes Entitled to Vote on Plan**:  The Claims in Classes 2, 7 through 34 are impaired and receiving distributions pursuant to the Plan and are therefore entitled to vote to accept or reject the Plan.

20.3     **Equity Interests Deemed to Reject**:  The Equity Interests in Classes 35-60  are not entitled to receive any distributions or retain their Equity Interests pursuant to the Plan, and are deemed to reject the Plan and are not entitled to accept or reject the Plan.

20.4     **Controversy Concerning Impairment**:  In the event of a controversy as to whether any Class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE XXI

## PROVISIONS REGARDING DISTRIBUTIONS

21.1     **Distributions of Cash to Allowed Claims**:  Subject to the provisions of Section 21.2 hereof, or as soon as practicable after the Effective Date, the Disbursing Agent shall distribute to each holder of an Allowed Administrative Expense Claim, Allowed Priority Claim, Allowed Wells Fargo Claim, Allowed PNC Claim, Allowed BMO Claim, Allowed Secured Claim, Allowed Non-MJC General Unsecured Claim, Allowed 8.55% Note Claims, Allowed 7.25% Note Claims Allowed MJC Claim (or cause to be distributed to each holder of a Disputed Claim in accordance with Section 17.3 hereof) the distributions set forth in Articles III through XIII hereof.

21.2     **Sources of Cash for Distribution**:  Except as otherwise provided in this Plan or the Confirmation Order, all Cash required for the payments to be made to Allowed Claims shall be from the Debtors' Cash, the MID Cash Consideration, Committee Litigation Settlement Payment, MID Litigation Cash Consideration, the LSP Sale Proceeds, MJC Sale Proceeds and Thistledown Sale Proceeds.

21.3     **Timeliness of Payments**:  Any payments or distributions to be made pursuant to the Plan shall be deemed to be timely made if made within fifteen (15) days after the date therefor specified in the Plan.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

21.4     **Distributions by the Disbursing Agent**:  All distributions to be made pursuant to the Plan shall be made by the Disbursing Agent at the direction of the Reorganized Debtors, the Creditors' Committee or MID Transferee, as applicable.  The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Persons entitled to receive the same.  The Disbursing Agent shall not hold an economic or beneficial interest in such property.

21.5     **Manner of Payment under the Plan**:  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made pursuant to this Plan, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic

bank; provided, however, that no Cash payments shall be made to a holder of an Allowed Claim until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

21.6 **Delivery of Distributions**: Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in Section 21.5 of the Plan, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on a proof of claim filed by such holder, or at the last known address of such a holder if no proof of claim is filed or if the Debtors have been notified in writing of a change of address.

21.7 **Undeliverable Distributions**:

(a) Holding of Undeliverable Distributions: If any distribution to any holder is returned to the Reorganized Debtors as undeliverable, no further distributions shall be made to such holder unless and until the Reorganized Debtors are notified, in writing, of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable. All Entities ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Reorganized Debtors to attempt to locate any holder of an Allowed Claim.

(b) Failure to Claim Undeliverable Distributions: On or about the six (6) month anniversary of the Effective Date, the Reorganized Debtors shall file a list with the Bankruptcy Court setting forth the names of those Entities for which distributions have been made hereunder and have been returned as undeliverable as of the date thereof. Any holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a distribution within one (1) year from and after the Effective Date shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan against the Reorganized Debtors or their property. In such case, any consideration held for distribution on account of such Claim shall revert to the Disbursing Agent for purposes of (i) calculating and distributing "Creditor Cash" to the extent such undeliverable distribution is on account of an Allowed Non-MJC General Unsecured Claim, Allowed 8.55% Note Claim, and Allowed 7.25% Note Claim or (ii) distributing to MID Transferee to the extent such undeliverable distribution is on account of an Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Non-Tax Claim or Allowed MJC Claim.

47

21.8 **Indenture Trustee**:

(a) The Indenture Trustee shall be deemed to be the holder of all , 8.55% Note Claims and 7.25% Note Claims for purposes of distributions to be made hereunder, and all distributions on account of such notes shall be made to or on behalf of the Indenture Trustee. The Indenture Trustee shall hold or direct such distributions for the benefit of the holders of record of Allowed Subordinated Note Claims.

(b) To the extent that the MID Litigation Consideration is insufficient to compensate the reasonable fees and expenses of the Indenture Trustee, the Indenture Trustee shall be paid in Cash on the Effective Date from the distributions otherwise allocable to holders of record of Allowed 8.55% Note Claims and Allowed 7.25% Note Claims.

21.9 **Compliance with Tax Requirements**: The Reorganized Debtors shall comply with all applicable tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. MID intends to submit an application for a withholding certificate with the IRS in accordance with the rules of Treasury Regulation Section 1.1445-3 and, therefore, the Reorganized Debtors shall not report or remit any amounts required to be remitted to the IRS under Section 1445 of the IRC, and the Treasury Regulations promulgated thereunder, in connection with the transactions set forth in this Plan except to the extent required by the IRS in its determination with respect to MID's application for a withholding certificate.

21.10 **Time Bar to Cash Payments**: Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of a voided check shall be made on or before the later of (a) the first (1st) anniversary of the Effective Date or (b) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and all monies related thereto shall be remitted to (i) the Disbursing Agent for purposes of calculating and distributing as "Creditor Cash," to the extent relating to Non-MJC General Unsecured Claims, 8.55% Note Claim, and 7.25% Note Claim and (ii) MID Transferee, to the extent relating to MJC Claims, Administrative Claims, Priority Non-Tax Claims or Priority Tax Claims.

21.11 **Distributions After Effective Date**: Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made in accordance with the terms and provisions of Section 21.1 of the Plan.

21.12 **Setoffs**: The Disbursing Agent, solely as agent for MID Transferee, may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed MJC Claim, Allowed Administrative Claim, Allowed Priority Non-Tax Claim or Allowed Priority Tax Claim and the distributions to be made pursuant to the Plan on account thereof (before any

48

distribution is made on account of such Claim), the claims, rights and causes of action of any nature against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by MID Transferee of any such claims, rights and causes of action that MID Transferee may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment.

