# Exhibit B

# SUPPORT AGREEMENT

SUPPORT AGREEMENT, dated as of February 18, 2010 (this "Agreement"), by and among MAGNA ENTERTAINMENT CORP. ("Magna Entertainment"), on behalf of itself and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1], MI Developments Inc. ("MI Developments"), MI Developments US Financing Inc. ("MID US Financing," and, collectively with MI Developments, "MID"), and the members of statutory Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee") that are signatories hereto.

## RECITALS:

A. Commencing on March 5, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

B. On July 21, 2009, the Creditors' Committee commenced that certain adversary proceeding styled *The Official Committee of Unsecured Creditors of Magna Entertainment Corp., et al. v. MI Developments, Inc., MID Islandi, Frank Stronach, Jerry D. Campbell, William Menear, Anthony R. Campbell and W. Thomas Hodgson*, Adversary Pro. No. 09-51523) against MID and the other defendants named therein (the "Committee Litigation")

C. The Debtors, MID and the Creditors' Committee have agreed to a settlement in principle of the Committee Litigation (the "Settlement"), the terms and conditions of which shall be set forth in a chapter 11 plan (the "Plan," annexed hereto as Exhibit "A") to be filed in the Debtors' chapter 11 cases.

NOW, THERFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the Debtors, the Creditors' Committee and MID hereby agree as follows:

## AGREEMENT:

1. **Defined Terms.** All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: (i) Magna Entertainment Corp., 8374; (ii) The Santa Anita Companies, Inc., 6180; (iii) Los Angeles Turf Club, Incorporated, 6200; (iv) Pacific Racing Association, 5367; (v) MEC Land Holdings (California) Inc., 7410; (vi) Gulfstream Park Racing Association Inc., 6292; (vii) GPRA Thoroughbred Training Center, Inc., 2326; (viii) MEC Dixon, Inc., 7005; (ix) MEC Holdings (USA) Inc., 8494; (x) Sunshine Meadows Racing, Inc., 4288; (xi) Thistledown, Inc., 5742; (xii) MEC Maryland Investments, Inc., 4637; (xiii) 30000 Maryland Investments LLC, 1704, (xiv) Old RP, Inc., 2024; (xv) GPRA Commercial Enterprises Inc., 6156; (xvi) Pimlico Racing Association, Inc., 4527; (xvii) The Maryland Jockey Club of Baltimore City, Inc., 3840; (xviii) Laurel Racing Association Limited Partnership, 0504; (xix) Laurel Racing Assoc., Inc., 0505; (xx) Prince George's Racing, Inc., 6493; (xxi) Southern Maryland Racing, Inc., 9850; (xxii) Southern Maryland Agricultural Association, 9661; (xxiii) Maryland Jockey Club, Inc., 3124; (xxiv) AmTote International, Inc., 1143; (xxv) MEC Pennsylvania Racing Services, Inc., 9924; and (xxvi) MEC Lone Star, LP, 0489.

2. **Plan and Disclosure Statement.** The Debtors shall use their reasonable best efforts to (a) file the Plan and the Disclosure Statement describing the Settlement and the Plan with the Bankruptcy Court no later than February 18, 2010, (b) seek approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code on or prior to March 31, 2010, (c) prosecute and cause the Bankruptcy Court to confirm the Plan in accordance with section 1129 of the Bankruptcy Code and to have such Plan become effective on or prior to April 30, 2010, and (d) not take any action, and cause any subsidiary not to take any action, which might interfere with the consummation of the transactions contemplated by the Plan.

3. **Plan Support Commitment.** From and after the date hereof, MID and each member of the Creditors' Committee shall (a) take any and all action as is reasonably requested by the Debtors to support (1) approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code and (2) confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, including, without limitation, submitting a letter of the Creditors' Committee to the Debtors' unsecured creditors soliciting support thereto, (b) not consent to or vote for any modification of the Plan unless such modification is proposed by the Debtors, MID and the Creditors' Committee, (c) not vote for or support any chapter 11 plan not proposed by the Debtors, including, without limitation, not take any action, and cause any subsidiary or affiliate not to take any action, which might interfere with the consummation of the transactions contemplated by the Plan and (d) not elect, or otherwise take any action, on their Ballot or otherwise, not to grant the releases and related injunctions set forth in Article XXXII of the Plan.

