

**ORIGINAL**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | **Chapter 11** |
| **MAGNA ENTERTAINMENT CORP.,** *et al.,* | **Case No. 09-10720 (MFW)** |
| | **Jointly Administered** |
| **Debtors.**[1] | Related Docket Nos. 382, 1272, 1337, 1362, 1272 & 1975 |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO FIRST AMENDMENT TO SECOND AMENDED AND RESTATED DEBTOR IN POSSESSION CREDIT AGREEMENT AND (II) SUPPLEMENTING FINAL DIP ORDERS

Upon the motion, dated February 26, 2010 (the "Motion"), of Magna Entertainment Corp. (the "Borrower" or "Magna Entertainment"), and all of its affiliated debtors that have commenced chapter 11 cases and are debtors in these jointly administered chapter 11 cases (the "Guarantors"), as debtors and debtors in possession (collectively, the "Debtors") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), for an order pursuant to (a) sections 105, 362, 363, 364 and 507 of the Bankruptcy Code, Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") approving the Debtors'

---

1 The "Debtors" in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: (i) Magna Entertainment Corp., 8374; (ii) The Santa Anita Companies, Inc., 6180; (iii) Los Angeles Turf Club, Incorporated, 6200; (iv) Pacific Racing Association, 5367; (v) MEC Land Holdings (California) Inc., 7410; (vi) Gulfstream Park Racing Association Inc., 6292; (vii) GPRA Thoroughbred Training Center, Inc., 2326; (viii) MEC Dixon, Inc., 7005; (ix) MEC Holdings (USA) Inc., 8494; (x) Sunshine Meadows Racing, Inc., 4288; (xi) Thistledown, Inc., 5742; (xii) MEC Maryland Investments, Inc., 4637; (xiii) 30000 Maryland Investments LLC, 1704, (xiv) Old RP, Inc., 2024; (xv) GPRA Commercial Enterprises Inc., 6156; (xvi) Pimlico Racing Association, Inc., 4527; (xvii) The Maryland Jockey Club of Baltimore City, Inc., 3840; (xviii) Laurel Racing Association Limited Partnership, 0504; (xix) Laurel Racing Assoc., Inc., 0505; (xx) Prince George's Racing, Inc., 6493; (xxi) Southern Maryland Racing, Inc., 9850; (xxii) Southern Maryland Agricultural Association, 9661; (xxiii) Maryland Jockey Club, Inc., 3124; (xxiv) AmTote International, Inc., 1143; (xxv) MEC Pennsylvania Racing Services, Inc, 9924 and (xxvi) MEC Lone Star LP, 0489.

entry into an amendment (the "First Amendment") to the Second Amended and Restated Debtor-in-Possession Credit Agreement, dated October 9, 2009 (the "Restated DIP Credit Agreement") by and among the Debtors and MID Islandi sf. (the "Original DIP Lender"), which was approved on a final basis by this Court on October 28, 2009. The First Amendment, a copy of which is attached hereto as Exhibit A, is entered into by and among the Debtors and MI Developments US Financing Inc. (the "DIP Lender")[2] and provides for, among other things, the ability of the Debtors to borrow up to an additional $7,000,000.00 to fund the working capital requirements of the Debtors and for other purposes as provided in the Restated DIP Credit Agreement, as amended by the First Amendment.

The Court having core jurisdiction over the matters raised by the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334 and having held a hearing on March 3, 2010 (the "Interim Hearing") to consider the Motion and the relief requested therein on an interim basis; and pursuant to Bankruptcy Rules 4001(b)(1) and 4001(c)(1), due notice under the circumstances of the Motion having been given by the Debtors; and after considering all of the pleadings filed with the Court and the testimony presented at the Interim Hearing, this Court entered an interim order on March 3, 2010 [Docket No. 1975], which, among other things, (a) authorized the relief requested in the Motion on an interim basis and (b) scheduled a final hearing (the "Final Hearing") to consider the Motion for March 23, 2010; and, pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due notice under the circumstances of the Motion having been served by the Debtors; and, after considering all of the pleadings filed with the Court and the testimony presented at the Final Hearing (by incorporation from the Interim Hearing); and after due deliberation and consideration and sufficient cause appearing therefor:

---

[2] Effective January 6, 2010, the Original DIP Lender assigned all of its rights under the Restated DIP Credit Agreement to the DIP Lender, in accordance with Section 10.8 of the DIP Credit Agreement.

