**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| MAGNA ENTERTAINMENT CORP., et al., | ) | Case No. 09-10720 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |

**OPINION**[1]

Before the Court is the objection of Magna Entertainment Corp. and its affiliates (the "Debtors") to the claim filed by Santa Anita Associates Holding Co., LLC ("Caruso") and Santa Anita Associates, LLC ("Associates"). For the reasons stated below, the Court will sustain the objection and disallow the claim.

I. <u>BACKGROUND</u>

Beginning in 2004, a non-debtor affiliate of the Debtors, Santa Anita Enterprise, Inc. ("Enterprise"), entered into discussions with Caruso regarding the development of a high-end shopping center adjacent to the Santa Anita Racetrack on property (the "Property") owned by The Santa Anita Companies, Inc.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is incorporated by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

("SAC"). (SF 8-9; X 73.)[2] That agreement was encompassed in an LLC Agreement in 2006, pursuant to which Caruso and Enterprise each owned a 50% interest in Associates and Caruso acted as the managing member. (X 1.) Although SAC was not a party to the agreement, it was contemplated that SAC would enter into a ground lease of the Property with Associates if certain conditions were met. (SF 10; X 1; X 4.) SAC confirmed this by letter in March 2007. (SF 12; X 9.)

On March 5, 2009, the Debtors (including SAC) filed voluntary petitions under chapter 11 of the Bankruptcy Code. (SF 1.) During the course of their bankruptcy cases, the Debtors marketed their assets for sale, including the assets of SAC and their interest in the joint venture with Caruso; Caruso was aware of these efforts and had discussions with some of the prospective buyers regarding the project. (SF 51-52; SF 58-62; SF 67; SF 108; X 34.) Ultimately, a settlement was reached in January 2010 whereby MI Developments US Financing, Inc. ("MID") would acquire certain assets of the Debtors including the Property and the Santa Anita Racetrack. (SF 69; X 36.) The Debtors filed a joint plan of reorganization (the "Plan") incorporating that settlement

---

[2] References to the record are as follows: "SF #" refers to the Amended Stipulated Facts of the parties; "X #" refers to the exhibits; "Tr." refers to the transcript of the hearing held on October 21, 2011; "D.I. #" refers to the docket number of pleadings filed in the case.

which was confirmed on April 29, 2010, and became effective on April 30, 2010. (SF 2.)[3]

Shortly before confirmation, by letter dated April 12, 2010, Enterprise sent notice of termination (effective May 12, 2010) of the LLC Agreement on the basis that the conditions specified in the LLC Agreement had not been timely satisfied. (SF 76; SF 79; X 24.) Caruso responded to the termination notice, disputing Enterprise's assertions. (SF 78; X 25.) As of May 12, 2010, the purported effective date of the termination, none of the Recapture Conditions specified in the LLC Agreement had been satisfied and no ground lease had been executed by SAC. (SF 80.)

On May 28, 2010, Caruso and Associates filed a claim against the Debtors in excess of $21 million for damages resulting from SAC's failure to enter into the ground lease. (SF 91; X 42.) On July 19, 2010, the Debtors filed an objection to the claim, in which the Creditors' Committee joined. (SF 102; SF 103; D.I. 2726.) A hearing on the objection to the claim was held on October 21, 2011.

At the hearing, in addition to presenting evidence on the merits of the claim, the parties presented argument on a preliminary "gating" issue as to whether the Court had jurisdiction to decide the objection to the claim because Caruso

---

[3] The Property was subsequently acquired by the Stronach Group on June 30, 2011. (SF 138; X 68; X 72.)

3

was entitled to arbitrate with Enterprise under the LLC Agreement.  In a Memorandum Opinion dated January 30, 2012, the Court concluded that it had jurisdiction to decide whether the LLC Agreement had been properly terminated because the arbitration provision did not apply to SAC and Caruso had waived any right to seek arbitration because of its delay.  The merits of the claim are therefore ripe for decision.

II.  JURISDICTION

Bankruptcy courts have core jurisdiction to hear the merits of proofs of claim and affirmative defenses to those claims.  28 U.S.C. §§ 157(b)(2)(B) & 1334.

III. DISCUSSION

The Debtors object to the Caruso claim, contending that any claim against them has been released as the result of the termination of the LLC Agreement.  The LLC Agreement provides in relevant part that:

> If a Termination Election is delivered pursuant to the foregoing provisions, . . . the Members shall be deemed to have released each other and their respective Affiliates . . . from any claims or obligations of any nature relating to [Associates], the Ground Lease, the Property and the Project.

(X 1 at § 8.04(d)(iii).)