21.13 **Allocation of Plan Distributions Between Principal and Interest**: To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest or original issue discount.

21.14 **Exemption from Securities Law**: To the fullest extent provided for in section 1145 of the Bankruptcy Code, the issuance of the Equity Interests of the Reorganized Debtors, and, to the extent considered securities, the MJC Trust Interests, the LSP Trust Interests and the Thistledown Trust Interests, on account of, and in exchange for, the Claims against the Debtors shall be exempt from registration pursuant to section 5 of the Securities Act of 1933 and any other applicable non-bankruptcy law or regulation.

## ARTICLE XXII

## CREDITORS' COMMITTEE

22.1 **Dissolution of the Creditors' Committee**: On the later of the first (1st) Business Day thirty (30) days following (a) the Effective Date and (b) the date upon which the Reorganized Debtors or the Operating Trustee, as applicable, have received payment in full of the LSP Sale Proceeds, MJC Sale Proceeds and Thistledown Sale Proceeds, and provided that initial payments to holders of Allowed Non-MJC Unsecured Claims Allowed 8.55% Note Claims, and Allowed 7.25% Note Claims, have been made in accordance with Articles XI and XII of the Plan, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the reorganization, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

## ARTICLE XXIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

23.1 **Assumption and Assignment of Executory Contracts and Unexpired Leases**: On the Effective Date, the Debtors shall reject all executory contracts and unexpired leases that

(i) have not previously been assumed and assigned or rejected with the approval of the Bankruptcy Court, (ii) are not as of the Confirmation Date the subject of a motion to assume or reject, (iii) have not expired by their own terms on or prior to the Confirmation Date (iv) are not listed on the Schedule of "Assumed and Assigned Executory Contracts and Unexpired Leases" filed with the Plan Supplement, which executory contracts and unexpired leases will be assumed and assigned to MID Transferee as of the Effective Date; provided, however, that notwithstanding the foregoing, executory contracts and unexpired leases relating to the operations of Lone Star Park, Thistledown or the MJC Debtors shall be set forth on a schedule which shall be filed with the Plan Supplement, which executory contracts and unexpired leases and be assumed and assigned upon the consummation of the LSP Sale, MJC Sale and/or Thisteldown Sale. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and assignments and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Debtors or Reorganized Debtors, as applicable, as directed by MID Transferee, reserve the right to modify the Schedule of Assumed and Assigned Executory Contracts at any time through and including fifteen (15) days after the Effective Date.

23.2 **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**: The Schedule of Assumed and Assigned Executory Contracts shall designate the cure amount owing with respect to each such executory contract and unexpired lease to be assumed pursuant to Section 24.1 hereof. Any monetary amounts required as cure payments on each executory contract and unexpired lease to be assumed and assigned to MID Transferee pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment by MID Transferee of the cure amount in Cash on the later of Effective Date or as soon as practicable after resolution of any dispute as to such cure amount, or on such other terms and dates as the parties to such executory contracts or unexpired leases otherwise may agree. In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of MID Transferee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption arises, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be subject to the jurisdiction of the Bankruptcy Court and made following the entry of a Final Order resolving such dispute, but in no event later than ten (10) days after the Effective Date.

23.3 **Rejection Damage Claims**: If the rejection of an executory contract or unexpired lease by the Debtors hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or its properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon attorneys for the Debtors on or before thirty (30) days after the later to occur of (a) the Confirmation Date and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease.

23.4 **Indemnification and Reimbursement Obligations**: For purposes of the Plan, (a) the obligations of the Debtors to indemnify and reimburse their directors or officers that were directors or officers, respectively, on or prior to the Petition Date, including, with respect to W. Thomas Hodgson, the obligations of the Debtors to indemnify W. Thomas Hodgson

pursuant to the Consulting Agreement, dated August 7, 2007 between W. Thomas Hodgson and Magna Entertainment, shall be assumed by the Reorganized Debtors and MID and (b) indemnification obligations of the Debtors arising from services as officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims to the extent previously authorized by a Final Order.

## ARTICLE XXIV

## RIGHTS AND POWERS OF DISBURSING AGENT

24.1 **Exculpation**:  From and after the Effective Date, the Disbursing Agent, in its capacity as such, shall be exculpated by all Persons and Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent.  No holder of a Claim or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the Plan or for implementing the provisions of the Plan.

24.2 **Powers of the Disbursing Agent**:  The Disbursing Agent shall be empowered to (a) take all steps and execute all instruments and documents necessary to effectuate the Plan, (b) make distributions contemplated by the Plan, (c) comply with the Plan and the obligations thereunder, and (d) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

24.3 **Fees and Expenses Incurred From and After the Effective Date**:  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, made by the Disbursing Agent, shall be paid proportionately from Creditor Cash and funds of the MID Transferee based on amounts attributable to each constituency as a result of use without further order of the Bankruptcy Court within fifteen (15) days of submission of an invoice by the Disbursing Agent.  In the event that the Creditors' Committee or MID Transferee objects to the payment of such invoice for post-Effective Date fees and expenses, in whole or in part, and the parties cannot resolve such objection after good faith negotiation, the Bankruptcy Court shall retain jurisdiction to make a determination as to the extent to which the invoice shall be paid by the Creditors' Committee or MID Transferee.

## ARTICLE XXV

## THE REORGANIZED DEBTORS PLAN ADMINISTRATOR

25.1 **Appointment of Reorganized Debtor Plan Administrator**:  On the Effective Date, compliance with the provisions of the Plan shall become the general responsibility of the

Reorganized Debtor Plan Administrator, an employee of the Reorganized Debtors, pursuant to and in accordance with the provisions of the Plan and the Reorganized Debtor Plan Administration Agreement.