4. **Solicitation Required in Connection with the Plan.** Notwithstanding anything to the contrary herein, this Agreement is not and shall not be deemed to be a solicitation of acceptances to the Plan. The Debtors, MID and the members of the Creditors' Committee acknowledge and agree that acceptances of the Plan will not be solicited until the Bankruptcy Court has approved the Disclosure Statement and related ballots, and such Disclosure Statement and ballots have been transmitted to parties entitled to receive the same pursuant to an order of the Bankruptcy Court.

5. **Remedies; Specific Performance.** If a party breaches any obligation or other term or provision of this Agreement, the party shall not be liable for money damages. This Agreement is intended as a binding commitment enforceable in accordance with its terms. It is understood and agreed by each of the parties hereto that (i) money damages would not be a sufficient remedy for any breach of this Agreement by any party and in any event is not a remedy available under this Agreement, (ii) each non-breaching party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, and (iii) the right to terminate this Agreement is a cumulative remedy to specific performance.

6. **Termination.** This Agreement may be terminated upon the occurrence of any of the following (each a "Termination Event"):

   a. Entry of an order by the Bankruptcy Court, or any other court of competent jurisdiction, declaring, in a final non-appealable order, that this Agreement is unenforceable;

   b. An interim or permanent trustee, a responsible officer or an examiner with powers

beyond the duty to investigate and report (as set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed to oversee or operate the business of the Debtors in the chapter 11 cases, or if the Debtors file a motion seeking any of the foregoing relief;

c. Entry of a final non-appealable order by the Bankruptcy Court, or any other court of competent jurisdiction that denies confirmation of the Plan, as such Plan may be amended consistent with the terms hereof; or

d. The chapter 11 cases of the Debtors shall have been dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

e. Section 26.1(b) of the Plan, which requires that the Effective Date occur on or before April 30, 2010 has not been satisfied and has not been waived pursuant to Section 26.2 of the Plan.

7. **Effect of Termination.** Upon the termination of this Agreement pursuant to the provisions of Section 6 hereof, all obligations hereunder shall terminate and shall be of no further force and effect; provided, however, that any claim for breach of this Agreement shall survive termination and all rights and remedies with respect to such claims shall not be prejudiced in any way; and, provided, further, that the breach of this Agreement by one or more parties shall not create any rights or remedies against any non-breaching party. Except as set forth above in this Section 7, upon such Termination Event, any obligations of the non-breaching parties set forth in this Agreement shall be null and void ab initio and all claims, causes of action, remedies, defenses, setoffs, rights or other benefits of such non-breaching parties shall be fully preserved without any estoppel, evidentiary or other effect of any kind or nature whatsoever.

8. **Representations And Warranties.** Each of the parties represents and warrants to each other party, severally but not jointly (and solely with respect to itself), that the following statements are true, correct and complete as of the date hereof:

a. **Corporate Power And Authority.** It is duly organized, validly existing, and in good standing under the laws of the state or country of its organization, and has all requisite corporate, partnership or other power and authority to enter into this Agreement and to carry out the transactions contemplated by, and to perform its respective obligations under, this Agreement;

b. **Authorization.** The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate, partnership or other action on its part;

c. **Binding Obligation.** This Agreement has been duly executed and delivered by it and constitutes its legal, valid and binding obligation; and

d. **No Conflicts.** The execution, delivery and performance by it (when such performance is due) of this Agreement do not and shall not (a) violate any provision of law, rule or regulation applicable to it or any of its subsidiaries or its certificate of incorporation or bylaws or other organizational documents or those

of any of its subsidiaries or (b) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party.

9. **Further Disposition or Acquisition of Claims.** This Agreement shall in no way be construed to preclude any party from disposing of or acquiring claims against the Debtors; provided, however, that, so long as this Agreement has not been terminated, each member of the Creditors' Committee and MID agrees that it will not sell, transfer or otherwise dispose of any claims except to a party who shall execute and deliver to the Debtors a writing, in form and substance satisfactory to the Debtors, that the transferee is bound by the terms of this Agreement; and, provided, further, that any claim acquired by a party from and after the date hereof shall automatically be subject to all of the terms of this Agreement.