NY1 7234590v.1
RLF1 3551816v.2

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1.  The Motion is granted on a final basis pursuant to the terms of this Order. Any objections to the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.  The Court's order authorizing the Debtors to obtain postpetition secured financing, dated April 22, 2009 (the "Final DIP Order") [Docket No. 382], and the Court's subsequent order authorizing the Debtors to enter into and perform under Restated DIP Credit Agreement, dated October 28, 2009 [Docket No. 1362] (the "Final Supplemental DIP Order" and together with the Final DIP Order, the "Final DIP Orders"), are amended hereby and shall continue in full force and effect. Except to the limited extent expressly set forth herein, nothing herein shall be deemed to alter, modify or supersede any provisions of the Final DIP Orders.

3.  Subsequent to entry of the Final DIP Orders, the Debtors satisfied the first tranche of obligations under the Restated DIP Credit Agreement in the amount of $38,400,000.00 through (i) the closing of the sale of the Ocala Property to Par Avenue Properties, LLC on September 17, 2009, the Debtors repaid $7,648,427.56 of the outstanding obligations under the Restated DIP Credit Agreement, (ii) the closing of the sale of the Dixon Property to Ocala Meadows on November 30, 2009, the Debtors repaid $2,957,176.29 of the outstanding obligations under the Restated DIP Credit Agreement and (iii) the closing of the sale of Remington Park to Global Gaming RP, LLC on January 1, 2010, the Debtors repaid $27,794,396.15 of the outstanding obligations under the Restated DIP Credit Agreement.

4.  The Debtors have requested an increase in the amount of postpetition secured financing by $7,000,000.00 (the "Additional DIP Financing"), such that the aggregate amount of postpetition financing to be made available to the Debtors by the DIP Lender shall be

NY1 7234590v.1
RLF1 3551816v.2

in a principal amount not to exceed $71,400,000.00 (as so amended, the "DIP Credit Facility")

and to amend the terms of the Restated DIP Credit Agreement as set forth in the First Amendment

(as so amended, the "Amended DIP Credit Agreement" and together with all documents,

agreements, notes and instruments executed or delivered pursuant hereto or thereto or in

connection herewith, the "Amended DIP Documents").[3]

      5.     Good cause has been shown for the entry of this Order. An immediate and

critical need exists for the Debtors to borrow additional funds in order to continue the operation of

their businesses while the Debtors seek confirmation of the Plan (as defined herein). The Debtors

do not have sufficient available sources of working capital or financing to carry on the operation

of their businesses in these chapter 11 cases without the access to the additional financing to be

provided by the DIP Lender under the Amended DIP Credit Agreement. The Additional DIP

Financing will also (i) permit the Debtors to continue to market and, if appropriate, sell their

assets for the benefit of all stakeholders in the Debtors' chapter 11 cases and (ii) permit the

Debtors to pursue confirmation of the proposed plan of reorganization, which has been jointly

proposed by the Debtors, the Creditors' Committee, the DIP Lender and MI Developments Inc.,

that was filed with this Court on February 18, 2010 (the "Plan") [Docket No. 1857].[4] The relief

requested in the Motion is necessary, essential, and appropriate for the continued operation of the

Debtors' businesses, the management and preservation of the Debtors' assets and personal

property and the pursuit of Plan confirmation. It is in the best interest of Debtors' estates that the

Debtors be allowed to borrow additional funds and incur additional indebtedness as contemplated

by the Amended DIP Credit Agreement.

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Amended DIP Credit Agreement.

[4] A second amended version of the Plan was filed with this Court on March 23, 2010 [Docket No. 2133].