The Debtors contend that the LLC Agreement was properly terminated because of Caruso's failure to satisfy timely the

4

Recapture Conditions set forth in the LLC Agreement. (X 1 at § 12.65.) Further, the Debtors argue that Caruso has no valid claim against SAC because SAC never entered into a ground lease with Associates but only agreed to enter into a ground lease if the Recapture Conditions were met (which has not happened).

Caruso contends that the releases are not effective because the purported termination was not valid and did not take place until after the Debtors had rejected the ground lease. Caruso further contends that there was a valid agreement between Associates and SAC to enter into the ground lease, whose terms were detailed in the LLC Agreement, was supported by adequate consideration, and has been breached by the Debtors' rejection of it before confirmation of the Plan and before termination of the LLC Agreement.

    A.    <u>Termination of the LLC Agreement</u>

The LLC Agreement provides in relevant part that:

> [I]f the Recapture Conditions are not achieved by [Associates] (or waived by [Enterprise]) within twenty-four (24) months following the Effective Date, subject to extension for events of Force Majeure, and subject to further extension for an additional twelve (12) months provided that the Milestones (as defined in Article XII), are achieved as will be agreed upon in the Business Plan within twenty-four months following the Effective Date, subject to extension for Force Majeure, in [Enterprise's] sole discretion . . . [Enterprise] shall have the option to elect to terminate this Agreement, the Ground Lease and all other agreements, documents and instruments related to this Agreement and the Ground Lease . . . .

(X 1 at § 8.04(a).)

The LLC Agreement defines Recapture Conditions to include (1) obtaining certain entitlements, including the zoning and other governmental approvals necessary to develop and construct the Project on the Property with all applicable appeal and challenge periods having expired and (2) entering into a Reciprocal Easement Agreement (the "REA") within 90 days of the Agreement's effective date.  (SF 15; X 1 at ¶ E & § 12.65(a) & (g); Tr. at 56.)

Although the Project was approved by the City Council on April 19, 2007, the owner and operator of a nearby shopping center and a neighborhood group filed lawsuits to overturn that approval.  (SF 17; SF 18; X 11.)  The state court issued a decision on July 23, 2008, finding the approval was largely valid with the exception of certain deficiencies.  (SF 20; X 13.)  As a result of the decision, the City Council rescinded its approval of the entitlements.  (SF 29.)  Caruso and Enterprise worked to correct those deficiencies, but an appeal was filed by the shopping center owner and a neighborhood group.  (SF 30; SF 31; X 15; X 16; X 17.)[4]  Because of the filing of the Debtors' bankruptcy case, the litigation was stayed.  (SF 53-56; 65-66.)  Therefore, as of the petition date, the entitlements had not been obtained.

---

[4] There was also litigation over the efforts of the shopping center owner to expand a restaurant in the shopping center, which was opposed by Enterprise and Caruso.  (SF 35-41.)

Another Recapture Condition was that SAC and Associates enter into the REA to govern their respective rights and obligations with respect to the Property within 90 days of the effective date of the LLC Agreement. (SF 15; X 1 at ¶ E.) Although the parties engaged in negotiations relating to the REA, a final agreement was never reached. (Tr. 74-76; SF 80.) The parties agreed to extend the deadline to reach an acceptable REA several times by letter; the last extension expired March 31, 2010. (SF 16; SF 27; SF 33; X 12.)

On April 12, 2010, Enterprise sent written notice to Caruso that it was terminating the LLC Agreement effective thirty days later (May 12, 2010). (X 24.) Caruso disputed the ability of Enterprise to terminate the LLC Agreement by letter dated April 13, 2010. (X 25.)

Caruso concedes that it did not obtain a final REA and all the entitlements necessary to construct the Project by April 30, 2010. (Tr. 74-76; SF 80.) It contends, however, that the time to obtain the entitlements was extended under the express language of section 8.04(a) of the LLC Agreement because the litigation regarding the City Council's approval of the Project constituted a Force Majeure. The LLC Agreement defines Force Majeure by reference to the Development Agreement[5] which defines

---

[5] X 1 at § 12.38. The Development Agreement was never executed. (SF 81.)

it to include

> (c) the commencement of litigation against [Caruso Management Company LTD], [Associates], or Project, other than litigation arising from any willful misconduct or negligent or fraudulent act of [Caruso Management Company LTD] . . .
> . . .
> and, as a result of any such event or occurrence . . . a delay will occur in the achievement of Substantial Project Completion, then, subject to Section 6.03, [Caruso Management Company LTD] shall be granted such extensions . . . as shall under all of the circumstances be reasonable.

(X 7 at § 6.02(c).)