25.2 **Responsibilities of the Reorganized Debtor Plan Administrator**: In accordance with the Reorganized Debtor Plan Administration Agreement, the responsibilities of the Reorganized Debtor Plan Administrator shall include (a) facilitating the Reorganized Debtors' prosecution or settlement of objections to and estimations of Claims, (b) if requested by MID Transferee, prosecution or settlement of claims and causes of action held by the Debtors and Debtors in Possession, (c) calculating and assisting the Disbursing Agent in implementing all distributions in accordance with the Plan, (d) filing all required tax returns and paying taxes and all other obligations on behalf of the Reorganized Debtors from funds held by the Reorganized Debtors, (e) periodic reporting to the Bankruptcy Court, of the status of the Claims resolution process, distributions on Allowed Claims and if requested by MID Transferee, prosecution of causes of action, and (f) such other responsibilities as may be vested in the Reorganized Debtor Plan Administrator pursuant to the Plan, the Reorganized Debtor Plan Administration Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

25.3 **Powers of the Reorganized Debtor Plan Administrator**: The powers of the Reorganized Debtor Plan Administrator shall, without any further Bankruptcy Court approval in each of the following cases, include (a) the power to invest funds in, and withdraw, make distributions and pay taxes and other obligations owed by the Reorganized Debtors from funds held by the Reorganized Debtor Plan Administrator and/or the Reorganized Debtors in accordance with the Plan, (b) if requested by MID Transferee, the power to compromise and settle claims and causes of action on behalf of or against the Reorganized Debtors and (c) such other powers as may be vested in or assumed by the Reorganized Debtor Plan Administrator pursuant to the Plan, the Reorganized Debtor Plan Administration Agreement or as may be deemed necessary and proper to carry out the provisions of the Plan; provided, however, that any compromise and settlement of Non-MJC General Unsecured Claims, MJC Claims in excess of twenty million dollars ($20,000,000.00) or the Formation Agreement Claims shall be in consultation with the Creditors' Committee.

25.4 **Compensation of the Reorganized Debtor Plan Administrator**: In addition to reimbursement for actual out-of-pocket expenses incurred by the Reorganized Debtor Plan Administrator, the Reorganized Debtor Plan Administrator shall be entitled to receive reasonable compensation for services rendered on behalf of the Reorganized Debtors in an amount and on such terms as may be reflected in the Reorganized Debtor Plan Administration Agreement.

25.5 **Termination of Reorganized Debtor Plan Administrator**: The duties, responsibilities and powers of the Reorganized Debtor Plan Administrator shall terminate pursuant to the terms of the Reorganized Debtor Plan Administration Agreement.

# ARTICLE XXVI

## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF
## THE PLAN; IMPLEMENTATION PROVISIONS

26.1 **Conditions Precedent to Effective Date of the Plan**: The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a) <u>Entry of the Confirmation Order.</u> The Clerk of the Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, and the Confirmation Order shall have become a Final Order.

(b) <u>Effective Date.</u> The Effective Date shall occur on or before April 30, 2010.

(c) <u>Plan Support Agreement Still in Effect.</u> The Plan Support Agreement shall not have terminated in accordance with the terms thereof.

(d) <u>Regulatory Approvals.</u> MID, MID Transferee and the Reorganized Debtors shall have received the following authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Plan and that are required by law, regulations or order, including those set forth on Exhibit G hereto.

(e) <u>Formation Agreement Claims and Formation Agreement Guarantee Claims</u>. The Bankruptcy Court shall have entered an order resolving the Debtors' objections to the Formation Agreement Claims and Formation Agreement Guarantee Claims by the Confirmation Date.

(f) <u>MID Asset Transfer Agreement</u>. The MID Asset Transfer Agreement among MID Transferee, MEC Canada, MEC Media and, subject to the exercise of the XpressBet Option, XpressBet, shall be executed and delivered with respect to the MID Non-Debtor Assets.

(g) <u>Consents</u>. The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are necessary to implement the Plan and that are required by law, regulation or order.

(h) <u>Execution of Documents; Other Actions</u>. All other actions and documents necessary to implement the Plan shall have been effected or executed, including, but not limited to the Reorganized Plan Administrator Agreement and the Operating Trusts Agreements, if applicable.

26.2 **Waiver of Conditions Precedent**: To the extent practicable and legally permissible, each of the conditions precedent in Section 26.1, may be waived, in whole or in part, only with the approval of the Debtors, the Creditors' Committee and MID US Financing.

Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Bankruptcy Court.

## ARTICLE XXVII

## RETENTION OF JURISDICTION

27.1    **Retention of Jurisdiction**:  The Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a)    to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

(b)    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, unless any such agreements or documents contain express enforcement and dispute resolution provisions to the contrary, in which case, such provisions shall govern;

(c)    to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors prior to or after the Effective Date;

(d)    to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)    to hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

(f)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(g)    to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)    to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

RLF1 3539354v.1

(i)　　to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)　　except to the extent provided in Section 27.1(b) of the Plan, to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(k)　　to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)　　except to the extent provided in Section 27.1(b) of the Plan, to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

(m)　　to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)　　to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(o)　　to enter a final decree closing the Chapter 11 Cases;

provided, however, that the foregoing is not intended to (1) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (2) impair the rights of an Entity to (i) invoke the jurisdiction of a court, commission or tribunal with respect to matters relating to a governmental unit's police and regulatory powers and (ii) contest the invocation of any such jurisdiction; provided, however, that the invocation of such jurisdiction, if granted, shall not extend to the allowance or priority of Claims or the enforcement of any money judgment against the Debtors or the Reorganized Debtors, as the case may be, entered by such court, commission or tribunal, or (3) impair the rights of an Entity to (i) seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d) and (ii) contest any request for the withdrawal of reference in accordance with 28 U.S.C. § 157(d).

## ARTICLE XXVIII

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

28.1　**Modification of Plan**:  Proponents, acting jointly, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules in the event any amendment or modification would materially adversely affect the substance of the economic and governance provisions set forth in the Plan, to amend or modify the Plan or any exhibits to the Plan at any time prior to the entry of the Confirmation Order.  Upon entry of the Confirmation Order, the Proponents, acting jointly, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be

necessary to carry out the purpose and intent of the Plan. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder. Any amendment or modification contemplated in this Section 28.1 shall require the consent of the Debtors, the Creditors' Committee and MID.