10. **Execution Date.** This Agreement shall become effective, and the obligations contained herein shall become binding, upon execution by each of the following parties:

   a. the Debtors;

   b. each member of the Creditors' Committee whose signature line is listed below; and

   c. MID.

11. **Entire Agreement.** This Agreement constitutes the entire agreement among the parties as to the subject matter hereof and supersede all prior and contemporaneous agreements, representations, warranties, and understandings of the parties, whether oral, written, or implied, as to the subject matter hereof.

12. **Modification; Waiver.** No modification or amendment of this Agreement shall be binding unless executed in writing by (i) the Debtors, (ii) the members of the Creditors' Committee party thereto and (iii) MID. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

13. **Third-Party Beneficiaries.** Nothing contained in this Agreement shall confer any rights or remedies under or by reason of this Agreement on any person or entity other than the parties hereto, nor shall anything in this Agreement relieve or discharge the obligation or liability of any third party to any party to this Agreement.

14. **Successors And Assigns.** This Agreement shall be binding upon, and shall inure to the benefit of, each party hereto and their respective legal representatives, successors, and assigns, including (in the case of any estate representative), any successor representative, whether under chapter 11 or chapter 7 of the Bankruptcy Code.

15. **Headings.** The descriptive headings of the several sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this agreement.

16. **Interpretation**. This Agreement is the product of negotiations among the parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any party by reason of that party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.

17. **Counterparts; Signatures**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile transmission or e-mail shall be effective as delivery of a manually executed counterpart.

18. **Governing Law**. Except to the extent that the Bankruptcy Code or Federal Rules of Bankruptcy Procedure are applicable, this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to the conflicts of laws principles thereof.

19. **Jurisdiction**. Each party hereby exclusively submits itself for the purpose of this Agreement and any controversy arising hereunder to the Bankruptcy Court during such time as the Debtors shall be subject to the jurisdiction of the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

MAGNA ENTERTAINMENT CORP.,
as Debtors in Possession

By: _____
    Name: Blake S. Tohana
    Title: Executive Vice-President and
           Chief Financial Officer

By: _____
    Name: William G. Ford
    Title: Executive Vice-President,
           General Counsel and Secretary

MI DEVELOPMENTS US FINANCING INC.

By: _____
    Name: Donald Cameron
    Title: Chief Operating Officer
         MI Developments Inc.

By: _____
    Name:
    Title: Rocco Liscio
         Executive Vice-President and
         Chief Financial Officer

MI DEVELOPMENTS INC.

By: _____
   Name: Donald Cameron
   Title: Chief Operating Officer
         MI Developments Inc.

By: _____
   Name: Rocco Liscio
   Title: Executive Vice-President and
         Chief Financial Officer

**SUNRISE PARTNERS LIMITED PARTNERSHIP**

By: _____
Name:
Title: Michael J. Berner, Vice President

[Signature Page to Plan Support Agreement]

THE NEW YORK RACING
ASSOCIATION, INC.

By: _____
Name: PASQUALE VISCUSI
Title: Assistant General Counsel

**GLG MARKET NEUTRAL FUND**

By: _____
Name:
Title:     **ROBERT PRICE
           HEAD OF OPERATIONS
           GLG PARTNERS LP**

_[signature]_
CLARE BETTERIDGE
LEGAL COUNSEL
GLG PARTNERS LP

GLG PARTNERS LP ACTING
AS INVESTMENT MANAGER
FOR GLG MARKET NEUTRAL FUND

MADISON CAPITAL MANAGEMENT LLC

By: _____
Name: R. Michael Collins
Title: Authorized Person

FLORIDA THOROUGHBRED
BREEDERS' AND OWNERS'
ASSOCIATION

By: /s/ Richard E. Hancock
Name: RICHARD E. HANCOCK
Title: EXECUTIVE VICE PRESIDENT