4

6.     The Debtors are unable to obtain the required additional financing in the form of (i) unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (ii) unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code, or (iii) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code. Financing on a postpetition basis is not otherwise available without the Debtors obtaining the Additional DIP Financing, pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and liens pursuant to sections 364(c)(2), (c)(3), and (d)(1) of the Bankruptcy Code. Under the circumstances, no other source of financing exists on terms more favorable than those offered by the DIP Lender. The DIP Lender is willing to provide the Additional DIP Financing to the Debtors, subject to the terms and conditions set forth herein, in the Amended DIP Credit Agreement, the Supplemental Budget (as defined herein) and the terms (other than as may be expressly modified herein) provided under the Final DIP Orders.

7.     The terms of the Amended DIP Credit Agreement are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration, and the Additional DIP Financing under the terms set forth in Amended DIP Credit Agreement and this Order is supported by the Creditors' Committee. The First Amendment has been negotiated in good faith and at arms'-length between the Debtors and DIP Lender, and the additional amounts to be borrowed by the Debtors pursuant to the Amended DIP Credit Agreement and this Order shall be

NY1 7234590v.1
RLF1 3551816v.2

deemed to have been extended by DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

8.    The First Amendment and the other Amended DIP Documents and transactions related thereunder are authorized and approved in all respects on a final basis, the Borrower and the Guarantors are authorized and directed to execute and deliver the First Amendment and the other Amended DIP Documents, as required, and Magna Entertainment may borrow, and the Guarantors may guaranty all Obligations under the terms of the Amended DIP Documents and this Order.

9.    The Debtors are authorized to incur additional indebtedness subject to the terms of the Amended DIP Documents, this Order, the Final DIP Orders and the supplemental budget attached hereto as Exhibit B (the "Supplemental Budget"). The Supplemental Budget shall not be modified, supplemented or otherwise amended without the consent of the DIP Lender in its sole discretion.

10.    The obligations under the Amended DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with its terms. The Debtors are hereby authorized to perform and do all acts to make, execute and deliver all instruments and documents and to pay fees that may be reasonably required or necessary for the Debtors' performance under the Amended DIP Documents, including, without limitation, the payment of any Commitment Fee, Arrangement Fee, Additional Arrangement Fees under the Amended DIP Credit Agreement, and all other fees, costs and expenses as may be due from time to time.

11.    The Debtors are authorized to enter into non-material modifications and amendments to the Amended DIP Documents, without further order of this Court, as may be

NY1 7234590v.1
RLF1 3551816v.2

agreed upon in writing by the Debtors and the DIP Lender and, upon notification to the Creditors' Committee and the U.S. Trustee.

12.    The obligations under the Amended DIP Documents shall be treated as Superpriority Claims (as defined in the Final DIP Order) and, except for the Carve Out (as defined in the Final DIP Order), no claims having an administrative priority superior to or *pari passu* with the Superpriority Claims shall be granted while any portion of the DIP Obligations remain outstanding, absent the express written consent of the DIP Lender.

13.    All liens, security interests, priorities and other rights, remedies, benefits, privileges and protections provided to DIP Lender in the Final DIP Orders with respect to or relating to the DIP Facility Documents shall apply with equal force and effect to the Amended DIP Documents and all obligations in connection therewith or related thereto.

14.    All liens and priority granted to the DIP Lender pursuant to this Order and the Amended DIP Documents shall be deemed perfected by operation of law as of the date hereof, and the provisions of paragraph 11 of the Final DIP Order shall apply to any and all such liens granted hereunder.