The Debtors respond that in order to obtain an extension for Force Majeure, Caruso was required to provide "notice of the occurrence of such Force Majeure Event, as well as a reasonably detailed explanation of the cause of such Force Majeure Event, the impact on the critical path of the Construction Schedule and [Caruso Management Company LTD's] good faith estimate, if ascertainable, of the resulting delay . . . ." (X 7 at § 6.03(b).) Caruso never sent such a notice. (SF 34; SF 83.) Instead, Caruso requested extensions of the deadline to obtain the REA. (SF 16; SF 27; SF 33; X 12.) This, the Debtors contend, proves that Caruso never thought that the litigation over the City Council approval was a Force Majeure.

In addition, even if it were a Force Majeure, the Debtors argue that any resulting extension must "under all of the circumstances be reasonable." (X 7 at § 6.02(c).) The Debtors contend that the delay of more than five years is not reasonable

under the circumstances. This is particularly so with respect to the negotiation of the REA, which was not at all affected by the litigation. In fact, the Debtors note that the parties continued to negotiate the REA despite the continuation of the litigation and even after the commencement of their chapter 11 cases. (X 16; SF 70-73; SF 75; SF 87-89; SF 94-98; SF 100-01; SF 110-11; SF 113; SF 115-24; X 40-41; X 43-62.) As a result, the Debtors argue that Caruso cannot seriously contend that the litigation prevented it from concluding an acceptable REA.

Further, the Debtors argue that it would not be reasonable to extend the time to satisfy the Recapture Conditions for any period after the Property was sold to MID under the Plan (April 2010) because SAC could not satisfy those conditions if it was not the owner of the Property. The Debtors note that Caruso was aware that the Debtors were marketing their assets and even discussed the Project with potential buyers. (SF 51-52; SF 58-62; SF 67; SF 108; X 34.) After it became public that MID was to acquire the Property under the Plan, Caruso even had discussions with MID on restarting the Project under a new joint venture agreement, which continued after the Debtors sent notice terminating the LLC Agreement and objected to Caruso's claim. (SF 70-73; SF 75; SF 87-89; SF 94-98; SF 100-01; SF 110-11;

SF 113; SF 115-24; X 40-41; X 43-62.)[6]

Finally, the Debtors argue that Caruso itself felt that the litigation did not prevent termination of the LLC Agreement for failure to obtain an acceptable REA. Caruso never asserted that Force Majeure was the basis for the delay in achieving an acceptable REA. (SF 77.) In fact, in December 2008, while the litigation was ongoing, Caruso stated that it did not consider the litigation an impediment to resolving the REA issues and threatened to exercise its right to terminate the LLC Agreement itself if the REA issues were not resolved promptly. (X 16.)

The Court agrees with Caruso that the litigation over the City Council approval fits within the definition of Force Majeure under the Development Agreement. (X 7 § 6.02.) However, the Court finds that Caruso did not comply with the requirements of that Agreement by giving the requisite notice in order to obtain an extension for Force Majeure. (Id. § 6.03(b); SF 34.) Further, the Court concludes that the delay (in failing to seek arbitration with Enterprise or SAC over the termination of the LLC Agreement, failing to seek relief from the automatic stay to proceed with the litigation over approval of the Project, and

---

[6] The discussions did not result in a finalized agreement. (SF 90; SF 99; X 41; X 65.) However, when the Creditors' Committee learned of those discussions, the Committee refused to proceed with an agreement in principle that the parties had reached on resolution of the objection to the Caruso claim. (SF 125-26; SF 128-29.)

failing to negotiate an acceptable REA) was not reasonable under the circumstances. Consequently, the Court concludes that the LLC Agreement was properly terminated by the Debtors effective May 12, 2010.

    B.    <u>Lease with SAC</u>

The Debtors argue that there was no ground lease between SAC and Associates, but only a letter confirming that SAC would enter into a lease when the Recapture Conditions specified in the LLC Agreement were satisfied. (X 9; X 1 at ¶ C.) Because the Recapture Conditions were never satisfied, the Debtors assert that no ground lease came into existence. Further, because the LLC Agreement has now been terminated, the Debtors contend that the ground lease will never come into existence. The Debtors alternatively argue that even if there was an enforceable agreement with SAC, that agreement was terminated by the termination of the LLC Agreement and any claims relating to that agreement have been released. (X 1 at § 8.04(a) & (d)(iii).)