28.2    **Revocation or Withdrawal**:

(a)    The Plan may be revoked or withdrawn prior to the Confirmation Date by the Proponents, acting jointly.

(b)    If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity, including, without limitation, the Creditors' Committee with respect to the Committee Litigation, or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

## ARTICLE XXIX

## PROVISION FOR MANAGEMENT

29.1    **Reorganized Debtors Directors:**  From and after the Effective Date, the board of directors of the Reorganized Debtors shall consist of William Ford, Blake Tohana and a person to be determined, in each case, as proposed by the Debtors and consented to by the Creditors' Committee and MID (not to be unreasonably withheld). Except as set forth herein, provisions regarding members of the Reorganized Debtors Board of Directors shall be as set forth in the Reorganized Debtors By-laws.

## ARTICLE XXX

## ARTICLES OF INCORPORATION AND BY-LAWS
## OF THE DEBTOR; CORPORATE ACTION

30.1    **Amendment of Articles of Incorporation/Charter**:  On or prior to the Effective Date, the Debtors shall file the Reorganized Debtors Certificate of Incorporation and the Reorganized Debtors By-laws under the general supervision of the Office of the Attorney General.

30.2    **Corporate Action**:  On the Effective Date, the adoption of the Reorganized Debtors Certificate of Incorporation and the Reorganized Debtors By-laws shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors. The cancellation of all Equity Interests, Subordinated Notes, employment agreements, and other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred, be authorized, and shall be in effect without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action

56

by the stockholders of the Debtors or the Reorganized Debtors.  Without limiting the foregoing, from and after the Confirmation Date, the Debtors, and the Reorganized Debtors may take any and all actions deemed appropriate in order to consummate the transactions contemplated herein.

30.3  **Issuance of Equity Interests in the Reorganized Debtors**:  The issuance of Equity Interests in the Reorganized Debtors is authorized without the need for any further corporate action.  Immediately prior to or on the Effective Date, all Reorganized AmTote Stock shall be issued to Reorganized 30000 Maryland and all MID Reorganized Stock shall be distributed to the holder of  the MID Claims pursuant to the Plan.

30.4  **Cancellation of Existing Securities and Agreements**:  On the Effective Date, the 7.25% Indenture, the 7.25% Notes, the 8.55% Indenture, the 8.55% Notes and the Equity Interests in the Debtors shall be cancelled; provided, however, the 7.25% Indenture and the 8.55% Indenture shall continue in effect solely for the purpose of (i) allowing the holders of the Allowed 8.55% Note Claims and Allowed 7.25% Note Claims to receive their distributions hereunder and (ii) permitting the Indenture Trustee to maintain any rights or Liens it may have for fees, costs and expenses under the 7.25% Indenture and the 8.55% Indenture to the extent that such amounts are not satisfied pursuant to Section 22.8(b) hereof.

30.5  **Surrender of Existing Securities**:  As soon as practicable, on or after the Effective Date, each holder of an 8.55% Note Claim and 7.25% Note Claim shall surrender its Subordinate Note(s) to the Indenture Trustee or in the event such Subordinated Note(s) are held in the name of, or by nominees of, The Depository Trust Company, Euroclear S.A./N.V. or Clearstream International, as applicable, the Reorganized Debtors shall seek the cooperation of The Depository Trust Company to provide appropriate instructions to the Indenture Trustee. No distributions under the Plan shall be made for or on behalf of such holder unless and until (a) such Subordinated Note is received by the Indenture Trustee, (b) the Indenture Trustee receives appropriate instructions from The Depository Trust Company, Euroclear S.A./N.V. or Clearstream International, as applicable, or (c) the loss, theft or destruction of such Subordinated Note is established to the reasonable satisfaction of the Indenture Trustee, which such satisfaction may require such holder to submit (1) a lost instrument affidavit and (2) an indemnity bond holding the Debtors, the Reorganized Debtors, and the Indenture Trustee harmless in respect of such Subordinated Note and any distributions made thereof.  Upon compliance with this Section by a holder of the 8.55% Note Claim and 7.25% Note Claim, such holder shall, for all purposes under the Plan, be deemed to have surrendered such note.  Any holder that fails to surrender such Subordinated Note or fails to satisfactorily explain its non-availability to the Indenture Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors and the Reorganized Debtors (or their property) or the Indenture Trustee in respect of such Claim and shall not participate in any distribution under the Plan.  All property in respect of such forfeited distributions, including interest thereon, shall be promptly returned to the Reorganized Debtors by the Indenture Trustee and any such note shall be cancelled.

30.6  **Cancellation of Liens**:  Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, any Lien securing any Secured Claim that is satisfied in full and discharged hereunder shall be deemed released, and the holder of such Secured Claim shall

be authorized and directed to release any Collateral or other property of the Debtors (including any cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Reorganized Debtors.

## ARTICLE XXXI
## CERTAIN TAX MATTERS

31.1 **Exemption from Transfer Taxes**:  Pursuant to section 1146(a) of the Bankruptcy Code, the creation of any mortgage, deed of trust, or other security interest, the issuance, transfer or exchange of any securities, instruments or documents the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the transfers to MID Transferee contemplated by Section 6.1 hereof and the sale of the Assets in the Operating Trusts, shall not be subject to any stamp, real estates transfer, mortgage recording or other similar tax.  The Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

31.2 **Tax Election:**

(a) Magna Entertainment shall make a timely and valid election pursuant to Treasury Regulation Section 1.1502-36(d)(6)(i)(A) to reduce the basis of the stock of Reorganized Debtors transferred to MID Transferee or one of its affiliates pursuant to the Plan to the extent necessary to prevent any attribute reduction pursuant to Treasury Regulation Section 1.1502-36(d)(6).

(b) The Debtors shall not make an election pursuant to IRC Section 108(b)(5) to apply any portion of the reduction of tax attributes under IRC Section 108(b)(1) first to the basis of depreciable property.