15.    All obligations of the Debtors arising out of and in connection with the Amended DIP Documents shall be deemed part of the "DIP Obligations" under and as defined in the Final DIP Order.  Consistent with and not in any way limiting the foregoing, (a) the definition of "DIP Facility Documents" contained in the Final DIP Order shall be deemed to include the Amended DIP Credit Agreement and the other Amended DIP Documents, (b) the definition of "DIP Obligations" contained in the Final DIP Order shall be deemed to include all obligations and indebtedness arising under, in respect of or in connection with, the Amended DIP Credit Agreement and the other Amended DIP Documents and this Order, (c) the definition of "DIP

NY1 7234590v.1
RLF1 3551816v.2

Collateral" contained in the Final DIP Order shall be deemed to include all collateral which the DIP Lender has been or will be granted a lien on or security interest in (including, without limitation, all "Collateral" as defined in the Restated DIP Credit Agreement) under the Amended DIP Documents and this Order, and (d) the definition of "DIP Liens" contained in the Final DIP Order shall be deemed to include all liens and security interests granted to the DIP Lender pursuant to the Amended DIP Documents and this Order.

16.     The DIP Obligations, including, without limitation, the Commitment Fee, the Arrangement Fee, and any Additional Arrangement Fees, shall be due and payable, and shall be paid, as and when provided in the Amended DIP Documents and as provided herein, without offset or counterclaim.

17.     Upon the occurrence and during the continuance of an Event of Default or a default by the Debtors of any of their obligations under this Order or the Final DIP Orders, the DIP Lender shall be entitled to exercise its rights and remedies under the Amended DIP Documents in accordance with paragraph 17 of the Final DIP Order.

18.     Each of the Amended DIP Documents to which the Debtors are and will become a party shall constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms. The rights, remedies, powers, privileges, liens and priorities of the DIP Lender provided for in this Order and the Final DIP Orders shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan(s) of reorganization or liquidation in these chapter 11 cases or in any subsequent case under the Bankruptcy Code unless and until (i) the DIP Obligations have first been paid in full in cash and completely satisfied or (ii) the DIP Lender, in its sole discretion, expressly agrees to different treatment in any plan of reorganization that is confirmed by the Court.

NY1 7234590v.1
RLF1 3551816v.2

19.     The Amended DIP Documents and the provisions of this Order shall be binding upon the Debtors, the DIP Lender, the Prepetition Secured Lenders (as defined in the Final DIP Order), the Creditors' Committee and all parties in interest in these chapter 11 cases (as applicable with respect to each of the foregoing) and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors), and inure to the benefit of the DIP Lender and the Debtors and their respective successors and assigns. Notwithstanding the foregoing, and for the avoidance of doubt, the provisions of the Final DIP Orders (unless expressly modified herein) remain binding on the Debtors, the DIP Lender, the Creditors' Committee, the Prepetition Secured Lenders and all parties in interest in these chapter 11 cases.

20.     This Order is entered pursuant to, among other provisions, section 364 of the Bankruptcy Code, granting the DIP Lender, on account of the Additional DIP Financing made available under the DIP Credit Facility, all protections afforded by the Bankruptcy Code, including protection under Bankruptcy Code section 364(e). If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Lender prior to the date of receipt of written notice to the DIP Lender, of the effective date of such action; or (ii) the validity and enforceability of any lien, claim, superpriority or other protection authorized or created hereby or pursuant to the Amended DIP Documents in favor of the DIP Lender. Notwithstanding any such reversal, stay, modification or vacatur, any indebtedness, obligation or liability incurred by the Debtors to the DIP Lender in accordance with this Order, and any lien, security interest, and superpriority claim granted by the Debtors in accordance with this Order, prior to written notice to the DIP Lender of the effective date of such

9

NY1 7234590v.1
RLF1 3551816v.2

action, shall be governed in all respects by the original provisions of this Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code and granted herein with respect to all such indebtedness, obligations, liabilities, liens, security interests, and superpriority claims.

21.    In no event shall DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral securing any of the DIP Obligations.

22.    This Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable upon execution hereof.

23.    This Order shall not be modified or extended absent the express written consent of the DIP Lender.

24.    Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

25.    Under the circumstances, the notice given by the Debtors of the Motion and the Final Hearing constitutes due and sufficient notice of the Motion and the Final Hearing, and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice related to this proceeding is necessary or required.

SO ORDERED by Court this 23 day of March, 2010.

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

10