Caruso argues that under California law the ground lease is an enforceable contract. Caruso contends that the confirmation letter signed by SAC (X 9), which acknowledges its agreement to enter into the ground lease, is a sufficient writing to satisfy the statute of frauds under California law. <u>See, e.g.</u>, <u>Sterling v. Taylor</u>, 152 P.3d 420, 424-25 (Cal. 2007) ("The statute of frauds does not require a written contract; a 'note or memorandum

. . . subscribed by the party to be charged' is adequate.") (quoting Cal. Civ. Code § 1624(a)).  Caruso notes that all of the material terms of the ground lease were fully set forth in Exhibit C to the LLC Agreement, which is sufficient under California law to constitute a binding agreement.  (X 4.)  See, e.g., Action Apartment Ass'n v. Santa Monica Rent Control Bd., 114 Cal. App. 4th 412, 498 (Cal. Ct. App. 2001) ("As a general rule '[a] lease must include a definite description of the property leased and an agreement for rent[] to be paid at particular times during a specified term.'") (quoting Beckett v. City of Paris Dry Goods Co., 196 P.2d 122, 124 (1939)).

While Caruso may be correct that the terms of the ground lease were sufficiently explicit to constitute a contract,[7] the Court concludes that under the express terms of the parties' agreement, the ground lease which the parties contemplated executing never came into existence.  The only writing executed by SAC, the confirmation letter, conditioned SAC's agreement to execute a ground lease on the fulfillment of the Recapture

---

[7] The Debtors contend that there was no agreement between SAC and Caruso, because SAC was not a signatory to the LLC Agreement.  (X 1.)  They note that Caruso is conflating the LLC Agreement and the confirmation letter, when those agreements are not integrated because they were executed by different parties on different dates and concern different subject matters.  (X 1; X 9.)  It is not necessary to address these arguments, however, because even if the agreements were one integrated contract, that agreement has been terminated and all claims related to it have been released.  (X 1 at § 8.04(d)(iii).)

Conditions, which Caruso acknowledges have not been met. (X 9; Tr. 74-76; SF 80.) Therefore, there was no enforceable ground lease with SAC as of the confirmation of the Plan.

Even if Caruso is correct that there was an executory contract to enter into a ground lease extant as of confirmation, the Court concludes that that contract was terminated effective May 12, 2010, by the express terms of the LLC Agreement. The termination of the LLC Agreement also terminated "the Ground Lease, all other agreements, documents and instruments relating to the [LLC] Agreement and the Ground Lease between [Enterprise], SAC . . . and/or any of its Affiliates and Caruso and/or any of its Affiliates . . . ." (X 1 at § 8.04(a).)

Caruso argues nonetheless that even if the LLC Agreement was properly terminated, that termination occurred on May 12, 2010, which was after the rejection of the SAC contract under the Debtors' Plan on April 30, 2010.[8] Therefore, Caruso contends that it has a claim for damages for rejection of that contract.

---

[8] Under section 25.1 of the Plan, all leases and executory contracts that had not previously been assumed were rejected as of the Effective Date of the Plan. (SF 84.) Neither the confirmation letter nor the ground lease were on the list of executory contracts or leases to be assumed by the Debtors. (SF 84.) The Debtors contend, however, that the effective date of the rejections was May 15, 2010, because the list was amended several times. (D.I. 2258; D.I. 2494; D.I. 2560.) It is not necessary to decide this issue, however, because the Court concludes that the releases in the LLC Agreement encompass the rejection damages claim whenever it arose.

13

The Court rejects this argument. Even if Caruso is correct and its claim for rejection of the SAC contract accrued on April 30, 2010, the termination of the LLC Agreement not only terminated the SAC contract but released any claims that Caruso may have against the Debtors and SAC related to those agreements, whenever the claims may have arisen. The LLC Agreement provides in relevant part that:

> If a Termination Election is delivered pursuant to the foregoing provisions, . . . the Members shall be deemed to have released each other and their respective Affiliates . . . from any claims or obligations of any nature relating to [Associates], the Ground Lease, the Property and the Project.

(X 1 at § 8.04(d)(iii).) The LLC Agreement defines Affiliate of Enterprise to include, inter alia, Magna Entertainment Corp. and its affiliates. (X 1 at § 12.03.) SAC is a wholly-owned subsidiary, and therefore an affiliate, of Magna Entertainment Corp. (D.I. 8 at ¶ 6 & Ex. A.) Consequently, the Court concludes that the termination of the LLC Agreement resulted in a release of any claims that Caruso may have against SAC, including any claim that arose before the termination as a result of the rejection of any lease or contract that SAC may have had with Associates. Therefore, the Court will sustain the Debtors' objection to the Caruso claim.

IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the Debtors properly terminated the LLC Agreement and accordingly, any claim Caruso and Associates may have against the Debtors, including SAC, has been released.  The Court will therefore sustain the objection and disallow the claim of Caruso and Associates.

An appropriate Order is attached.

Dated: July 9, 2012                    BY THE COURT:

                                       _____
                                       Mary F. Walrath
                                       United States Bankruptcy Judge