31.3 **Tax Refunds**:  On the Effective Date, the Debtors shall assign to MID US Financing their respective rights to any refund for taxes that are attributable to tax periods (or portions thereof) ending prior to the Effective Date.

31.4 **Designation of Substitute Agent**:  On the Effective Date, Magna Entertainment shall designate Reorganized Gulfstream Park Racing as (i) its agent to take any and all actions necessary or incidental to the preparation and filing by Reorganized Magna Entertainment of any tax returns required to be filed by Reorganized Magna Entertainment after the Effective Date, including, without limitation, the execution of any necessary authorizations and powers of attorney and (ii) as "substitute agent" (pursuant to Treasury Regulation Section 1.1502-77(d)), and any similar provisions of applicable state income or franchise tax laws, and shall take any and all actions necessary to obtain the approval of such designation by the IRS, or any other  relevant taxing authority, prior to the Effective Date.

## ARTICLE XXXII

## MISCELLANEOUS PROVISIONS

32.1    **Discharge of Claims and Termination of Equity Interests**.

(a)    Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, or Interests or other rights of a holder of an equity security or other ownership interest, and upon the Effective Date, the Debtors and the Reorganized Debtors shall (i) be deemed discharged under Section 1141(d)(1)(A) of the Bankruptcy Code and released from any and all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Interests or other rights of a holder of an equity security or other ownership interest, of any nature whatsoever, including, without limitation, liabilities that arose before the Effective Date (including prior to the Petition Date), and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the Holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate and cancel all rights of any equity security holder in any of the Debtors and all Equity Interests.

(b)    Except as expressly provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against each of the Debtors, the Debtors' respective assets, property and Estates, the Reorganized Debtors, the Creditors' Committee, MID, MID Transferee and their respective Related Persons any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a holder of an Equity Interest, relating to any of the Debtors or Reorganized Debtors or any of their respective assets, property and estates based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Interests or other rights of a holder of an Equity Interest and termination of all rights of any such holder in any of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors or MID Transferee or any of their respective assets, property and

Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any holder of any Equity Interest in any of the Debtors or terminated Equity Interest.

32.2 **Injunction on Claims**:  **Except as otherwise expressly provided in the Plan, the Confirmation Order or such other order of the Bankruptcy Court that may be applicable, all Persons or Entities, and each Related Person of such Persons or Entities, who have held, hold or may hold Claims or any other debt or liability that is discharged or Equity Interests or other right of equity interest that is terminated or cancelled pursuant to the Plan, or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Sections 32.1 and 32.5 hereof, respectively, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability or Equity Interest that is terminated or cancelled pursuant to the Plan against the Debtors, the Debtors in Possession or the Reorganized Debtors, the Debtors' estates, or their respective properties, assets or interests in properties, MID Transferee or its respective properties, assets or interests in properties,  (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors in Possession or the Reorganized Debtors, the Debtors' estates, MID Transferee or their respective properties or interests in properties, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Debtors in Possession or the Reorganized Debtors, the Debtors' estates, or their respective properties, assets or interests in properties, MID Transferee or its respective properties, assets or interests in properties, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Debtors in Possession or the Reorganized Debtors, or against their respective property or interests in property, or MID Transferee MID Transferee or its respective properties, assets or interests in properties, with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan; provided, however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided, further, that, except in connection with a properly filed proof of claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery from the Debtors, the Debtors in Possession or the Reorganized Debtors or their respective property or interests in property with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power.  Such injunction shall extend to all successors of the Debtors and Debtors in Possession, and their respective properties and interests in property.**

32.3    **Integral to Plan**: Each of the discharge, injunction and release provisions provided in this Article XXXII is an integral part of the Plan and is essential to its implementation. Each of the Debtors, the Reorganized Debtors and MID Transferee shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article XXXII.

32.4    **Releases by the Debtors**: Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and the Reorganized Debtors on its own behalf and as representative of its respective estate, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts owing, causes of action, rights, liabilities of any nature whatsoever and remedies of the Debtors' estates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against the Released Parties arising from or relating to the period prior to the Effective Date are released by this Plan, including any act, omission or transaction in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreement, the Committee Litigation and the settlement thereof, that may be asserted by or on behalf of the Debtors or the Reorganized Debtors or their respective estates.

32.5    **Releases by Holders of Claims and Equity Interests**. Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim or any other obligation, suit, judgment, debt, right, remedy, cause of action or liability of any nature whatsoever, or any Equity Interest, or other right of a holder of an equity security or other ownership interest that is terminated, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors or their respective assets, property and estates, the Chapter 11 Cases or the Plan, the Disclosure Statement, or the Plan Support Agreements, including the matters asserted in the Committee Litigation and the settlement thereof; provided, however, that each Entity that has submitted a Ballot may elect, by checking the appropriate box on its Ballot, not to grant the releases set forth in Section 32.5 of the Plan with respect to those Released Parties other than the Debtors, the Reorganized Debtors, and their respective predecessors, successors and assigns (whether by operation of law or otherwise).

32.6    **Injunction Related to Releases.  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, (i) all Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, debt, right, remedy, causes of action or liability of any nature whatsoever, or any Equity Interest or other right of a Holder of an equity security or other ownership interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and Estates, that is released pursuant to Section 32.5 of the Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Equity Interests or other rights of a holder of an equity security or other ownership interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 32.5 hereof; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; provided, that this provision shall not apply to the rights of the Debtors, Reorganized Debtors or MID Transferee to take any action with respect to any of or all the Shared Insurance Policies.**

32.7    **Exculpation**:  The Debtors, the Reorganized Debtors, MID, the Creditors' Committee and any of their respective directors, officers, officials, employees, members, attorneys, consultants, advisors and agents (acting in such capacity), shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Chapter 11 Cases (including any actions taken by the Creditors' Committee after the Effective Date), the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions of this Section 32.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

32.8    **Deemed Consent**:  By submitting a Ballot and not electing to withhold consent to the releases of the applicable Released Parties set forth in Section 32.5 of the Plan by marking the appropriate box on the Ballot, each holder of a Claim or Interest shall be deemed,

to the fullest extent permitted by applicable law, to have specifically consented to the releases set forth in Section 32.5 of the Plan.

32.9    **No Waiver**:  Notwithstanding anything to the contrary contained in Sections 32.4 and 32.5 hereof, the releases and injunctions set forth in such sections shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Reorganized Debtors, the Creditors' Committee or MID Transferee to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by any of them.

32.10    **Supplemental Injunction**: **Notwithstanding anything contained herein to the contrary, all Persons, including Person acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Claims or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Equity Interests, or other rights of a holder of an equity security or other ownership interest, against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against or Equity Interest in any of the Debtors, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Equity Interests or other rights of a Holder of an equity security or other ownership interest, arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:**

(a)    **Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Equity Interests, or other rights of a Holder of an equity security or other ownership interest, against any of the Released Parties or the assets or property of any Released Party;**

(b)    **Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Equity Interests or other rights of a holder of an equity security or other ownership interest;**

(c)    **Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Equity Interests or other rights of a Holder of an equity security or other ownership interest;**

(d)    **Except as otherwise expressly provided in the Plan or the Confirmation Order, asserting, implementing or effectuating any setoff, right of**

subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Equity Interests or other rights of a Holder of an equity security or other ownership interest; and

(e) **Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, or the Confirmation Order relating to such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and all Equity Interests or other rights of a holder of an equity security or other ownership interest;**

**provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.**

32.11 **Preservation of Rights of Action**: Except as otherwise provided in the Plan, including, without limitation, Section 18.1 hereof, or in any contract, instrument, release or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain sole and exclusive authority to enforce any claims, rights or causes of action that the Debtors, the Debtors in Possession or its chapter 11 estates may hold against any Entity, including any claims, rights or causes of action arising under sections 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

32.12 **Payment of Statutory Fees**: All fees payable pursuant to section 1930 of title 28 of the United States Code, and, if applicable, any interest payable pursuant to section 3717 of title 31 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or thereafter as and when they become due and owing.

32.13 **Retiree Benefits**: From and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the MID Transferee shall assume and pay all retiree benefits (within the meaning of section 1114 of the Bankruptcy Code) and contribute to the Pension Plans the amount necessary to satisfy the minimum funding standards under sections 302 and 303 of ERISA, 29 U.S.C. §§ 1082 and 1083, and sections 412 and 430 of the Internal Revenue Code, 26 U.S.C. §§ 412 and 430, if any, relating to the Pension Plans, at the level established in accordance with subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, and for the duration of the period during which the Debtors have obligated themselves to provide such benefits; provided, however, that the Reorganized Debtors may modify such benefits to the extent permitted by applicable law. Nothing in the Plan of Reorganization shall be construed as discharging, releasing, or relieving Debtors, or their successors, including the Reorganized Debtors, or any party, in any capacity, from any liability imposed under any law or regulatory provision with respect to the Pension Plans or the Pension Benefit Guaranty Corporation ("PBGC"). PBGC and the Pension Plans will not be enjoined or precluded from enforcing such liability as a result of any provision of the Plan of Reorganization or the Confirmation Order.

32.14  **Preservation of Insurance**:  Nothing in the Plan, the Plan Documents or the Confirmation Order, including the discharge and release of Debtors, shall diminish or impair the enforceability of any of the Shared Insurance Policies that may be obligated to provide, coverage for Debtors or other Entities.

32.15  **Post-Effective Date Fees and Expenses**:  From and after the Effective Date, the Reorganized Debtors and the Creditors' Committee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, retain such professionals and pay the reasonable professional fees and expenses incurred by the Reorganized Debtors and/or the Creditors' Committee related to implementation and consummation of the Plan pursuant to a budget approved by the Creditors' Committee and the Debtors without further approval from the Bankruptcy Court.

32.16  **Severability**:  If, prior to the Confirmation Date, any term or provision of the Plan shall be held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, MID and the Creditors' Committee have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

32.17  **Governing Law**:  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the Delaware, without giving effect to principles of conflicts of laws.

32.18  **Notices**:  All notices, requests, and demands in connection herewith to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Magna Entertainment Corp.
455 Magna Drive, 2nd Floor
Aurora, Ontario L4G 7A9
Attention: Chief Financial Officer
Fax. No.: (905) 726-2585

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention: Brian S. Rosen
Fax No.: (212) 310-8007

MI Developments Inc.
455 Magna Drive, 2nd Floor
Aurora, Ontario L4G 7A9
Attention: Chief Financial Officer
Fax No.: (905) 713-6332

With a copy to:

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Attention: Lee S. Attanasio
Fax No.: (212) 839-5599

Creditors' Committee
c/o Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036-2714
Attention: Kenneth S. Eckstein
Fax No.: (212) 715-8000

32.19  **Closing of Cases**:  The Reorganized Debtors shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.

32.20  **Section Headings**:  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

RLF1 3539354v.1

32.21 **Inconsistencies**: To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.

Dated: Wilmington, Delaware
February 18, 2010

MAGNA ENTERTAINMENT CORP. AND ITS AFFILIATED DEBTORS

By: ___/s/ William G. Ford_____
    Name: William G. Ford
    Title: Executive Vice President, General Counsel
        & Secretary

By: ___/s/ Blake Tohana_____
    Name: Blake Tohana
    Title: Executive Vice President &
        Chief Financial Office

SIDLEY AUSTIN LLP

By: ___/s/ Lee S. Attanasio_____
    Name: Lee S. Attanasio
    Title: Counsel for MI Developments Inc. and
        MI Developments US Financing Inc.

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By.___/s/ Kenneth H. Eckstein_____
    Name: Kenneth H. Eckstein
    Title: Counsel for the Official Committee of
        Unsecured Creditors

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

– and –

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

Attorneys for Debtors and
Debtors in Possession


KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

– and –

PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

Attorneys for the Official Committee of
Unsecured Creditors

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

– and –

YOUNG CONAWAY STARGATT &
TAYLOR LLP
The Brandywine Building
1000 East Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorneys for MI Developments US Financing
Inc.

EXHIBIT A

ASSETS OF XPRESSBET

EXHIBIT B-1

ASSETS OF SANTA ANITA COMPANIES

EXHIBIT B-2

ASSETS OF MEC LAND HOLDINGS

EXHIBIT B-3

ASSETS OF REORGANIZED MAGNA ENTERTAINMENT

EXHIBIT B-4

ASSETS OF REORGANIZED GULFSTREAM PARK

US_ACTIVE:\20984354\18\61366.0003

RLF1 3539354v.1

# EXHIBIT C

## DEBTORS ISSUING MID REORGANIZED STOCK

(1) L.A. Turf Club
(2) Pacific Racing
(3) Palm Meadows Training Center
(4) Gulfstream Park Racing
(5) GPRA Commercial
(6) MEC Maryland Stock
 (7) 30000 Maryland

Exhibit D

## CLASSES OF NON-MJC GENERAL UNSECURED CLAIMS

Class 9 – Amtote International
Class 10 – GPRA Commercial Enterprises, Inc.
Class 11 – Gulfstream Park Racing Association, Inc.
Class 12 – Los Angeles Turf Club, Incorporated
Class 13 – Magna Entertainment
Class 14 – MEC Dixon, Inc.
Class 15 – MEC Land Holdings (California), Inc.
Class 16 – MEC Lone Star, L.P.
Class 17 – MEC Pennsylvania Racing Services, Inc.
Class 18 – Pacific Racing Association
Class 19 – GPRA Thoroughbred Training Center, Inc.
Class 20 – Old RP, Inc. *f/k/a*, Remington Park, Inc.
Class 21 – Santa Anita Companies, Inc.
Class 22 – Sunshine Meadows Racing, Inc.
Class 23 – Thistledown, Inc.
Class 24 – 30000 Maryland Investments LLC
Class 25 – MEC Holdings (USA), Inc.
Class 26 – MEC Maryland Investments, Inc.

EXHIBIT E

MJC CLAIMS

Class 27 – Maryland Jockey Club, Inc.
Class 28 – Pimlico Racing Association, Inc.
Class 29 – Prince George's Racing, Inc.
Class 30 – Southern Maryland Agricultural Association
Class 31 – Southern Maryland Racing, Inc.
Class 32 – The Maryland Jockey Club of Baltimore City, Inc.
Class 33 – Laurel Racing Assoc., Inc.
Class 34 – Laurel Racing Association Limited Partnership

EXHIBIT F

SHARED INSURANCE POLICIES

# EXHIBIT G

| Jurisdiction | Name of Licensee/Permit Holder | Facility Affected by License/Permit | Name of License/Permit | Issuing Agency Issuing Agency's Address |
|---|---|---|---|---|
| Arizona | AmTote International, Inc. | Tucson Greyhound Park | Totalisator Concessionaire | Arizona Department of Racing 1110 W. Washington, Suite 260 Phoenix, AZ 85007 |
| California | Los Angeles Turf Club, Inc. | Santa Anita Park | Race Meet License | California Horse Racing Board 1010 Hurley Way, Suite 300 Sacramento, CA 95825 |
| California | Los Angeles Turf Club, Inc. | Santa Anita Park | State Liquor License Type 47 On Sale General Eating Place and Type 58 Caterer Permit | California Department of Alcoholic Beverage Control 3810 Rosin Ct. Suite #150 Sacramento, Ca 95834 |
| California | Pacific Racing Association, Inc. | Golden Gate Fields | Race Meet License | California Horse Racing Board 1010 Hurley Way, Suite 300 Sacramento, CA 95825 |
| California | Pacific Racing Association, Inc. | Golden Gate Fields | State Liquor License Type 47-On-Sale General Eating Place and type 58-Caterer Permit | California Department of Alcoholic Beverage Control 3810 Rosin Ct. Suite #150 Sacramento, Ca 95834 |
| California | XpressBet, Inc. | XpressBet | Out-of-State ADW License | California Horse Racing Board 1010 Hurley Way, Suite 300 Sacramento, CA 95825 |
| California | AmTote International, Inc. | AmTote (not for one specific location alone) | Business License | California Horse Racing Board 1010 Hurley Way, Suite 300 Sacramento, CA 95825 |
| Delaware | AmTote International, Inc. | Harrington Raceway & Casino | Business License | State of Delaware Delaware Division of Revenue PO Box 8750 Wilmington, DE 19899-8750 |
| Florida | Gulfstream Park Racing Association, Inc. | Gulfstream Park | Thoroughbred Racing Permit and Cardroom License | Florida Department of Business and Professional Regulation Division of Pari-Mutuel Wagering Suite 280 1940 North Munroe Street Tallahassee, FL 32399-1037 |
| Florida | Gulfstream Park Racing Association, Inc. | Gulfstream Park | Quarter Horse Racing Permit | Florida Department of Business and Professional Regulation Division of Pari-Mutuel Wagering Suite 280 1940 North Munroe Street Tallahassee, FL 32399-1037 |
| Florida | Gulfstream Park Racing Association, Inc. | Gulfstream Park | Slots Machine License | Florida Department of Business and Professional Regulation Division of Pari-Mutuel Wagering Suite 280 1940 North Munroe Street Tallahassee, FL 32399-1037 |

| Jurisdiction | Name of Licensee/Permit Holder | Facility Affected by License/Permit | Name of License/Permit | Issuing Agency Issuing Agency's Address |
|---|---|---|---|---|
| Florida | Orchid Concessions, Inc. | Gulfstream Park | State Dual Liquor and Tobacco License | Florida Department of Business and Professions Division of Alcoholic Beverage and Tobacco<br><br>1940 N. Monroe<br><br>Tallahassee, Florida 32399-1020 |
| Florida | AmTote International, Inc. | Calder Race Course, Miami<br><br>Orange Park, Orange Park<br><br>Tampa Bay Downs, Oldsmar<br><br>Gulfstream Park, Hallandale<br><br>Ocala Breeders ITW, Ocala<br><br>Orlando Jai Alai, Fern Park<br><br>Ocala Jai Alai, Orange Lake<br><br>Jefferson C.K.C., Monticello<br><br>Jacksonville Kennel Club, Jacksonville<br><br>St.Johns Kennel Club, Jacksonville<br><br>Flagler Kennel Club, Miami<br><br>Pensacola Greyhound, Pensacola<br><br>Naples Ft Myers, Bonita Springs<br><br>Ebro Greyhound, Ebro<br><br>Palm Beach Kennel, West Palm Beach<br><br>Tampa Greyhound, Tampa<br><br>St. Peterburg Kennel, St.Petersburg<br><br>North FL. Hub, OrangePark | Totalisator Concessionaire | Florida Department of Business and Professional Regulation Division of Pari-Mutuel Wagering<br><br>Suite 280<br><br>1940 North Munroe Street<br><br>Tallahassee, FL 32399-1037 |
| Idaho | XpressBet, Inc. | XpressBet | Multi-jurisdictional simulcasting and interactive wagering hub license for Idaho residents | Idaho Racing Commission<br><br>Department of Law Enforcement<br><br>P.O. Box 700<br><br>700 S Stratford Dr.<br><br>Meridian, ID 83680 |
| Illinois | AmTote International, Inc. | Fairmont Park, Collinsville<br><br>Arlington Park, Arlington Heights | Totalisator Concessionaire | Illinois Racing Board<br><br>100 W Randolph St<br><br>Chicago, IL 60601 |

| Jurisdiction | Name of Licensee/Permit Holder | Facility Affected by License/Permit | Name of License/Permit | Issuing Agency Issuing Agency's Address |
|---|---|---|---|---|
| Maryland | XpressBet, Inc. | XpressBet | State-based account wagering approval | Maryland Racing Commission 500 North Calvert Street Room 201 Baltimore, MD 02108 |
| Massachusetts | XpressBet, Inc. | XpressBet | State-based account wagering approval | Massachusetts Racing Commission Ashburton Place, Room 1313 Boston, MA 02108 |
| Montana | XpressBet, Inc. | XpressBet | Multi-jurisdictional simulcasting and interactive wagering hub license | Montana Board of Horse Racing P.O. Box 200512 Helena, Montana 59620-0512 |
| Nebraska | AmTote International, Inc. | Fonner Park, Grand Island Lincoln, Lincoln Columbus Races, Columbus Atokad Downs, South Sioux City Horseman Park, Omaha Nebraska State Fair | Totalisator Concessionaire | Nebraska State Racing Commission 301 Centennial Mall S Lincoln, NE 68508 |
| Nevada | MEC MI DEVELOPMENTS | All MEC Tracks | Pari-Mutuel Wagering Pool Participation Approval | Nevada Gaming Control Board 1919 East College Parkway Carson City, NV 89702 |
| New Hampshire | AmTote International, Inc. | Rockingham Park, Salem Seabrook Greyhound, Seabrook NH | Totalisator Concessionaire | New Hampshire Pari-Mutuel Commission 78 Regional Dr # 3 Concord, NH 03301 |
| New York | AmTote International, Inc. | Buffalo Trotting Raceway NYCOTB | Totalisator & Service Provider License | New York State Racing & Wagering Board 1 Broadway Center, Suite 600 Schenectady, NY 12305 |
| North Dakota | AmTote International, Inc. | Lien Games, Fargo | Totalisator Concessionaire | North Dakota Racing Commission 500 N 9th St Bismarck, ND 58501 |
| Ohio | AmTote International, Inc. | Ohio Hub, Grove City River Downs, Cincinnati Beulah Park, Grove City Northfield Park, Northfield Lebanon Raceway, Lebanon Thistledown, North Randall | Totalisator Concessionaire | Ohio State Racing Commission 77 South High Street 18th Floor Columbus, Ohio 43215-6108 |
| Oklahoma | AmTote International, Inc. | Remington Park | Vendor License | OK Horse Racing Comm. Oklahoma City, OK |

| Jurisdiction | Name of Licensee/Permit Holder | Facility Affected by License/Permit | Name of License/Permit | Issuing Agency Issuing Agency's Address |
|---|---|---|---|---|
| Oregon | XpressBet, Inc. | XpressBet | Multi-jurisdictional account wagering hub license | Oregon Racing Commission 800 NE Oregon #11 Suite 310 Portland, OR 97232 |
| Pennsylvania | MEC | The Meadows Racetrack | Principal Entity Approval | Pennsylvania Gaming Control Board P.O. Box 69060, Harrisburg, PA 17106-9060 |
| Pennsylvania | XpressBet, Inc. | XpressBet, Inc. | Vendor's License | Pennsylvania State Harness Racing Commission 2301 North Cameron Street Room 304 Harrisburg, PA 17110-9408 |
| Pennsylvania | AmTote International, Inc. | The Meadows | Vendor License | PA State Horse Racing Comm. Agriculture Building-Room 204 2301 N. Cameron Street Harrisburg, PA 17110 |
| Texas | AmTote International, Inc. | Corpus Christi Greyhound, Corpus Christi Retama Park, Selma Lone Star, Grand Prairie | Totalisator Concessionaire | Texas Racing Commission 8505 Cross Park Drive Suite 110 Austin, TX 78754 |
| Virginia | XpressBet, Inc. | XpressBet | State-based account wagering license | Virginia Racing Commission 10700 Horsemen's Road New Kent, Virginia 23124 |
| Virginia | AmTote International, Inc. | Colonial Downs, New Kent | Totalisator Concessionaire | Virginia Racing Commission 10700 Horsemen's Road New Kent, Virginia 23124 |
| Washington | XpressBet, Inc. | XpressBet | State-based account wagering license | Washington Racing Commission 7912 Martin Way, Suite D Olympia 98506 |